No. 21-16029

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

---

**NEO4J, INC., et al.,**

*Plaintiff and Appellee,*

**v.**

**PURETHINK, LLC, et al.,**

*Defendant and Appellant.*

---

Appeal From a Judgment of the United States District Court
For the Northern District of California
Hon. Edward J. Davila
United States District Judge
N. D. Cal. No. 5:18-cv-07182 EJD

---

**APPELLANTS' OPENING BRIEF**

---

ADRON W. BEENE, CA Bar # 129040
ADRON G. BEENE, CA Bar # 298088
1754 Technology Drive, Ste. 228
San Jose, CA  95110
Tel.: (408) 392-9233
Fax: (866) 329-0453
adron@adronlaw.com

Joseph A. Hearst, CA Bar # 130286
1569 Solano Ave. #525
Berkeley, CA  94707
Telephone: (510) 528-6863
Facsimile: (510) 280-2556
jahearst@pacbell.net

Attorneys for defendants, cross-complainants and appellants John Mark Mr. Suhy, PureThink,LLC and iGov, Inc.

## CERTIFICATE PURSUANT TO RULE 26.1

## FEDERAL RULES OF APPELLATE PROCEDURE

Counsel for appellants Purethink, LLC and iGov, Inc. hereby certifies that they have no parent corporations and no publicly held corporation owns 10% or more of either appellant.

Dated: August 17, 2021                    By: _____/s/_____

                                                    Joseph A. Hearst

# TABLE OF CONTENTS

I.      INTRODUCTION ............................................................................1

II.     JURISDICTIONAL STATEMENT .............................................3

III.    ISSUES PRESENTED ...................................................................3

IV.     STATEMENT OF THE CASE .....................................................4

V.      STATEMENT OF FACTS .............................................................7

VI.     SUMMARY OF ARGUMENT ....................................................15

VII.    ARGUMENT .................................................................................17

    A.  Standard Of Review. .................................................................17

    B.  Neo4j USA Lacks An Ownership Interest That Would Give It Standing
        To Sue For Trademark Infringement ........................................18

    C.  Assuming For The Sake Of Argument That Neo4j Usa Had Standing,
        There Was No Infringement Because Defendants' Use Of The Mark
        Was Nominative Fair Use. ........................................................22

    D.  The Court's Finding That Defendants Engaged In False Advertising And
        False Designation Of Origin Overlooks How Consumers Would View
        The Igov Website. .....................................................................34

    E.  References To Ongdb As "Free And Open-Source" Are Accurate. ........36

    F.  Descriptions Of Ongdb As A "Drop-In" Replacement For An Existing
        Commercially Licensed Distribution Of The Same Version Number
        Of Neo4j Are Accurate...............................................................40

    G.  The Court's Finding Of False Designation Of Origin Is Fatally
        Flawed. ......................................................................................43

VIII.   CONCLUSION ............................................................................47

# TABLE OF AUTHORITIES

## CASES

*Adobe Systems v. A & S Electronics, Inc.*, 153 F.Supp.3d 1136 (N.D. Cal. 2015) ......28

*Align Technology, Inc. v. Strauss Diamond Instruments, Inc.*,

     2019 U.S. Dist. LEXIS 63616 (N.D. Cal. April 12, 2019) ...........................22, 33

*Allard Enterprises v. Advanced Programming Resources, Inc.*,

     146 F.3d 350 (6th Cir. 1998) ...............................................................21

*AMF, Inc. v. Sleekcraft Boats*, 599 F.2d 341 (9th Cir. 1979)...............................passim

*Diller v. Barry Driller, Inc.*, No. CV 12-7200 ABC (Ex),

     2012 U.S. Dist. LEXIS 133515 (C.D. Cal. Sep. 10, 2012) ..................................33

*Halicki Films, LLC v. Sanderson Sales & Mktg.*, 547 F.3d 1213 (9th Cir. 2008)........18

*Hokto Kinoko Co. v. Concord Farms, Inc.*, 810 F.Supp.2d 1013 (C.D. Cal. 2011).....18

*Interstellar Starship Servs, Ltd. v. Epix Inc.*, 184 F.3d 1107 (9th Cir. 1999) ..............17

*MAI Systems Corp. v. Peak Computing, Inc.*, 991 F.2d 511 (9th Cir. 1993) ..............17

*National Licensing Association, LLC v. Inland Joseph Fruit Co.*,

     361 F.Suup.2d 1244 (E.D. Wash. 2004).................................................20

*Network Automation, Inc. v. Advanced Systems Concepts, Inc.*,

     638 F.3d 1137 (9th Cir. 2011) ..............................................................46

*Noble House Home Furnishings, LLC v. Floorco Enterprises, LLC*,

     2016 TTAB LEXIS 100 (Trademark Trial & App. Bd. April 4, 2016) ...............20

*Playboy Enterprises, Inc. v. Welles*, 279 F.3d 796 (9th Cir. 2002) .............................22

*Pom Wonderful LLC v. Hubbard*, 775 F.3d 1118 (9th Cir. 2014)........................17, 18

*Quabaug Rubber Co. v. Fashion Shoe Co.*, 567 F2d 154 (1st Cir. 1977)....................20

*Scholz v. Migliaccio*, No. C13-1229 JLR,

    2013 U.S. Dist. LEXIS 118334 (W.D. Wash. Aug. 20, 2013)............................29

*Toyota Motor Sales, U.S.A., Inc. v. Tabari*, 610 F.3d 1171 (9th Cir. 2010) ..........22, 26

*Upper Deck Co. v. Paninia America, Inc.,*

    2021 U.S. Dist. Lexis 71157 (No 20cv185-GPC(KSC), April 13, 2021)............19

*Waits v. Frito-Lay, Inc.*, 978 F.2d 1093 (9th Cir. 1992)................................................34

*West Florida Seafood, Inc. v. Jet Restaurants, Inc.*, 31 F.3d 1122 (Fed. Cir. 1994) ...18

## STATUTES

15 U.S.C. § 1055....................................................................................................19

15 U.S.C. § 1114..............................................................................................passim

15 U.S.C. § 1125................................................................................................4, 34

15 U.S.C. § 1127....................................................................................................19

17 U.S.C. § 1202......................................................................................................5

28 U.S.C. § 1292......................................................................................................3

28 U.S.C. § 1331......................................................................................................3

28 U.S.C. § 1367......................................................................................................3

## RULES

Federal Rules of Appellate Procedure

    Rule 4........................................................................................................................3

## I.  INTRODUCTION

Plaintiff-appellee Neo4j Sweden AB ("Neo4j Sweden") creates software packages for graph databases, which its parent, appellee Neo4j, Inc. ("Neo4j USA"), distributes and services in this country.  Until recently, the software came in three "flavors": 1) Neo4j Community Edition, which was licensed under the Free Software Foundation's ("FSF's") GPL ("General Public License") open-source license by Neo4j Sweden; 2) Neo4j Enterprise Edition, which was licensed under the FSF's AGPL ("Affero General Public License") by Neo4j Sweden; and 3) Neo4j Enterprise Edition, with a commercial license that Neo4j USA sells.  The source code for these editions was published and available on GitHub.  There were historically no source code differences between the Neo4j Enterprise open-source and commercial offerings.

Appellant John Mark Suhy and his company, appellant PureThink, Inc., were "Solution Partners" with Neo4j.  After a falling out with the Neo4j entities centering around Mr. Suhy's negotiations with the IRS regarding open-source usage rights, Mr. Suhy became a volunteer contributor for a "fork" of Neo4j Enterprise run by the Graph Foundation Inc. ("GFI").[1]  Neo4j USA then sued Mr.

_____

[1]      Wikipedia defines a "fork" in software as follows:

"In software engineering, a project fork happens when developers take a copy of source code from one software package and start independent development on it,

*Footnote continues on next page*

1

Suhy and his businesses, PureThink and another entity Mr. Suhy created, iGov, Inc., for trademark infringement and related claims.  The trial court granted summary judgment on the trademark claims and entered a preliminary injunction forbidding Mr. Suhy and his companies from using the Neo4j mark in any manner defined by the court in its ruling.

The court found that Neo4j USA could bring an action for trademark infringement under 15 U.S.C. § 1114 as the registrant of the mark, notwithstanding that Neo4j USA is not the actual owner of the mark, which it licenses on a non-exclusive basis from Neo4j Sweden.  The court also found that defendants' use of the Neo4j mark exceeded that permitted under the nominative fair use doctrine, and that Mr. Suhy and his entities had engaged in false advertising using Neo4j's trademarks.

The court's actions ignored or papered over numerous factual disputes concerning who owned the mark and had a right to bring a trademark action and concerning defendants' use of the Neo4j mark.  The trademark analysis in this case is exceedingly complex, involving as it does different, similarly-named corporate entities using the mark, sometimes on free and open-source versions of the

_____

creating a distinct and separate piece of software … Free and open-source software is that which, by definition, may be forked from the original development team without prior permission, and without violating copyright law."
https://en.wikipedia.org/wiki/Fork_(software_development).

software and sometimes on commercial versions, as well as the scope of defendants' undisputed right to use and describe the open-source versions of Neo4j. This complexity is especially apparent with respect to the question whether defendants engaged in nominative fair use of the mark to describe their own use of the open-source versions of the software. The court should have denied the summary judgment and should not have enjoined defendants based upon that summary judgment.

## II. JURISDICTIONAL STATEMENT

This is an action brought under the Lanham Act and federal copyright statutes. The court had federal question jurisdiction pursuant to 28 U.S.C. § 1331. The court had pendent jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367.

The appeal is from a preliminary injunction; jurisdiction lies in this Court under 28 U.S.C. § 1292(a)(1). The appeal was filed within 30 days of entry of the preliminary injunction and is timely under Rule 4, Fed. Rules App. Proc. *See* 9-ER-2160.

## III. ISSUES PRESENTED

1. Where the evidence shows that a non-exclusive licensee has registered a trademark, but the actual owner of the mark does not control the use of the mark, does the licensee have standing to assert trademark infringement?

2. Where the authors of a "fork" of open-source software use the trademark identifying the core of that software to describe their own fork, does the use of the trademark constitute nominative fair use?

3. Where authors of a fork of software describe the fork as an open-source version of named commercial software which also has open-source versions, is there consumer confusion that would justify an injunction against the use of the name that describes both the open-source and commercial versions?

4. Does a description of an open-source fork stating that it uses open source versions of named software and that the products with which defendants worked were drop in replacements for the commercial version mislead consumers, where it is undisputed that defendants' fork *was* based upon open-source versions of the named software and that the products with which defendants worked could run queries just as the commercial version of the software did?

## IV. STATEMENT OF THE CASE

Neo4j USA commenced this action in November 2018. Neo4j Sweden later joined in the copyright cause of action. They filed their third amended complaint ("TAC"), the operative complaint in this appeal, in September 2020. The TAC states claims for trademark infringement under 15 U.S.C. § 1114 (Lanham Act § 32), false designation of origin and false advertising under 15 U.S.C. § 1125(a)

(Lanham Act § 43(a)), unfair competition under California law, defamation, invasion of privacy (based upon alleged recording of Neo4j employees by defendant-appellant John Mark Mr. Suhy) and Neo4j's sole claim for copyright infringement under the Digital Millennium Copyright Act, 17 U.S.C. § 1202(b). 2-ER-71-84. All of the causes of action involving trademark and state law unfair competition in the TAC are alleged on behalf of Neo4j USA only. 2-ER-71-89.

In their answer to the original complaint, defendants stated affirmative defenses that the trademark registration was obtained by fraud and that the trademark had been abandoned through naked licensing. The court granted motions for judgment on the pleadings on these affirmative defenses. After these defenses were again raised in the answer to the third amended complaint, the court again struck those defenses.[2] *See* 1-ER-11. Defendants also filed a cross-complaint, which is still pending.

By stipulation approved by the court, the parties agreed to file summary judgment motions on Neo4j USA's trademark-related claims, as well as defendants' counterclaims and affirmative defenses related to abandonment of

---

[2]     The questions whether plaintiffs' registration had been obtained through fraud before the Trademark Trial and Appeal Board (which requires actual fraudulent intent) and whether plaintiffs' registration was invalid because not obtained by the actual owner are different from those presented in this appeal, and the trial court's resolution of the fraud issue does not foreclose the issues regarding standing and trademark validity discussed in this brief.

trademark, cancellation of trademark and fair use, in a Phase One, reserving other claims for a Phase Two. Certain defenses to trademark infringement, such as unclean hands, are also reserved for Phase Two.

Plaintiffs filed their motion for summary judgment as to the Phase One issues on December 11, 2020; defendants filed their opposition and their own motion for summary judgment on January 15, 2021. By order dated May 18, 2021, the court granted summary judgment to plaintiffs and preliminarily enjoined defendants from: (1) infringing on the Neo4j mark, (2) referring to ONgDB (Open Native graph Database, the name for the fork of Neo4j Mr. Suhy helps with as a volunteer contributor) as a "free and open-source drop-in replacement of Neo4j Enterprise Edition," (3) representing that the Neo4j Enterprise Edition had been released only under the AGPL ("Affero General Public License"), or (4) representing that Neo4j Sweden's addition of what the parties refer to as the Commons Clause to the AGPL violated the terms of the AGPL, (5) distributing any advertisement or literature that used the Neo4j mark to advertise or promote ONgDB in "any way that suggests sponsorship or endorsement by Neo4j USA or Sweden," (6) advertising or representing in any way "tending to falsely describe or represent [defendants'] goods as being Neo4j products" or offering such goods in commerce, and (7) aiding any other person or entity in engaging in the conduct enjoined. 1-ER-37.

PureThink, iGov and Mr. Suhy filed their notice of appeal on June 16, 2021.
9-ER-2159.

## V.  STATEMENT OF FACTS

Neo4j Sweden created and supports a graph platform for connected data
distributed under the Neo4j mark.  Sweden's software initially, and for many years,
was distributed free under the Free Software Foundation's open-source GPL
(General Public License) and AGPL (Affero General Public License) licenses.  6-
ER-1378, ¶¶ 5-7.  Because Neo4j was free and open-source, its use grew widely;
contributors created more than 2000 forks/derivatives of the Neo4j software.

Neo4j Sweden decided to monetize its software by creating commercial
versions of its program.  Neo4j Sweden organized Neo Technology, Inc. in the
United States, which eventually changed its name to Neo4j, Inc. ("Neo4j USA").
Neo4j USA then became the corporate parent of Neo4j Sweden.  Neo4j Sweden
granted Neo4j USA a non-exclusive license to use the Neo4j mark in the United
States.  11-ER-2414.  Notwithstanding that it was neither an owner nor exclusive
licensee, Neo4j USA obtained a United States registration for the Neo4j mark.  2-
ER-189.

Prior to November 2018, Neo4j offered free open-source versions known as
Neo4j Community Edition (sometimes, hereafter "Neo4j CE") under the GPL open
source license and Neo4j Enterprise Edition (sometimes, hereafter "Neo4j EE")

under the AGPL open source license.  6-ER-1368 ¶¶ 12-14; 6-ER-1369 ¶¶ 6-8.

Neo4j USA also offered a commercial edition with commercial support also

(confusingly) named Neo4j Enterprise Edition (sometimes, hereafter "Neo4j

CEE").  6-ER-1368, ¶¶ 5-8.  Historically, there was no difference between Neo4j

EE under its AGPL open-source license and Neo4j EE under its commercial

license; the latter was simply packaged and sold as a support solution.  *See* 6-ER-

1369 ¶ 9.  Until Neo4j Enterprise 3.5.0 was released, Neo4j Enterprise open-source

distributions and Neo4j Enterprise commercially licensed distributions were

compiled from the same official Neo4j public GitHub repository. 6-ER-281.

Up through the "beta" and testing versions of Neo4j EE version 3.4, all

Neo4j EE products were offered on an open-source basis under the AGPL license;

later, when Neo4j officially released Neo4J EE 3.4, it added restrictions on the

AGPL through what the parties referred to as the "Commons Clause."  *See* 6-ER-

1370, ¶ 11.  The new terms prohibited the non-paying public from engaging in

commercial resale and certain support services.[3]  6-ER-1370, ¶ 11; *see* 6-ER-1415

(text of Commons Clause).  Neo4j USA released Neo4j EE versions 3.5 and later

under a commercial license only, and Neo4j Sweden no longer released the

enterprise source code to the public on the Neo4j GitHub repository.  6-ER-1371, ¶

---

[3]     The propriety of adding the Commons Clause to the AGPL license was a
matter of dispute and is discussed further in the Argument.

13. Neo4j software under the unmodified AGPL license, through version 3.4 beta and testing versions, is still in use and available under that license at GitHub to this day. *See* 6-ER-1369, ¶ 9.

John Mark Suhy's company, PureThink, became a Neo4j reseller under a Solution Partner Agreement ("SPA") with Neo4j USA in 2014, receiving a non-exclusive license to use the Neo4j mark. 2-ER-197. PureThink, with Neo4j's approval, designed and developed a government edition that would streamline government procurements. PureThink offered this software package under the name Neo4j Government Edition and had an exclusive agreement to resell it to the government. *See* 8-ER-2085.

Neo4j USA had been trying to get the IRS to purchase a Neo4j EE commercial license. *See* 1-ER-6. As the procurement deadline loomed, the IRS informed PureThink that it was not interested in purchasing a commercial license with support. Rather than lose the possibility of a subscription from the IRS, Mr. Suhy informed Neo4j USA that he wanted to build the solution the IRS needed during the first year, so that follow up years could generate commercial license revenues. USA agreed, and PureThink entered into an agreement with the IRS and signed a contract for consulting services to build out a solution for them. 9-ER-2087, 2090.

As the initial IRS contract was ending, the IRS informed Mr. Suhy that government policy was to use open-source software to save taxpayer dollars. The IRS asked Mr. Suhy about the Neo4j open-source license. Neo4j USA instructed Mr. Suhy to lie and tell the IRS that it could not use open-source versions of the software. USA contacted the IRS and informed it that it could not use Neo4j EE in any version. Mr. Suhy, on the other hand, refused to lie and informed the IRS that Neo4j EE was available under an open-source license for version 3.4 and earlier, leading to a rift between Mr. Suhy and Neo4j USA. As a result, Neo4j USA terminated the SPA agreement with PureThink.

Neo4j USA retaliated against Mr. Suhy and informed the IRS that PureThink could not provide any services on open-source versions of Neo4j because the SPA had a three-years-after-termination bar on providing services. 7-ER-1660-62. Because the IRS was still only interested in open-source versions, Mr. Suhy set up a new company, iGov, Inc., to be able to work with open-source versions of the software.

After PureThink's termination, Mr. Suhy and iGov changed direction and focused on offering consulting services focused on Neo4j and forks of Neo4j such as GFI's ONgDB. Mr. Suhy created a new offering called the Government Package for Neo4j which was marketed to government agencies as a consulting package. *See* 2-ER-235. It provided consulting, support, and tools focused

specifically on government needs relating to solutions development around Neo4j

open-source software.

> iGov's website stated:

> The principle [*sic*] behind PureThink and the Government Package has created a new corporate entity called iGov Inc**., which is not a Neo4j Solution Partner.  Because iGov Inc. is not a solution partner**, it can offer packages at great cost saving to US Government Agencies as it has no restrictions on working with Neo4j Enterprise **open-source licenses**.

> **…**

> iGov Inc's new Government Package for Neo4j can be added to any Neo4j instance making it a "Government Edition."  By default, all Government Packages for Neo4j now come[] with Neo4j Enterprise included under it's [*sic*] open-source license!

2-ER-235 (emphasis added).

The iGov website noted that it offered a "Government Package for Neo4j"

and "Government Development Package with Neo4j Enterprise."  2-ER-235; 2-

ER-253.  The website stated that iGov was "the only US Federal contractor

providing Neo4j Enterprise binaries packaged with it's [*sic*] free Open-source

License!"  2-ER-264.  The website also used Neo4j in URLs and displayed a

"Request Procurement Document Package" link with an email address of

mailto:Neo4j@igovsol.com.  5-ER-946.

The court below stated that "[i]t is undisputed that PureThink and iGov

initially marketed a product called 'Neo4j Enterprise,' and a 'Government Package

for Neo4j,' before rebranding Neo4j Enterprise as ONgDB."  1-ER-21.  This

statement mischaracterizes both what iGov and PureThink marketed and who controlled ONgDB. iGov offered consulting services, not software products. There is no evidence that iGov ever offered Neo4j Enterprise alone—it marketed the "Government Package for Neo4j" by stating, in part, that "iGov Inc.'s open-source enterprise packages provide a better value than Neo4j Enterprise commercial support subscriptions because 100% of the cost goes to support and development services, not un[n]ecessary and more restrictive commercial licenses," and "[w]e offer the same support features and SLAs as the Neo4j Enterprise commercial subscriptions offered by Neo4j Inc. partners, *but for the open-source licenses enterprise distributions.*" 4-ER-935; 5-ER-937 (emphasis added). In other words, the iGov website made clear that it was *not* offering the commercially-licensed version of Neo4j EE, but rather a consulting package focused on open-source-licensed versions of Neo4j EE or forks such as GFI's ONgDB. Further, the website stated that iGov packages included an optional Neo4j Enterprise distribution that iGov had compiled for the community from the unmodified source code taken directly from Neo4j Sweden's official GitHub repository. 2-ER-276, 279.

Following release of Neo4j EE version 3.5, which Neo4j USA offered only in a commercial version, Brad and Ben Nussbaum, owners of Atom Rain, Inc. and GraphGrid, Inc., formed Graph Foundation, Inc. ("GFI"), the purpose of which

12

was to develop Neo4j on a non-profit basis using open-source versions of the software.[4] 2-ER-314, 315 . The fork of Neo4j which GFI eventually created was named ONgDB (Open Native Graph Database).

The Court's statement that PureThink and iGov had "rebranded" Neo4j Enterprise as ONgDB is not supported by the record. GFI created and controlled ONgDB; there is no evidence PureThink or iGov had anything to do with the way GFI might have marketed ONgDB. Rather, the iGov website recommended ONgDB for clients who did not need the support solutions offered either by iGov or Neo4j USA. 4-ER-935. The website suggested that consumers who did not want to obtain a commercial license for Neo4j Enterprise could use ONgDB as a fork of Neo4j that offered many of the same features as Neo4j Enterprise. 4-ER-935.

GFI began promoting ONgDB, which was available for free. 6-ER-1315, 1322. Mr. Suhy, as a volunteer contributor, replaced the modified AGPL license (*i.e.*, the AGPL license with the Commons Clause) under which Neo4j Sweden released Neo4j EE 3.4 with the unmodified AGPL because he believed that the

---

[4]     The Neo4J entities sued GFI at the same time as PureThink, iGov and Mr. Suhy. GFI settled out shortly before the summary judgment was entered.

Commons Clause was not a permitted change for the AGPL.[5]  3-ER-478; 7-ER-1651, ¶ 29.  The propriety of this change is discussed in the Argument.

The "landing page" for GFI's ONgDB website was titled "ONgDB—Neo4j Enterprise Fork: Graphs for everyone."  4-ER-861.  Mr. Suhy promoted GFI's ONgDB fork of Neo4j as "100% free and open" without the limitations imposed by the commercially licensed edition of Neo4jEE v. 3.5.x.  *See, e.g.*, 4-ER-871.  GFI's ONgDB website further declared that "ONgDB distributions are licensed under AGPLv3 as a free and open drop-in replacements of Neo4j Enterprise commercial licensed distributions with the same version number."  4-ER-915.  On the "downloads" page, GFI again described ONgDB 3.5.5 as a "drop-in replacement for Neo4j Core and Enterprise 3.5.5."[6]  iGov's website made similar statements—but noted that ONgDB was a drop in replacement for Neo4j Community and Neo4j Enterprise commercial distributions.  5-ER-1012.   Neo4j Community Edition does not have enterprise features.

By December 2020, ONgDB v 3.5.1 had been downloaded over 14,000 times.  *See* 1-ER-10.  Neo4j USA provided evidence that a handful of customers

---

[5]    Mr. Suhy only removed the Commons Clause from license texts that indicated that the Free Software Foundation held the copyright and which had directions to users to insert the AGPL content verbatim.  7-ER-1651, ¶ 29.  Other contributors later may have removed the Commons Clause from other licenses.

[6]    The parties disagreed about what a "drop-in replacement" actually means— we discuss this dispute in the Argument.

who encountered issues with ONgDB have directed questions to Neo4j USA.  5-ER-1138, 1162, 1170, 1186.

## VI. SUMMARY OF ARGUMENT

The court determined that Neo4j USA had standing to bring a trademark infringement claim notwithstanding that it is not the owner or exclusive licensee of the Neo4j mark.  It did so based upon the "related companies doctrine," which, in certain circumstances, allow uses by a related entity to inure to the benefit of the trademark registrant.  But the related companies doctrine does not apply here because Neo4j Sweden, the owner of the mark, did not control the use of the mark by Neo4j USA.

Even assuming that Neo4j USA had standing, the court's conclusion that defendants had infringed misapplied the nominative fair use doctrine.  Under that doctrine, a use of a trademark to describe plaintiffs' mark by the defendants is not infringing.  The court rejected application of the doctrine here because it believed that defendants were misusing plaintiffs' mark to dupe consumers into believing that the products and services defendants offered were somehow affiliated with plaintiffs.  However, the court overlooked the context of how open-source software is used.  Defendants here described their offerings as based on open-source versions of Neo4j.  That was an accurate description of what plaintiffs offered, and the language of defendants' websites made clear that defendants worked only with

open-source versions of Neo4j. Thus, the nominative fair use doctrine should have prevented a finding of infringement.

The court also found that defendants had engaged in false advertising, largely based upon its conclusion that: (1) statements made by defendants to the effect that the products with which defendants worked were free and open source versions of or alternatives to commercially licensed versions of Neo4j, and (2) statements that descriptions of the products with which defendants worked were "drop in" replacements for Neo4j were misleading. The first conclusion is faulty because the defendants made clear on their websites and elsewhere that defendants were not affiliated with Neo4j USA. The second conclusion is erroneous because the court assumed that the phrase "drop in replacement" meant that the products with which defendants worked were feature-for-feature duplicates of Neo4j commercial versions, whereas it is a jury question what the phrase meant. The fact that defendants described the product offered by GFI as a drop in replacement for both commercial and open source versions of Neo4j, where those versions differ in features, implies that defendants were not offering feature-for-feature replacements.

Finally, the court's finding that defendants had engaged in false designation of origin is faulty because, applying the *Sleekcraft* factors, there is little likelihood

of consumer confusion.  For that reason, the court should not have held defendants

liable for false designation of origin.

## VII.  ARGUMENT

### A.  Standard Of Review.

> A grant of summary judgment is reviewed de novo.  We must
> determine, viewing the evidence in the light most favorable to the
> nonmoving party, whether there are any genuine issues of material fact and
> whether the district court correctly applied the relevant substantive law. …
> The court must not weigh the evidence or determine the truth of the matter
> but only determine whether there is a genuine issue for trial.

*MAI Systems Corp. v. Peak Computing, Inc.*, 991 F.2d 511, 516 (9th Cir. 1993).

"Because of the intensely factual nature of trademark disputes, summary judgment

is generally disfavored in the trademark arena."  *Interstellar Starship Servs, Ltd. v.*

*Epix Inc.*, 184 F.3d 1107, 1109 (9th Cir. 1999).

This Court usually reviews a preliminary injunction under an abuse of

discretion standard, which means that it reviews questions of law *de novo* and

determinations of fact under the clearly erroneous standard.  *E.g.*, *Pom Wonderful*

*LLC v. Hubbard*, 775 F.3d 1118, 1123 (9th Cir. 2014).  In this instance, however,

the court's preliminary injunction is "inextricably bound up" with its legal

resolution of the summary judgment; this Court therefore exercises plenary review.

*MAI Systems*, 991 F.2d at 516.

### B. Neo4j USA Lacks An Ownership Interest That Would Give It Standing To Sue For Trademark Infringement

To establish standing for a claim under 15 U.S.C. § 1114, the plaintiff must be "(1) the owner of a federal mark registration, (2) the owner of an unregistered mark, or (3) a nonowner with a cognizable interest in the allegedly infringed trademark." *E.g. Halicki Films, LLC v. Sanderson Sales & Mktg.*, 547 F.3d 1213, 1225 (9th Cir. 2008). Neo4j USA is the registrant of the mark in the United States, which gives rise to a rebuttable presumption that it is the owner of the mark. *Pom Wonderful*, 775 F.3d at 1124. Although the presumption is a strong one, it may be overcome by a preponderance of the evidence. *E.g.*, *West Florida Seafood, Inc. v. Jet Restaurants, Inc.*, 31 F.3d 1122, 1125 (Fed. Cir. 1994). "Under the Lanham Act, registration of a trademark creates a rebuttable presumption that the mark is valid, but the presumption evaporates as soon as evidence of invalidity is presented." *Hokto Kinoko Co. v. Concord Farms, Inc.*, 810 F.Supp.2d 1013, 1022 (C.D. Cal. 2011).

Because the evidence showed that Neo4j Sweden was the owner and user of the mark at the time of registration,[7] the district court relied upon the "related companies doctrine" to show that Neo4j USA had an ownership interest which gave it standing to sue. Under that doctrine,

---

[7] Again, Neo4j Sweden was not named as a plaintiff in any of the trademark causes of action in the TAC.,

> Where a registered mark or a mark sought to be registered is or may be used legitimately by related companies, such use shall inure to the benefit of the registrant or applicant for registration, and such use shall not affect the validity of such mark or of its registration, provided such mark is not used in such manner as to deceive the public. If first use of a mark by a person is controlled by the registrant or applicant for registration of the mark with respect to the nature and quality of the goods or services, such first use shall inure to the benefit of the registrant or applicant, as the case may be.

15 U.S.C. § 1055. The court below also quoted 15 U.S.C. § 1127, which defines a "related company" as "any person whose use of a mark is controlled by the owner of the mark with respect to the nature and quality of the goods or services on or in connection with which the mark is used." 1-ER-17-18. The court failed to consider how these definitions applied in this case.

Construed together, the provisions cited above state that the use of a mark by a "related company" inures to the benefit of an applicant or registrant so long as the owner of the mark (here, Neo4j Sweden) controls the nature and quality of the goods and services on which the mark was used at the time of the application. However, Neo4j Sweden, the owner of the mark, did *not* control the applicant's (*i.e.*, Neo4j USA's) use of the mark in the United States. Rather, the license from Neo4j Sweden to Neo4j USA was and is non-exclusive. 11-ER-2414.

A non-exclusive license, by definition, is one where the owner does *not* control the nature and quality of the goods or services on which the mark is used. *E.g.*, *Upper Deck Co. v. Paninia America, Inc.* 2021 U.S. Dist. Lexis 71157 (No 20cv185-GPC(KSC), April 13, 2021) at *11 ("standing may exist where the

licensing agreement both [1] grants an exclusive license and [2] grants to the exclusive licensee a property interest in the trademark, or rights that amount to those of an assignee") (emphasis in original)). "Where the license is non-exclusive, the licensee does not have standing to bring an infringement action." *Quabaug Rubber Co. v. Fashion Shoe Co.*, 567 F2d 154, 159-60 (1st Cir. 1977); *National Licensing Association, LLC v. Inland Joseph Fruit Co.*, 361 F.Suup.2d 1244, 1254 (E.D. Wash. 2004) ("[w]here a licensing agreement does not grant the licensee a property interest in the mark or otherwise assign to the licensee the registrant licensor's ownership right, the licensee, even if exclusive, cannot enforce the mark" under section 1114).

As the Trademark Trial and Appeal Board has explained, where a parent corporation uses the mark, controls the purported owner "(and not vice versa)," and controls the nature and quality of the goods sold under the mark, the use of the mark by the parent corporation inures to the benefit of the subsidiary, as registrant. *Noble House Home Furnishings, LLC v. Floorco Enterprises, LLC*, 2016 TTAB LEXIS 100 (Trademark Trial & App. Bd. April 4, 2016). In this case, however, the owner of the mark, the subsidiary Neo4j Sweden, did not control the nature and quality of the goods offered under the mark by the registrant (Neo4j USA); Neo4j USA therefore is not entitled to the benefit of the related companies doctrine and lacked standing to bring an action under 15 U.S.C. § 1114.

Moreover, and perhaps more important, establishing whether Neo4j USA's registration is valid does not necessarily indicate that it is the *owner* of the mark. Ownership does not turn on registration (or registrability). *E.g.*, *Allard Enterprises v. Advanced Programming Resources, Inc.*, 146 F.3d 350, 356 (6th Cir. 1998) ("[o]ne of the bedrock principles of trademark law is that trademark or service mark ownership is not acquired by federal or state registration. … rights flow only from prior appropriation and actual use in the market") (internal citation and quotation marks omitted). Here, the related companies doctrine defines how an owner may take advantage of prior use of a trademark by a related company to obtain registration. It says nothing about ownership—and ownership of the Neo4j mark lies with Neo4j Sweden *alone*.[8]

---

[8] The court below seemed to believe that ownership of a mark can be established by the relationship and assumptions of the parties alone, stating that the "fact that Neo4j USA registered the … Mark can … be understood as evidence of the intention of the parties as to ownership of the mark." 1-ER 19. But ownership is established by the license agreement, which states that Neo4j Sweden owns the mark. Moreover, the notion that Neo4j Sweden has foregone ownership is belied by the facts that (1) it has never assigned rights to the mark in the United States to Neo4j USA, and (2) Neo4j Sweden has registered as owner of the mark outside the United States.

### C. Assuming For The Sake Of Argument That Neo4j Usa Had Standing, There Was No Infringement Because Defendants' Use Of The Mark Was Nominative Fair Use.

Even assuming, for the sake of argument, that Neo4j USA had standing to bring an action under 15 U.S.C. § 1114, the court's finding of infringement was erroneous because it failed to analyze properly whether defendants' uses of the mark were nominative fair use. As the court below noted, when a nominative fair use defense is raised, the fair-use analysis replaces the traditional likelihood of consumer confusion analysis. *E.g.*, *Playboy Enterprises, Inc. v. Welles*, 279 F.3d 796, 801 (9th Cir. 2002).

> In nominative fair use, the defendant uses the trademarked term not to describe its product, but to describe the plaintiff's. 'Nominative fair use of a mark—where the only word reasonably available to describe a particular thing is pressed into service—lies outside the strictures of trademark law … such use is fair because it does not imply sponsorship or endorsement by the trademark holder.'

*Align Technology, Inc. v. Strauss Diamond Instruments, Inc.*, 2019 U.S. Dist. LEXIS 63616 (N.D. Cal. April 12, 2019).

> In cases where a nominative fair use defense is raised, we ask whether (1) the product was "readily identifiable" without use of the mark; (2) defendant used more of the mark than necessary; or (3) defendant falsely suggested he was sponsored or endorsed by the trademark holder.

*Toyota Motor Sales, U.S.A., Inc. v. Tabari*, 610 F.3d 1171, 1175-76 (9th Cir. 2010). A defendant asserting nominative fair use need only show that it used the

mark to refer to the trademarked good.  The burden then reverts to the plaintiff to show a likelihood of confusion.  *Id.* at 1183.

In evaluating the nominative fair use factors, the district court decided that Mr. Suhy and iGov were using the Neo4j mark "to create the misleading perception that Defendants' products *were* Plaintiffs' products."  1-ER-22 (emphasis in original).  In reaching this conclusion, the district court improperly failed to consider the context of how iGov used the Neo4j mark.

iGov's use of the Neo4j mark was precisely the type that the nominative fair use doctrine was intended to address.  First, it would be difficult, if not impossible, to describe iGov's consulting services without informing users that the support packages iGov offered focused on either Neo4j Sweden's open-source packages or GFI's ONgDB (a fork Neo4j using open-source versions of Neo4j), without using the Neo4j mark.  And use of the entire Neo4j mark is necessary to describe to consumers what it was that iGov was offering—consulting services using either free open-source versions of Neo4j or ONgDB.

The district court decided that iGov's use of the Neo4j mark was not nominative fair use principally because it concluded that iGov suggested that it was offering "genuine" versions of Neo4j Enterprise.  1-ER-21.  The court noted that "neither product [*i.e.*, Neo4j Government Package and Neo4j Enterprise] was in fact a Neo4j USA product."  1-ER-21.  But the evidence to which the court

refers as proving this proposition illustrates how the court was misled. The court

stated that iGov's website "assured potential customers … that 'Neo4j Enterprise'

was 'the same official Neo4j Git[H]ub repositories as Neo4j Inc. uses for their paid

commercial licensed builds' except distributed under an open-source license." 1-

ER-21-22.

Noting that the "build" iGov used was the source code used by the "same

official Neo4j GitHub repositories as Neo4j Inc. uses" does not imply that the

open-source versions of Neo4j which iGov supported are identical to the "official"

Neo4j CEE. Rather, iGov was informing potential customers that, when it

"compiled" software from GitHub for Neo4j Enterprise, it would pull that software

from the "official Neo4j" repositories without modification.[9] 2-ER-248; 5-ER-

991. In other words, iGov was stating that both it and Neo4j USA compiled their

code from the same repositories on GitHub. There was no showing that this

statement was untrue or misleading. By concluding that neither of the products

referenced on the iGov site were "in fact a Neo4j USA product" (1-ER-21), the

---

[9]     Wikipedia defines "compiler" as follows:

In computing, a compiler is a computer program that translates computer code
written in one programming language (the source language) into another language
(the target language). The name "compiler" is primarily used for programs that
translate source code from a high-level programming language to a lower level
language (e.g. assembly language, object code, or machine code) to create an
executable program.

court answered the wrong question—the question is not how Mr. Suhy compiled the software offered by iGov, but whether iGov's uses of Neo4j suggest sponsorship by Neo4j. Both Neo4j USA and iGov were using Neo4j software licensed from Neo4j Sweden.

The trial court ignored how products such as Neo4j are identified in the open-source community. Like any user compiling the source code from GitHub into a runnable distribution, iGov would have to download the source code from Neo4j Sweden's repository of Neo4j on GitHub and compile it. And to describe the software, iGov told users that the source code that was used to create the compiled application was taken directly from Neo4j Sweden's GitHub repository and was under the open-source license.

Taken together, these statements by iGov indicated that it was offering a consulting package aimed at Neo4j, and it offered to compile open source Neo4j Enterprise from the official Neo4j GitHub repositories for users who did not already have Neo4j or ONgDB.

> When a domain name making nominative use of a mark does not actively suggest sponsorship or endorsement, the worst that can happen is that some consumers may arrive at the site uncertain as to what they will find. Outside the special case of trademark.com, or domains that actively claim affiliation with the trademark holder, consumers don't form any firm expectations about the sponsorship of a website until they've seen the landing page --if then. This is sensible agnosticism, not consumer confusion. … So long as the site as a whole does not suggest sponsorship or endorsement by the trademark holder, such momentary uncertainty does not preclude a finding of nominative fair use.

25

*Toyota Motor Sales*, 610 F.3d at 1179 (9th Cir. 2010).

The question is thus whether iGov's "site as a whole … suggest[s] sponsorship or endorsement" by Neo4j USA. And references to "Neo4j Enterprise" and "Government Package for Neo4j," in the context of the iGov website as a whole, and in the context of how open-source software is created and described, do not suggest such sponsorship (or, at worst, the issue is one for a jury).

The court did not properly weigh the impact of the actual language used on the iGov "landing page," which stated prominently:

> The principle [*sic*] behind PureThink and the Government Package has created a new corporate entity called iGov Inc., **which is not a Neo4j Solution Partner**.
>
> **Because iGov Inc. is not a solution partner**, it can offer packages at great cost saving to US Government Agencies as it has no restrictions on working with Neo4j Enterprise **open-source licenses**.

2-ER-235, 2-ER-261 (emphasis added). (Another section of the iGov website states that "iGov Inc has no relationship with Neo4j Inc." 2-ER-248). As noted, "consumers don't form any firm expectations about the sponsorship of a website until they've seen the landing page --if then." *Toyota Motor Sales*, 610 F.3d at 1179. The landing page here clearly does not suggest sponsorship by Neo4j USA (or Sweden, for that matter).

In light of this prominent language, the notion that iGov's website could create confusion (especially deliberate confusion!) about whether iGov's offerings were sponsored by Neo4j seems perverse.  Yes, the website identified Neo4j, but it simply stated undisputed facts—which is that there are open-source versions of Neo4j that iGov's prospective customers were free to use, and that if they preferred to use GFI's ONgDB, they were free to do that as well.  How iGov was supposed to communicate this information without using the Neo4j mark is not explained by the district court.

> This point is made directly on the iGov website:
>
> If you've been misled by Neo4j Inc sales people regarding your rights to use Neo4j Enterprise AGPL distributions with no limitations, please contact us. You can also view a few FAQs we have put together for our US Federal clients. Neo4j open-source FAQs (downloads.html#neo4j-os-faqs)
>
> ...
>
> If you want an older Neo4j Enterprise open-source distribution not found on the site, please email info@graphstack.io (mailto:info@graphstack.io) and tell us what version you would like. We are happy to package it for you then make it available on this site for everyone to benefit from.

5-ER-989.  iGov is thus telling customers that there are versions of Neo4j Enterprise that are open-source, and that iGov can compile the customer's preferred version from the GitHub repositories.  iGov was certainly *not* telling customers that it was offering instances of the commercial version of Neo4j Enterprise Edition.

The facts here are thus very different from those in *Adobe Systems v. A & S Electronics, Inc.*, 153 F.Supp.3d 1136, 1143 (N.D. Cal. 2015), on which the court relied. In that case, the defendant was selling Adobe products it had no right to sell, and its use of the "Adobe" mark was intended to mislead consumers into believing that the defendant was an authorized Adobe reseller. In this case, by contrast, the iGov website informed consumers "right off the bat" that it was not a "Neo4j Solution Partner," and that the Neo4j versions it used were "Neo4j Enterprise open-source licenses." 2-ER-235. As long as Neo4j makes instances of its program available open-source, it can hardly complain that the authors of forks using those open-source versions state the truth—*i.e.*, that they are based on open-source Neo4j versions.

This problem of describing a product that is based upon Neo4j, where the product makes legitimate use of the Neo4j code, is not well answered by the "standard" nominative fair use analysis. *Of course* a fork of Neo4j based upon an open-source version of the software describes itself by using the Neo4j mark. The distinction in this case is that the language on the iGov website makes clear that it offers a consulting package that is not offered by or endorsed by Neo4j USA. At the very least, the trial court should have left it to a jury to determine if the

language employed on the website adequately conveyed that the product being offered did not come from Neo4j USA.[10]

The trial court applied the same analysis to other uses of Neo4j that appeared on iGov's websites. One of the "sub-pages" within the website was igovsol.com/neo4j.html. 2-ER-245. In addition, Mr. Suhy and iGov used neo4j@igovsol.com as an email address for persons to inquire about iGov's consulting packages or Learn about GFI's ONgDB. 2-ER-244. The trial court stated that "[n]othing about the use of the Neo4j Mark in the URL or email can reasonably be interpreted to refer to Plaintiff's products."[11] 1-ER-22. But again, that conclusion overlooks the question whether the entire look and feel of the website would give the impression that Mr. Suhy and iGov were selling Neo4j USA's commercial versions of the program, as opposed to informing users that iGov offered a consulting package focused on Neo4j which included an optional Neo4j Enterprise package iGov had compiled from unmodified source code from Neo4j Sweden's official GitHub repository. Given that the website prominently

---

[10] The court also relied on what it characterized as instances of actual confusion to show the nominative fair use defense was inapplicable. Such confusion, to the extent it could be said to exist, does not apply to the nominative fair use defense. *E.g.*, *Scholz v. Migliaccio*, No. C13-1229 JLR, 2013 U.S. Dist. LEXIS 118334, at *6 (W.D. Wash. Aug. 20, 2013).

[11] While not a part of the record, we note that there are literally thousands of forks/derivatives of Neo4j available on GitHub which use Neo4j as part of their URL. *See, e.g.*, https://github.com/search?p=5&q=neo4j&type=Repositories

featured a statement that iGov was not a "Neo4j Solution Partner" (2-ER-235), and goes further to state "iGov Inc is not a partner or reseller of Neo4j Inc and is not under any open-source usage prohibitions that resellers and partners may be under" (2-ER-235), a reasonable consumer would be aware that what was offered was not a commercial version of the programs offered by Neo4j USA.

The conclusion that iGov's references to Neo4j were not nominative fair use is also questionable in light of the care that consumers would use in identifying the various versions of Neo4j. Neo4j is a sophisticated database program which can cost (for those who use the non-open-source versions) hundreds of thousands of dollars. Any person looking to use the iGov site or GFI's ONgDB would *have* to be aware that, when iGov stated that it offered consulting on a free and open-source version and was not a Neo4j solution partner, it was informing users that GFI had created a fork of Neo4j called ONgDB which was not a commercial Neo4j licensee, and that iGov Inc only offered consulting packages focused on Neo4j open source licenses and forks of Neo4j such as GFI's ONgDB.

We recognize, of course, that the "sophistication of consumers" is one of the factors to be weighed in determining "regular" trademark infringement, rather than nominative fair use. *See, e.g. AMF, Inc. v. Sleekcraft Boats*, 599 F.2d 341, 348 (9th Cir. 1979) ("*Sleekcraft*") (noting that the "degree of care likely to be exercised by the purchaser" is one of the factors to be considered in determining if a

particular use infringes).  But in circumstances where courts are attempting to

determine if consumers would conclude that iGov or GFI's ONgDB was sponsored

by or affiliated with Neo4j USA because of the use of the Neo4j name on the iGov

website, it is surely relevant that persons likely to be viewing the website would

know, based on the information on iGov's website and general principles of open-

source software, that: (1) Neo4j Sweden had open-source versions, (2) iGov was

not affiliated with Neo4j USA, (3) ONgDB was a fork authored by GFI based on

open-source versions of Neo4j Sweden's open-source versions, and (4) the

commercial versions of Neo4j might cost hundreds of thousands of dollars, while

what iGov was offering was consulting packages focused only on free and open-

source Neo4j and Neo4j forks.  In fact, that is precisely what is conveyed by the

website.

 The court below asserted that defendants' use of the Neo4j mark went

beyond

> what is necessary to identify ONgDB as a "fork" of Neo4j by (1) extensively
> using … "Neo4j" and "Neo4j Enterprise" on [the] iGov and PureThink
> websites without proper trademark notices, (2) using embedded "Neo4j"
> links to Neo4j USA's website and GitHub repository on their websites; (3)
> hyperlinking to Plaintiffs' build instructions, support documentation and
> change logs containing the Neo4j Mark rather than creating and hosting their
> own with the ONgDB name; and (4) using … "Neo4j Enterprise" and
> "ONgDB' interchangeably to promote ONgDB on their websites.  The Court
> finds these embedded links to Plaintiffs' sites and links to Plaintiffs'
> documentation, along with the repeated references to "Neo4j," including in
> the title of the products themselves, create the misleading perception that
> Defendants and Plaintiffs are affiliated.

1-ER-23-24.

The district court failed to recognize that iGov does not control or offer a product called ONgDB and only offers consulting packages focused on open source Neo4j. The court also usurped the role of the jury, which should have been allowed to consider whether the uses of the mark were nominative fair use.

It is hardly surprising that references to the free and open-source versions of Neo4j would refer to those versions on iGov's website, just as references to Neo4j's "builds" or support documentation would refer to those documents on Neo4j's website or on GitHub. The court's statement that "[a]ny reasonable consumer reading about Neo4j Enterprise would conclude that they are getting official Neo4j EE, or in the case of the 'Government Package for Neo4j,' consumers would conclude they are getting Neo4j EE in a specialized government package" (1-ER-22) misreads the actual language. The court simply does not explain how a website which states prominently on its landing page that iGov is offering a consulting package with an optional Neo4j EE edition that iGov compiled directly from unmodified source code on Neo4j's GitHub repository could be said to mislead consumers. Nor does the court explain how users are misled when the website informs users immediately that iGov "is not a Neo4j Solution Partner" (2-ER-235), and states elsewhere that "iGov Inc is not a partner or reseller of Neo4j Inc and is not under any open source usage prohibitions that

resellers and partners may be under" (5-ER-1007). In light of this language, the court's assertion that consumers were misled to believe "that Defendants and Plaintiffs are affiliated" (1-ER-24) is unsupportable.

In a sense, the court below was correct that references to GFI's ONgDB and Neo4j are mixed up on the iGov website. The website was attempting to inform consumers that ONgDB was a viable alternative to Neo4j using earlier Neo4j versions to create a new graph database, ONgDB. Informing consumers that the "core" of Neo4j open-source editions had been used in ONgDB is not the same thing as saying that ONgDB and the commercial versions of Neo4j were identical, which the trial court seemed to believe.[12]

---

[12] The court's determination that defendants' use of the Neo4j mark was not nominative fair use does not necessarily determine whether defendants' use of the mark is forbidden. Even if a particular use of a mark does not satisfy the conditions for nominative fair use, the court is nevertheless obliged to consider if the use of the mark is likely to cause confusion under *Sleekcraft*. *E.g.*, *Align Technology,* 2019 U.S. Dist. LEXIS 63616, at *22; *see also, Diller v. Barry Driller, Inc.*, No. CV 12-7200 ABC (Ex), 2012 U.S. Dist. LEXIS 133515, at *9 (C.D. Cal. Sep. 10, 2012) (noting that the court must evaluate nominative fair use before turning to *Sleekcraft* factors). The court here considered the *Sleekcraft* factors in examining the issue of false designation of origin and we evaluate the court's conclusions in that context below.

### D. The Court's Finding That Defendants Engaged In False Advertising And False Designation Of Origin Overlooks How Consumers Would View The iGov Website.

In addition to finding trademark infringement under 15 U.S.C. § 1114, the court below determined that defendants had engaged in false designation of origin and false advertising under 15 U.S.C. § 1125. A plaintiff need not have a direct ownership interest in a mark to bring a claim for false advertising under § 1125. Rather, to maintain a claim under § 1125(a), the plaintiff must show that it has a commercial interest in the allegedly misused mark that is "likely to be damaged" by the defendant's use of the mark. *Waits v. Frito-Lay, Inc.*, 978 F.2d 1093, 1109 (9th Cir. 1992).

The court below stated that "[d]efendants have made numerous misrepresentations in their advertisement and promotion of ONGDB." 1-ER-26. According to the court, these misrepresentations consist of two separate types: (1) that ONgDB and Neo4j Enterprise are "free and open-source" versions of or alternatives to commercially licensed Neo4j EE; and (2) statements that ONgDB is a "drop-in replacement" for an existing commercial license distribution of the same version number of Neo4j. 1-ER-26. In each instance, the court ignored that defendants did not have a product called ONgDB (GFI did), and how defendants might legitimately describe a consulting package focused on Neo4j open source licenses and ONgDB.

34

Before turning to the court's reasoning, it is necessary to point out that the evidence on which the court relied for these conclusions consists largely of statements made on the *GFI website*, not on the iGov or PureThink sites. *See* 1-ER-26, referring to pp. 29-30 of plaintiffs' memo, which in turn cites to 4-ER 919, 927, *etc.* The iGov website does contain statements "similar" to those the court relies upon, to the effect that a user who did not "need ONgDB Enterprise or Neo4j Enterprise open-source licensed distribution" could "simply download ONgDB Enterprise … as a drop-in replacement for an existing commercial licensed distribution of the same version number." 4-ER-935. But this statement does not imply that ONgDB is a feature-for-feature replacement for the commercial enterprise versions of Neo4j, since it states that ONgDB is a "drop-in replacement" *for users who don't need the support offered for commercial editions*.

Furthermore, the iGov website also states "ONgDB is a drop in replacement for the Neo4j Community and Enterprise branded distributions." 5-ER-1012. Since Neo4j Enterprise has many features not present in Neo4j Community, it is difficult to see how users could believe that, by calling ONgDB a drop-in replacement, iGov was asserting that ONgDB was a feature-for-feature copy of Neo4j Enterprise.

### E.  References to ONgDB As "Free and Open-Source" Are Accurate.

Moreover, the court's determination that references to ONgDB and Neo4j Enterprise as "free and open-source" versions of Neo4j somehow misrepresent what consumers are actually receiving does not, in fact, describe how these references are misleading.  The versions of Neo4j which GFI's ONgDB fork uses are *not* the commercial versions of that software, and nothing in the descriptions of that software on the iGov website implies that they are.  Rather, the iGov website accurately describes ONgDB as a fork of the *free* versions of Neo4j.

Neo4j USA, having decided that it wishes to monetize a software program that had previously been free and open-source, is now attempting to shut down any uses of the free and open-source versions, without removing any of those versions from Neo4j Sweden's free and open-source iterations on GitHub.

Consumers interested in Neo4j have options: They can obtain an open-source forked version of the software for free (without service); they can compile Neo4j Enterprise directly from the official Neo4j Sweden GitHub repository or have someone do it for them; or they can pay for the commercial version of the software, with service provided by Neo4j USA.  Neo4j USA *cannot* prevent those who create forks of the free software from informing users that (1) there are forks of the Neo4j software that are not subject to expensive licenses and (2) the "open-

source" forks of Neo4j can be obtained without obtaining a license from Neo4j USA.

As the court pointed out, plaintiffs' arguments about whether ONgDB is free and open-source largely depend upon whether defendants properly removed the so-called Commons Clause that Neo4j Sweden added to versions 3.4 and later of Neo4j under the AGPL. 1-ER-8, 26-27; *see* 6-ER-1415 (text of Commons Clause). However, defendants argued that, the software is free and open-source and by its own terms, the AGPL license (even with the Commons Clause added by Neo4j Sweden) allowed defendants to inform possible consumers that it was possible— indeed desirable—to use versions of Neo4j EE versions 3.4 and earlier, but did not indicate that iGov or GFI's ONgDB were offerings by Neo4j USA.

In any event, the court's conclusion concerning removal of the Commons Clause is fatally flawed. The court noted that AGPL versions 3.4 and later (which are incorporated into the Neo4j Sweden software license) state, in Section 7, that

> non-permissive additional terms [in this License] are considered 'further restrictions' within the meaning of section 10. If the Program as you received it, or any part of it, contains a notice stating that it is governed by this License along with a term that is a further restriction, you may remove that term "You may not impose any further restrictions on the exercise of rights granted or affirmed under this License.

Furthermore, section 10 states that "[y]ou may not impose any further restrictions on the exercise of the rights granted or affirmed under this License." 1-ER 26; 6-ER-1411-13.

Together, these provisions state that if a licensee receives the work (*i.e.*, Neo4j in any version covered by the license, including Neo4j EE 3.4 and later) with restrictive "non-permissive additional terms," they can be removed under section 7. Thus, defendants argued below that the Commons Clause which Neo4j Sweden added to the AGPL license from versions 3.4 onward could be removed as more restrictive than the AGPL license itself.

The court rejected this argument on the grounds that the license states that "[e]ach licensee is addressed as 'you'," and therefore "Sections 7 and 10 [of the AGPL] prohibit a *licensee* from imposing further restrictions, but do not prohibit a *licensor* [*i.e.*, Neo4j USA, in the court's view] from doing so." 1 ER-26-27. But even assuming the court's construction is correct, the court overlooks the way the license uses "you." The license states "[i]f the Program as *you* received it, or any part of it, contains a notice stating that it is governed by this License along with a term that is a further restriction, *you* may remove that term." 6-ER-1412 (emphasis added). Even if the AGPL permitted Neo4j to add the Commons Clause, the court does not explain why the licensee was prohibited from removing more restrictive terms.

Moreover, the court's construction has a glaring flaw. The court did not ask who was the copyright holder. Under the AGPL, the Free Software Foundation is the holder of the copyright. This is made clear in the Preamble, which states that

the FSF has a 2007 copyright on the document, and that "[e]veryone is permitted to copy and distribute verbatim copies of this license document, but changing it is not allowed." 6-ER-1408. Thus, when the AGPL states that each licensee is addressed as "you," that designation included Neo4j Sweden as a licensee of the copyright holder *and* those who sub-licensed from it. And there is no doubt that anyone using the AGPL to copyright their work is prohibited from adding more restrictive terms and that "downstream" users thus had a right to remove those restrictive terms.

In any event, the district court's conclusions do not distinguish between Neo4j Sweden—which imposes the Commons Clause—and Neo4j USA, which seeks to take advantage of that clause. As noted, Sweden is *not* the plaintiff on any of the trademark-related claims. Thus, Neo4j USA is attempting to enforce rights granted to Neo4j Sweden, with no showing that Neo4j USA had been assigned any of the rights granted under the license which included the Commons Clause.

While the question whether it was illegitimate for ONgDB to have removed the Commons Clause may be difficult, there can be no argument that Neo4j USA had any right to determine whether the Commons Clause applies to the versions of ONgDB offered in the United States. If Neo4j Sweden wished to prove that instances of Neo4j as described on the ONgDB website were not genuine editions of Neo4j, it could have registered the mark and brought a claim for infringement.

What it could *not* do was require that instances of the Commons Clause should be applied to software offered by Neo4j USA even though Neo4j Sweden was the author of the versions listed on the website and there was no showing that Neo4j USA had any ownership interest in the versions which involved the Commons Clause.

>    **F.    Descriptions Of ONgDB As A "Drop-In" Replacement For An Existing Commercially Licensed Distribution Of The Same Version Number of Neo4j Are Accurate.**

One of the most contentious of the disputes between Neo4j USA and defendants has to do with defendants' descriptions of ONgDB as a "drop-in replacement" for Neo4j EE. As the court recognized, plaintiffs argued that "because the software was not of the same quality and did not contain all of the features of Neo4j EE," it was misleading for defendants to describe it as a "drop-in" replacement.[13] 1-ER-27. Even assuming that plaintiffs' characterization of ONgDB as being of inferior quality or lacking certain features is accurate, the court's resolution of the issue usurps the role of the jury.

We note first that the assertion that ONgDB was an inferior product was based upon a claim from Philip Rathle, the Vice President of Products at Neo4j

---

[13]    As noted, the court overlooked the fact that iGov made statements that ONgDB is a drop in replacement for both Community and Enterprise editions. 5-ER-1012. This implies that ONgDB is *not* a feature-for-feature reproduction of Neo4j, since the Enterprise and Community editions have different features.

USA.  Mr. Rathle describes having obtained a copy of ONgDB (which, true to its open-source nature, was available on GitHub) and, based on his observations—but no testing—he stated his belief that none of the defendants, nor GFI and its principals, "would be able to replicate the same level of reliability, quality, or features of subsequent releases of Neo4j® EE 3.5.x by Plaintiffs."  6-ER-1375. Notwithstanding that he had both the means and the opportunity to test ONgDB, however, there is no evidentiary showing that ONgDB did *not* replicate the reliability of Neo4j EE itself.  Mr. Rathle's conclusion that "neither Neo4j USA nor Neo4j Sweden would consider ONgDB v3.5.9 to be *the exact equivalent both in function and quality as the same version of official Neo4j® EE v3.5.9*" (6-ER-1376) is thus *ipse dixit*, with no evidentiary support beyond his unsupported opinion.

Deciding whether ONgDB is a "drop-in replacement" would require a jury to determine whether the phrase means that ONgDB duplicates all of the features of Neo4j EE, or whether it means that ONgDB is compatible with Neo4j CE and EE versions of Neo4j.  Plaintiffs' view of this question is that stated by Mr. Rathle, which is that, because "neither Neo4j USA nor Neo4j Sweden would consider ONgDB v3.5.9 to be the exact equivalent both in function and quality as the same version of official Neo4j® EE v3.5.9" (6-ER-1376), it could not be a drop-in replacement.  Mr. Suhy explained, on the other hand, that, by describing ONgDB

as a drop-in replacement, he meant that "anyone who is currently using Neo4j commercial or open-source distributions can switch over to ONgDB." 7 ER 1655, ¶ 45. More specifically, "ONgDB allows users of other versions of Neo4j (including older versions of commercial and open-source community and enterprise) to drop-in the files from the same version number and operate the same data and run queries on it, which is the core functionality of a database." 7-ER-1657, ¶ 57. Neo4j USA presented no evidence that users of Neo4j *could not* "drop-in" their data to ONgDB and be able to run queries.

One way of conceptualizing the issue whether ONgDB is a "drop-in replacement" for Neo4j is to view the Neo4j core as the "motor" of a software solution. If a secondary distributor described a motor it sold as a "drop-in replacement" for an original equipment manufacturer's engine for a truck, a consumer would believe that the engine could be installed in the truck and that, with the new engine, the truck would run. No consumer would believe, without more, that the "drop-in replacement" would perform exactly as the original equipment manufacturer's engine. Moreover, there is no reason to believe that, when defendants described ONgDB as a "drop-in replacement" for Neo4j, consumers were misled into believing that ONgDB had the exact same functionality as instances of Neo4j commercial EE, especially when defendants

state it is a drop in replacement for *both* Community and Enterprise editions.  5-ER-1012.

The evidence showed that persons who used ONgDB should be able to run queries that would normally be run in Neo4j Community or Neo4j Enterprise Editions with the same version number, since the core source code is shared between Community and Enterprise editions.  It is, therefore, at the very least, a jury question whether iGov's descriptions of GFI's ONgDB as a "drop-in replacement" was accurate.  These are certainly not issues that can be decided on summary judgment on the basis that instances of ONgDB do not duplicate all the functionality of Neo4j Commercial (CEE), when defendants clearly state that ONgDB is a drop in replacement for the open source community editions which have no enterprise features at all.

## G.  The Court's Finding Of False Designation Of Origin Is Fatally Flawed.

In addition to its decision that defendants had made false advertising claims, the court below concluded that defendants had engaged in false designation of origin.  The origin of Neo4j for both Neo4j USA and defendants is Neo4j Sweden.  The court's conclusion was based upon its evaluation of the *Sleekcraft* factors.  *Sleekcraft* defines the factors a plaintiff must satisfy to show that the defendants' use of a mark is an infringement.  Those factors are: (1) strength of the mark; (2)

proximity of the goods; (3) similarity of the marks; (4) evidence of actual

confusion; (5) marketing channels used; (6) type of goods and the degree of care

likely to be exercised by the purchaser; (7) defendant's intent in selecting the mark;

and (8) likelihood of expansion of the product lines.  599 F.3d at 348.

It goes without saying that, in the circumstances where a defendant (such as

PureThink and iGov) is using a mark without modification, the *Sleekcraft* factors

that look to whether the defendant is using the mark are not particularly relevant.

The important factors in the present analysis are whether there is evidence of actual

confusion, the type of goods and degree of care used, and the defendant's intent in

choosing the marks.  *Sleekcraft*, 599 F.2d at 348-49.

The court below believed that Mr. Suhy and iGov were creating actual

confusion.  The only evidence on this issue is a showing that some persons using

ONgDB sent questions to Neo4j USA.  But the relevance of such questions is not

obvious.  Since Neo4j EE versions 3.4 and earlier were and still are available free

and open-source from GitHub, instances of "confusion" do not reveal much.  Why

wouldn't consumers believe that if versions of Neo4j are available open-source,

Neo4j USA might support it?  Did these consumers get their information from

GFI's website, or from iGov's website?  There is certainly no suggestion that

consumers were actively misled into believing that ONgDB and Neo4j (in

whatever version) were identical, or that questions about Neo4j would be answered by the creators of ONgDB (or vice-versa).[14]

Similarly, as noted, the "type of goods and degree of care used" weigh heavily in favor of a finding of no confusion. As discussed above, the "commercial" versions of Neo4j are expensive, and no one familiar with these types of databases would be likely to confuse ONgDB with those commercial versions. Any prospective user of Neo4j would be aware that there were versions of Neo4j that used a commercial license, and other versions (and forks) that were available open-source.

Finally, as noted, the opening sentence on iGov's website informs users that iGov is "*not a Neo4j Solution Partner.*" 2-ER-235. It also informs users that "iGov Inc is not a partner or reseller of Neo4j Inc and is not under any open source usage prohibitions that resellers and partners may be under." 5-ER-1007. In light of this language, the notion that Mr. Suhy *intended* to mislead users into believing that iGov was somehow affiliated with or part of Neo4j is farfetched. 5-ER-1007; 2-235.

The court's assertion that "Defendants intended to convince consumers to buy Defendants' products instead of Neo4j EE commercial licenses" (1-ER-34) is

---

[14]    Moreover, the examples of "confusion" presented by Neo4j were a few queries among thousands and, as Mr. Suhy explained, did not necessarily even show customer confusion. 7-ER-1695, ¶¶ 25-29.

not only flawed because iGov offered consulting packages, not software products, but is, in essence, an attack on comparative advertising. Comparative advertising to explain to consumers they can purchase similar software or get it for free should be promoted, not enjoined. *See, e.g.*, *Network Automation, Inc. v. Advanced Systems Concepts, Inc.*, 638 F.3d 1137, 1152 (9th Cir. 2011) (the Ninth Circuit has "recognized that liability for infringement may not be imposed for using a registered trademark in connection with truthful comparative advertising").

The court's analysis of the question whether defendants misled consumers into believing that ONgDB can be considered a "drop-in" replacement is based upon the (unstated) premise that ONgDB was, in plaintiffs' words, the "exact equivalent both in function and quality as the same version of official Neo4j® EE." 6-ER-1376. But, as noted, (1) defendants did not make such a representation, (2) plaintiffs never did the tests that would be required to demonstrate that ONgDB was not an equivalent to the official versions of Neo4j, (3) defendants state that ONgDB is a drop in replacement for both Community and Enterprise distributions of Neo4j, and (4) it was, at worst, a jury question whether descriptions of ONgDB as a drop-in replacement are misleading in any way.

In short, there were, at the very least, questions of material fact concerning whether iGov's use of the Neo4j marks created consumer confusion under

*Sleekcraft*. This Court should therefore remand for a determination of the likelihood of consumer confusion under *Sleekcraft*.

## VIII. CONCLUSION

For the foregoing reasons this Court should reverse the summary judgment entered against appellants and vacate the preliminary injunction based upon it, with a remand to the district court to set the issues for trial.

Respectfully submitted,

Dated: August 16, 2021

_____/s/_____
Joseph A. Hearst

Counsel for Appellants John Mark Mr. Suhy, PureThink, LLC
And iGov, Inc.

## **STATEMENT OF RELATED CASES**

Appellant is unaware of any cases pending in this Court related to this case.

# UNITED STATES COURT OF APPEALS
## FOR THE NINTH CIRCUIT
### Form 8. Certificate of Compliance for Briefs

*Instructions for this form:* http://www.ca9.uscourts.gov/forms/form08instructions.pdf

**9th Cir. Case Number(s)** 21-16029

I am the attorney or self-represented party.

**This brief contains** 10,997 **words**, excluding the items exempted

by Fed. R. App. P. 32(f). The brief's type size and typeface comply with Fed. R.

App. P. 32(a)(5) and (6).

I certify that this brief *(select only one)*:

◉ complies with the word limit of Cir. R. 32-1.

○ is a **cross-appeal** brief and complies with the word limit of Cir. R. 28.1-1.

○ is an **amicus** brief and complies with the word limit of Fed. R. App. P. 29(a)(5), Cir. R. 29-2(c)(2), or Cir. R. 29-2(c)(3).

○ is for a **death penalty** case and complies with the word limit of Cir. R. 32-4.

○ complies with the longer length limit permitted by Cir. R. 32-2(b) because *(select only one):*

    ○ it is a joint brief submitted by separately represented parties;

    ○ a party or parties are filing a single brief in response to multiple briefs; or

    ○ a party or parties are filing a single brief in response to a longer joint brief.

○ complies with the length limit designated by court order dated _____.

○ is accompanied by a motion to file a longer brief pursuant to Cir. R. 32-2(a).

**Signature** /s/ Joseph A. Hearst    **Date** Aug. 17, 2021

*(use "s/[typed name]" to sign electronically-filed documents)*

*Feedback or questions about this form? Email us at forms@ca9.uscourts.gov*

**Form 8**      *Rev. 12/01/2018*