No. 21-16029

IN THE UNITED STATES COURT OF APPEALS
FOR THE NINTH CIRCUIT

NEO4J, INC., NEO4J SWEDEN AB,

*Plaintiffs-Appellees*,

v.

PURETHINK, LLC, IGOV, INC., JOHN MARK SUHY,

*Defendants-Appellants*.

On Appeal from the United States District Court
For the Northern District of California
No. 5:18-cv-07182-EJD
Hon. Edward J. Davila

## APPELLEES' ANSWERING BRIEF

Allonn E. Levy (State Bar No. 187251)
appeals@hopkinscarley.com
John V. Picone III (State Bar No. 187226)
jpicone@hopkinscarley.com
Jeffrey M. Ratinoff (State Bar No. 197241)
jratinoff@hopkinscarley.com
HOPKINS & CARLEY, ALC
70 S First Street
San Jose, CA 95113-2406
Telephone: (408) 286-9800

*Attorneys for Appellees*
Neo4j, Inc. and Neo4j Sweden AB

# DISCLOSURE STATEMENT

Pursuant to FRAP 26.1, the undersigned, counsel of record for Neo4j, Inc. ("Neo4j") certifies that Neo4j, Inc., as of this date, does not have a parent corporation and that no publicly held corporation holds 10% or more of its stock

The undersigned, counsel of record for Neo4j Sweden AB ("Neo4j Sweden") certifies that Neo4j, Inc., as of this date, is the parent corporation of Neo4j Sweden and that no publicly held corporation holds 10% or more of Neo4j Sweden's stock.

Date:  October 28, 2021

HOPKINS & CARLEY
A Law Corporation

*/s/ Allonn E. Levy*

Allonn E. Levy, Esq.

*Attorneys for Appellee*
Neo4j, Inc. and Neo4j Sweden AB

## STATEMENT REGARDING ORAL ARGUMENT

Appellees do not believe oral argument would aid in the Court's decisional process and therefore does not request oral argument. However, if the Court finds oral argument would be beneficial, Appellees would be honored to attend and present argument.

Date: October 28, 2021

HOPKINS & CARLEY
A Law Corporation

*/s/ Allonn E. Levy*
_____
Allonn E. Levy, Esq.

*Attorneys for Appellee*
Neo4j, Inc. and Neo4j Sweden AB

# TABLE OF CONTENTS

**Page**

DISCLOSURE STATEMENT ............................................................................i

STATEMENT REGARDING ORAL ARGUMENT ........................................... ii

TABLE OF CONTENTS.................................................................................. iii

TABLE OF AUTHORITIES ............................................................................vi

I.     INTRODUCTION ....................................................................................1

II.    JURISDICTIONAL STATEMENT ..........................................................1

III.   STATUTORY AUTHORITIES ................................................................1

IV.   STATEMENT OF THE CASE .................................................................2

      A.     Procedural Facts .............................................................................2

      B.     Substantive Undisputed Facts ........................................................2

           1.     Identification of Relevant Entities and Individuals ..................2

           2.     Evolution of Neo4j-Branded Software and Appellants' Pirated Versions Thereof ...........................................................4

           3.     Appellees Registered the NEO4J Mark ...................................8

           4.     It is Undisputed that Appellants Use Appellees' Source-Identifying NEO4J Mark to Market their Inferior Software ...................................................................................8

           5.     Appellants Falsely Advertise That ONgDB Replaces Neo4j® EE And Is Free and Open Source .............................12

           6.     Appellants Appeal the Interim Order Based Upon The Ordered Injunctive Relief .......................................................13

V.     SUMMARY OF THE ARGUMENT ......................................................14

VI.    STANDARD OF REVIEW ...................................................................16

VII.   ARGUMENT..........................................................................................17

      A.     Appellants Demonstrate No Error in the Trial Court's Finding That Neo4j USA had Standing to Assert its Lanham Act Claims .....17

           1.     Standing Exists Under §1114(1) of the Lanham Act Based Upon the Unchallenged Finding That Neo4j USA is the Owner of the Registration for the NEO4J Mark ...........18

2. Standing Exists Under §1125(a) of the Lanham Act Based Upon the Unchallenged Finding That Neo4J is a "Nonowner With a Cognizable Interest" in the Mark ............ 19

3. The Related Companies Doctrine is Irrelevant to Appellant's Standing Challenge .............................. 20

   a. Had Appellants Properly Raised the Issue of Ownership, They Nevertheless Fail to Assign Error to the Legal Framework Used by the Trial Court ............................................................. 21

   b. Appellants' Sole Evidentiary Challenge – The Neo4J License – Fails to Overcome the Presumption of Validity.................................... 23

B. Appellants Demonstrate No Error In the Trial Court's Conclusion That Appellants Failed to Defeat Neo4j USA's Infringement Claim Through Nominative Fair Use.......................... 27

1. The Unchallenged Threshold Finding that Appellants Did Not Use the NEO4J Mark to Identify Appellees' Products is Dispositive.............................................. 29

   a. Appellants' Promotion of iGov "Neo4j Enterprise" and iGov "Government Package for Neo4j" Described Appellants' Products .................................. 30

   b. Appellants Other Uses of the NEO4J Mark on iGov's Website Similarly Did Not Describe Appellee's Products....................................... 34

2. Appellants Fail to Establish Any Error in the Trial Court's Analysis under the Three-Prong New Kids Test ........ 36

   a. Appellants Fail to Challenge the Trial Court's Finding that Appellants Used the NEO4J Mark More Than Was Reasonably Necessary ........................ 36

b.     The Trial Court's Finding that Appellants Used the NEO4J Mark to Suggest Endorsement of "Neo4j Enterprise" is Supported by Undisputed Record Evidence ......................................................................37

(1)     Endorsement of iGov's "Neo4j Enterprise"........39

(2)     Endorsement of ONgDB .....................................43

C.     The Trial Court's Finding of False Advertising in Appellants' Promotion of ONgDB Was Supported by Undisputed Record Evidence ............................................................................47

1.     Appellants' Assertions that ONgDB was "Free and Open-Source" Neo4j EE Were False.......................................48

2.     Appellants' Assertions that ONgDB was a "Drop-In" Replacement for Neo4j EE Were False or Misleading............54

D.     Appellants Demonstrate No Error in the Trial Court's Finding of Consumer Confusion in Granting Summary Judgment on False Designation of Origin .................................................................59

VIII.   CONCLUSION.............................................................................63

CERTIFICATE OF COMPLIANCE FOR BRIEFS

CERTIFICATE OF SERVICE

ADDENDUM

# TABLE OF AUTHORITIES

**Page**

CASES

*A-1 Ambulance Serv., Inc. v. Cty. of Monterey*,
  90 F.3d 333 (9th Cir. 1996) ...................................................................40

*Adidas America, Inc. v. Athletic Propulsion Labs, LLC*,
  120 U.S.P.Q.2d 1303, 2016 WL 3896826 (D. Or. 2016) ...................20

*Adobe Sys. Inc. v. A & S Elecs., Inc.*,
  153 F.Supp.3d 1136 (N.D. Cal. 2015) ..................................32, 33, 36

*Align Tech., Inc. v. Strauss Diamond Instruments, Inc.*,
  No. 18-CV-06663-TSH, 2019 WL 1586776 (N.D. Cal. Apr. 12, 2019)............29

*Allard Enterprises, Inc. v. Advanced Programming Res., Inc.*,
  146 F.3d 350 (6th Cir. 1998) ...............................................................26

*Altera Corp. v. Clear Logic, Inc.*,
  424 F.3d 1079 (9th Cir. 2005) .............................................................52

*AMF Inc. v. Sleekcraft Boats*,
  599 F.2d 341 (9th Cir. 1979) ........................................59, 60, 61, 62

*Anderson v. Liberty Lobby, Inc.*,
  477 U.S. 242 (1986) ..............................................................................16

*Animal Legal Def. Fund v. U.S. Food & Drug Admin.*,
  836 F.3d 987 (9th Cir. 2016) (en banc) .............................................16

*Apple Inc. v. Psystar Corp.*,
  658 F.3d 1150 (9th Cir. 2011) .............................................................52

*Brookfield Commc'ns, Inc. v. W. Coast Ent. Corp.*,
  174 F.3d 1036 (9th Cir. 1999) .............................................................35

*Brother Recs., Inc. v. Jardine*,
  318 F.3d 900 (9th Cir. 2003) ...............................................................38

*Campidoglio LLC v. Wells Fargo & Co.*,
  870 F.3d 963 (9th Cir. 2017) ........................................................17, 59

# TABLE OF AUTHORITIES
## (continued)

*Cleary v. News Corp.*,
   30 F.3d 1255 (9th Cir. 1994) ..............................................................47

*Developmental Servs. Network v. Douglas*,
   666 F.3d 540 (9th Cir. 2011) ...............................................................16

*E. & J. Gallo Winery v. Gallo Cattle Co.*,
   967 F.2d 1280 (9th Cir. 1992) .............................................................59

*In re E.R. Fegert, Inc.*,
   887 F.2d 955 (9th Cir.1989) ..........................................................39, 61

*EFCO Corp. v. Symons Corp.*,
   219 F.3d 734 (8th Cir. 2000) ...............................................................56

*Experience Hendrix v. Hendrixlicensing.com*,
   97 U.S.P.Q.2d 1364, No. C09-285Z, 2010 WL 2104239
   (W.D. Wash. May 19, 2010).........................................................35, 36

*F.T.C. v. Stefanchik*,
   559 F.3d 924 (9th Cir. 2009) ...............................................................16

*Halicki Films, LLC v. Sanderson Sales & Mktg.*,
   547 F.3d 1213 (9th Cir. 2008) ...........................................17, 18, 19, 20

*Hokto Kinoko Co. v. Concord Farms, Inc.*,
   810 F.Supp.2d 1013 (C.D. Cal. 2011) .................................................59

*Horphag Rsch. Ltd. v. Garcia*,
   475 F.3d 1029 (9th Cir. 2007) ...................................................29, 32, 36

*Horphag Rsch. Ltd. v. Pellegrini*,
   337 F.3d 1036 (9th Cir. 2003) .............................................................37

*Jacobsen v. Katzer*,
   535 F.3d 1373 (Fed. Cir. 2008) ...........................................................52

*K Mart Corp. v. Cartier, Inc.*,
   486 U.S. 281 (1988)..............................................................................27

*Mattel, Inc. v. Walking Mountain Prods.*,
353 F.3d 792 (9th Cir. 2003) ............................................................38

*Micro Star v. Formgen Inc.*,
154 F.3d 1107 (9th Cir. 1998) ..........................................................52

*Minden Pictures, Inc. v. John Wiley & Sons, Inc.*,
795 F.3d 997 (9th Cir. 2015) ............................................................53

*Nat'l Licensing Ass'n, LLC. v. Inland Joseph Fruit Co.*,
361 F.Supp.2d 1244 (E.D. Wash. 2004) ............................................19

*NEI Contracting & Eng'g, Inc. v. Hanson Aggregates Pac. Sw., Inc.*,
926 F.3d 528 (9th Cir. 2019) ............................................................20

*Neo4j, Inc. v. Graph Found., Inc.*,
No. 5:19-CV-06226-EJD, 2020 WL 6700480 (N.D. Cal. Nov. 13, 2020) ........52

*Network Automation, Inc. v. Advanced Sys. Concepts, Inc.*,
638 F.3d 1137 (9th Cir. 2011) ..........................................................21

*New Kids on the Block v. News Am. Publ'g, Inc.*,
971 F.2d 302 (9th Cir. 1992) ....................................................*passim*

*Noble House Home Furnishings, LLC v. Floorco Enterprises, LLC*,
118 U.S.P.Q.2d 1413 (TTAB 2016) ............................................26, 27

*Novartis Animal Health US, Inc. v. LM Connelly & Sons, Pty Ltd.*,
No. 04 Civ. 10213(BSJ), 2005 WL 1902085 (S.D.N.Y. June 14, 2005) ..........20

*Owens v. White*,
380 F.2d 310 (9th Cir. 1967) ............................................................17

*Playboy Enterprises, Inc. v. Netscape Commc'ns Corp.*,
354 F.3d 1020 (9th Cir. 2004) ..........................................................28

*Pom Wonderful LLC v. Hubbard*,
775 F.3d 1118 (9th Cir. 2014) ....................................................21, 59

*Quabaug Rubber Co. v. Fabiano Shoe Co.*,
  567 F.2d 154 (1st Cir. 1977) .................................................................. 19

*Rockhill Ins. Companies v. CSAA Ins. Exch.*,
  829 F.App'x 808 (9th Cir. 2020) ........................................................... 16

*Secular Organizations for Sobriety, Inc. v. Ullrich*,
  213 F.3d 1125 (9th Cir. 2000) ............................................................... 22

*Smith v. Marsh*,
  194 F.3d 1045 (9th Cir. 1999) ........................................................ 20, 21

*Southland Sod Farms v. Stover Seed Co.*,
  108 F.3d 1134 (9th Cir. 1997) .............................................. 47, 48, 54

*Southwest Voter Registration Educ. Pro. v. Shelley*,
  344 F.3d 914 (9th Cir. 2003) (en banc) ............................................... 16

*Storm Impact, Inc. v. Software of the Month Club*,
  44 U.S.P.Q.2d 1441, 1997 WL 566378 (N.D. Ill. 1997) .................... 52

*Sun Microsystems, Inc. v. Microsoft Corp.*,
  999 F. Supp. 1301 (N.D. Cal. Mar. 24, 1998) ..................................... 58

*Toyota Motor Sales, U.S.A., Inc. v. Tabari*,
  610 F.3d 1171 (9th Cir. 2010) .................................................... *passim*

*United States v. Kama*,
  394 F.3d 1236 (9th Cir. 2005) ............................................................... 36

*Upper Deck Co. v. Panini Am., Inc.*,
  No. 20CV185-GPC(KSC), 2021 WL 1388630 (S.D. Cal. Apr. 13, 2021) ........ 19

*W. Fla. Seafood, Inc. v. Jet Restaurants, Inc.*,
  31 F.3d 1122 (Fed. Cir. 1994) ............................................................... 22

*W. Watersheds Project v. Abbey*,
  719 F.3d 1035 (9th Cir. 2013) ............................................................... 17

# TABLE OF AUTHORITIES
## (continued)

**Page**

*Wapato Heritage, L.L.C. v. United States*,
    637 F.3d 1033 (9th Cir. 2011) ...................................................................49, 50

*In re Wella A.G.*,
    787 F.2d 1549 (Fed. Cir. 1986) ..................................................................22, 26

*In re Wella A.G.*,
    858 F.2d 725 (Fed. Cir. 1988) ...............................................................22, 25, 26

*Zobmondo Ent., LLC v. Falls Media, LLC*,
    602 F.3d 1108 (9th Cir. 2010) ..........................................................................23

STATUTES

15 U.S.C.
    § 1055 .........................................................................................................20, 23
    § 1114(1) .............................................................................................14, 18, 19, 21
    § 1125(a) ...................................................................................................*passim*
    § 1127 .........................................................................................................20, 23

28 U.S.C.
    § 1292(a)(1) .......................................................................................................1
    § 2107(a) ............................................................................................................1

Cal. Civ. Code
    § 164 ..................................................................................................................49

RULES

Fed. R. Civ. Proc.
    61 .......................................................................................................................17

OTHER AUTHORITIES

*6 McCarthy on Trademarks and Unfair Competition* § 32:3 (5th ed.)....................19

TMEP

§ 1201.01................................................................23, 24, 25

§ 1201.03(b)............................................................22, 23, 24

§ 1201.03(c)....................................................................23

§ 1201.07(b)(i).................................................................25

§ 1201.07(b)(ii)................................................................26

# I.

## INTRODUCTION

While the factual development of this case is admittedly complex, the trademark and competition issues are not. At bottom, this is a case of a former support partner who went rogue. He developed new entities to skirt licensing terms, tried cobbling together parts of open-sourced software to develop a similar free version of commercially popular software, ignored and removed licenses that got in his way, and then used the Mark of the known software originator to confuse customers into buying his support services for the newly created free, but pirated, products. Thus, the scheme is a complex one, but the violations of law are not.

# II.

## JURISDICTIONAL STATEMENT

This is an appeal of an interlocutory order for a preliminary injunction against Appellants. This Court's jurisdiction is based on the appeal of the grant of a preliminary injunction under 28 U.S.C. § 1292(a)(1). The appeal is timely under 28 U.S.C. § 2107(a).

# III.

## STATUTORY AUTHORITIES

All relevant statutory authorities appear in the Addendum to this brief.

## IV.

## STATEMENT OF THE CASE

### A.  Procedural Facts

On September 28, 2020, Appellees (plaintiffs below) filed the operative

third amended complaint alleging eight causes of action, including those at issue in

this appeal.  2-ER-40.  Appellants filed their answer on October 19, 2020.  3-SER-

557.  On December 11, 2020, Appellees filed a motion for partial summary

judgment of Phase 1 Issues. 1-SER-11 (9:5-23).  Appellants opposed and filed a

cross-motion for summary judgment.  *Id*. at 9:23-24; 9:26-10:2. The trial court

granted Appellees' motion, which included a preliminary injunction and denied

Appellants' cross-motion on May 18, 2021. It is from that order that Appellants

filed the instant appeal on June 16, 2021. 1-SER-4 (2:3-5).

### B.  Substantive Undisputed Facts

This appeal is about Appellants' use of Appellees' NEO4J Mark to promote

their own services and related software.  *See generally*, 1-SER-6–11(4:23-9:1).

Appellants packaged different versions of Appellees' software and then used the

NEO4J Mark to falsely promote it as a free, drop-in replacement for Appellees'

paid, commercial subscriptions to Appellees' software.  1-SER-7–10 (5:21-8:11).

### 1.  Identification of Relevant Entities and Individuals

**Neo4j Sweden AB ("Neo4j Sweden"):**  A wholly-owned subsidiary of

Neo4j USA, Neo4j Sweden is the owner of all copyrights related to the Neo4j®

Platform; including the source code. 1-SER-4 (2:8-18); 6-ER-1367–1368 (¶¶3-4). It licenses the commercial Neo4j® Platform to Neo4j USA. *Id.*

**Neo4j, Inc. ("Neo4j USA"):** Parent corporation of Neo4j Sweden and registrant of the NEO4J Mark. 1-SER-4 (2:15-21); 6-ER-1367 (¶3); 2-ER-188– 191. Neo4J USA is responsible for all commercial licensing of Neo4j® Platform products and managing the Neo4j Solution Partner sales program in the United States. 1-SER-4– (2:16-18); 6-ER-1367–1368 (¶4).

**John Mark Suhy:** Founder of PureThink and iGov, co-founder of GFI, co-author of "glue code" for ONgDB, and responsible for removing and replacing the Neo4j Sweden Software License terms with the open source GNU Affero General Public License, version 3 ("AGPL"). 1-SER-8–9 (6:2-11, 7:7-10).

**PureThink, LLC:** Founded by Mr. Suhy, PureThink signed a Neo4j Solution Partner Agreement ("SPA") with Neo4j USA to resell and support commercial subscriptions to Neo4j® EE. 1-SER-5–6 (3:17-4:6). Upon termination of the SPA with Neo4j USA in July 2017 (requiring cessation of all use of the NEO4J Mark), PureThink initially promoted a patchwork version of Appellees' software it called "Neo4j Enterprise." 1-SER-5–6 (3:26-4:3, 4:13-6:1).

**iGov, Inc. ("iGov"):** Founded by Mr. Suhy for the stated purpose of avoiding the restrictions imposed by the SPA (precluding PureThink from offering support for open source Neo4j® Software). 2-ER-210–213; 2-SER-101–103; 2-

ER-234–244; 2-SER-138–140; 2-ER-266–267; 3-SER-590–591(¶¶18-19). iGov

subsequently reconstituted and promoted non-conforming versions of Neo4j® EE

software, first as iGov's "Neo4j Enterprise" and later as ONgDB. 1-SER-6–9

(4:24-7:10, 7:18-24).

**Graph Foundation, Inc. ("GFI"):** Founded by John Mark Suhy, Brad

Nussbaum and Ben Nussbaum to promote ONgDB software. 1-SER-8 (6:2-7); 2-

SER-161–162. Appellees brought a separate, related action solely against GFI

which settled through stipulated judgment before the motions for summary

judgement were fully briefed. 1-SER-11 (9:24-26); 2-SER-41–48.

**Brad Nussbaum and Ben Nussbaum:** Co-founders of GFI (with Suhy);

owners of Atom Inc. and GraphGrid, Inc. 1-SER-8 (6:4-7); 2-SER-161–162; 2-ER-

301–303; 2-SER-169–170.

### 2. Evolution of Neo4j-Branded Software and Appellants' Pirated Versions Thereof

Below is chronological summary of the relevant versions Appellees' official

Neo4j® Software and Appellants' pirated versions thereof. A more detailed

description of the differences can be found in the Declaration of Philip Rathle at 6-

ER-1365–6-ER-1446.

**Neo4j® Community Edition ("Neo4j® CE"):** Software developed and

copyrighted by Appellees. 1-SER-5 (3:1-5); 6-ER-1367–1368 (¶¶1, 4-6).

Underlying source code for Neo4j CE was publicly available and licensed by

Appellees since 2010 under the GNU General Public License, version 3 ("GPL"), an open-source, royalty-free license, which provides limited features and no support services. *Id*. The same software is sometimes referred to as "Neo4j Core" in Appellants' materials. *E.g.,* 10-ER-2295–2298 (124:9-15:16, 127:7-23); 2-SER-318–329; 3-SER-445-456.

**Neo4j® Enterprise Edition ("Neo4j® EE") v3.3:** Software developed and copyrighted by Appellees. 6-ER-1367–1368 (¶¶1, 4-7). Neo4j® EE v3.3 was intended for commercial use, contains additional functionality compared to Neo4j CE and for the first time included closed-source features for increased security. 1-SER-5 (3:1-9); 6-ER-1368–1369 (¶¶7-10). It was made available under a paid-for commercial license and was available publicly for testing, trial use, and non-commercial use under the AGPL. *Id.*

**iGov's "Neo4j Enterprise" v3.3:** Software promoted by Appellants as an equivalent alternative to Neo4j® EE after the SPA was terminated, reconstructed by Appellants using publicly available source code from Neo4j® EE v3.3 with modifications and lacking "closed-source" security features available under commercially licensed Neo4j® EE v3.3. 1-SER-7–8 (5:21-6:1); 1-SER-21 (19:15-21); 6-ER-1374 (¶¶24-26); 2-ER-234–244.

**Neo4j® EE v3.4:** Software developed and copyrighted by Appellees, released in May 2018. 6-ER-1367–1370 (¶¶1, 4, 11). Appellees replaced the

AGPL with a stricter license, including the Commons Clause restricting commercial resale and support services ("Neo4j Sweden Software License").[1] 1-SER-5 (3:9-13); 6-ER-1370–1371 (¶¶11-12). Appellees added the Commons Clause to prevent third parties from monetizing the Neo4j® Platform and "free riding" on Appellees' engineering investments. 6-ER-1370–1371 (¶¶11-12). This was the last official version of Neo4j® EE source code publicly released by Appellees. 1-SER-5 (3:14-15); 6-ER-1370–1371 (¶13).

**iGov's "Neo4j Enterprise" v3.4 and ONgDB v3.4:** Software offered by Appellants in July 2018, built using publicly available Neo4j® EE v3.4 source code as a base combined with older build scripts modified by Appellants. 1-SER-7–8 (5:24-6:1, 6:8-13); 6-ER-1374–1375 (¶¶27-28); 10-ER-2265–2266 (28:25-29:11), 10-ER-2311–2312 (171:23-172:23). Appellants replaced the Neo4j Sweden Software License governing Neo4j® EE v3.4 with the AGPL, deleting legal notices identifying Neo4j Sweden as the copyright holder and licensor, removing the Commons Clause, and inducing users to believe Appellees permitted commercial use and Appellants' commercial support. *Id.*

**iGov's "Government Package for Neo4j" and "Government**

---

[1] The Neo4j Sweden Software License and Commons Clause, as well as a detailed explanation of each license used by Neo4j Sweden can be found at 6-ER-1365–1446, ¶¶ 5-14.

**Development Package with Neo4j Enterprise":**  Appellants' fee-based support packages bundled with iGov's "Neo4j Enterprise," targeted at the same federal agencies that PureThink had previously solicited under the SPA.  1-SER-6–8 (4:4-12, 4:24-6:1); 2-ER-234–244; 2-SER-122–139; 2-ER-266–274; 2-SER-147–148; 3-SER-368–404.

**Neo4j® EE v3.5.x:**  Software developed, copyrighted and released by Appellees in November 2018 exclusively under a paid-for commercial license,  the source code was not made publicly available.  1-SER-5 (3:13-15); 1-SER-8 (6:18-21); 6-ER-1371 (¶13); 6-ER-1416–1421.  Prior to its official release, however, Appellees published a beta version of the source code for Neo4j® EE v3.5 subject to the Neo4j Sweden Software License.  6-ER-1371 (¶¶13-14); 1-SER-8(6:18-21). All subsequent Neo4j® EE 3.5.x versions were exclusively released under a commercial license. 1-SER-5 (3:13-15); 6-ER-1371 (¶¶13-14).

**ONgDB v3.5.x:** Software packaged by Mr. Suhy and GFI using (1) source code from Neo4j® EE v3.4, (2) the last public beta version of Neo4j® EE v3.5; (3) source code from Neo4j® CE; and (4) "glue code" written by Mr. Suhy and other contributors.  1-SER-8–9 (6:18-26, 7:7-10); 4-ER-856–858; 3-ER-339–346 (158:18-163:5, 163:13-165:6); 10-ER-2295–2297 (124:2-126:23); 6-ER-1371–1377 (¶¶14, 19-22, 29-34).  The software lacked all the closed enterprise features included in the numerical equivalent version of Neo4j® EE. 1-SER-28 (26:2-4); 2-

SER-289–294 (2:12-17, 4:15-22, 5:4-6:21). Mr. Suhy also replaced the Neo4j Sweden Software License governing certain source code files with the AGPL, thereby inducing users to believe the licensor was permitting commercial use and Appellants' commercial support. 1-SER-8 (6:18-26); 3-ER-477–4-ER-858; 3-SER-575 (19:9-25); 6-ER-1375 (¶30).

### 3. Appellees Registered the NEO4J Mark

On August 4, 2015, the U.S. Patent and Trademark Office issued Trademark Registration Certificate No. 4,784,280 to Neo4j USA for the Mark "NEO4J." 1-SER-4 (2:18-26); 2-ER-189–190 (registration). No party disputed Neo4j USA's status as registrant of the NEO4J Mark. 1-SER-4 (2:18-26); 1-SER-16 (14:3-5).

### 4. It is Undisputed that Appellants Use Appellees' Source-Identifying NEO4J Mark to Market their Inferior Software

The undisputed evidence established that Appellants used the NEO4J Mark to promote their goods and services. 1-SER-6 (4:24-5:19); 1-SER-9 (7:7-24); 1-SER-21–22 (19:15-21, 20:15-20). In or about October 2017, Appellants' website contained numerous uses of the Neo4j Mark, including references to iGov's "Government Package for Neo4j" and "Government Development Package with Neo4j Enterprise." 1-SER-6–7 (4:25-5:12); 2-ER-234–244; 2-SER-122–139; 2-ER-266–274; 2-SER-147–148.

iGov's website also: (1) used "https://igovsol.com/neo4j.html" as a URL to promote iGov's "Government Development Packages for Neo4j"; (2) displayed a

"Request Procurement Document Package" link with "mailto:neo4j@igovsol.com" embedded, creating an email addressed thereto upon activation; (3) encouraged consumers to seek information by sending an email to "neo4j@igovsol.com;" and (4) used "Neo4j Enterprise" to describe iGov's patchwork version of Neo4j® EE v3.3. 1-SER-7 (5:13-20); 2-ER-234–244; 2-SER-122–139; 2-ER-266–274; 2-SER-147–148; 3-SER-368–394; 3-SER-422–439. Appellants did not dispute that the iGov website used the NEO4J Mark in these ways. *Id.*

After the release of Neo4j® EE v3.4 in May 2018, Appellants used the NEO4J Mark to promote iGov's "Neo4j Enterprise" v3.4, and after Suhy co-founded GFI with the Nussbaums in July 2018, began using the NEO4J Mark to promote ONgDB v3.4. 1-SER-5 (3:9-12); 1-SER-7–8 (5:24-6:2, 6:8-13); 2-SER-147–148; 2-SER-151–159; 2-SER-235–337; 3-SER-355–356; 3-SER-544–547. There was no dispute that the source code for their software differed from Neo4j® EE v3.4 and that Mr. Suhy replaced the Neo4j Sweden Software License with the AGPL inducing users to believe Appellants could sell commercial support services for ONgDB. 1-SER-7–8 (5:24-6:1, 6:8-11); 2-ER-301–303; 10-ER-2265–2366 (28:25-29:11); 2-SER-185–188 (87:24-90:9); 6-ER-1370–1375 (¶¶11-12, 27-28).

In November 2018, Appellants released Neo4j® EE v3.5 solely under a commercial license, and with Suhy's help, GFI released ONgDB v3.5.1 shortly thereafter. 1-SER-8 (6:18-19); 6-ER-1371 (¶¶13-14); 3-SER-505–506. ONgDB

v3.5.1 contained at least 182 source code files that had only been previously

released by Appellees under the Neo4j Sweden Software License in the last public

beta version of Neo4j® EE v3.5. 1-SER-8 (6:19-21); 2-SER-295-297 (6:22-7:1,

8:4-16:24); 6-ER-1375 (¶29). Appellants did not dispute that in order to call

ONgDB "free and open source" Neo4j® EE and commercially support that

software, they again replaced the more restrictive Neo4j Sweden Software License

tied to these files with the AGPL. 1-SER-8 (6:21-26); 3-ER-477—4-ER-858; 3-

SER-575 (19:9-25); 2-SER-199 (159:3-10); 6-ER-1375 (¶30).

Appellants did not dispute that they communicated to potential customers

that ONgDB v3.5.x was "100% free and open" with no limitations or restrictions

imposed by commercially licensed Neo4j® EE of the same version number. 1-

SER-9 (7:2-5); 2-SER-318–329; 4-ER-877–878; 2-SER-331–337; 10-ER-2371–

2373; 3-SER-544–547. Appellants also extensively used the NEO4J Mark on

iGov's website to promote ONgDB in this manner. 1-SER-8 (6:11-17); 3-SER-

368–439, 3-SER-445–456 (highlighted in green). This also included using

"https://igovsol.com/neo4j.html" as a URL address to promote ONgDB until

Appellants deactivated that page sometime after July 27, 2020.[2] 1-SER-8 (6:11-

---

[2] Thereafter, this URL was replaced with "https://igovsol.com/graph.html," but the
page content remained the same. 1-SER-8 (6:13-15); *compare* 3-SER-400–404 *and*
3-SER-411–415.

15); 3-SER-368–404; 2-SER-108 (RFA No. 5).

In addition, Appellants used the neo4j@igovsol.com email address on iGov's "neo4j.html" webpage (3-SER-380, 3-SER-391 [purple highlight]) and "downloads.html" webpage (3-SER-425, 3-SER-431, 3-SER-437 [purple highlight]) as means for consumers to inquire about ONgDB until sometime in July 2020. 1-SER-7 (5:13-17); 1-SER-22 (20:20-21); 2-SER-108–110 (RFA Nos. 7-11). Appellants also used a "Download Neo4j Enterprise" hyperlink on iGov's "downloads" page that redirected consumers to download links for *ONgDB* until July 27, 2020. 3-SER-426, 3-SER-438 (red highlight); 2-SER-109–111 (RFA Nos. 10, 14); 1-SER-8 (6:15-17).[3] iGov concurrently continued offering "commercial equivalent support packages for [iGov's] Neo4j Enterprise open source licensed distributions," and interchangeability referring to "ONgDB Enterprise" and "Neo4j Enterprise" on these pages. 3-SER-368–372, 3-SER-379–383, 3-SER-390–394, 3-SER-400–404, 3-SER-411-415, 3-SER-422–444 (yellow highlights); 1-SER-9 (7:10-22).

Appellants also did not use their own release notes and announcements in promoting ONgDB. Instead, they used hyperlinks on iGov's website to redirect

---

[3] The trial court referred to the use of the NEO4J Mark on GFI's website several times. However, the unrefuted evidence cited to by the trial court makes clear it was referring the content of iGov's website.

consumers to Neo4j USA's official release notes (https://neo4j.com/release-notes/neo4j-3-5-5/) and "What's New" page (https://neo4j.com/whatsnew-in-neo4j/) until they removed those references sometime in July 2020. 1-SER-29–30 (27:12-28:2); 3-SER-422–439 (blue highlights).

In sum, Appellants used the NEO4J Mark to identify and promote its own products. 1-SER-22 (20:10-12). It is undisputed that Appellants' products do not contain the same source code as that denoted by Appellees' NEO4J Mark or the associated NEO4J products. 1-SER-9 (7:7-10) ("Defendants do not claim that ONgDB is identical to its Neo4j counterpart versions"); 3-ER-339–346 (158:18-163:5, 163:13-165:6); 10-ER-2295–2297 (124:2-126:23).

### 5. Appellants Falsely Advertise That ONgDB Replaces Neo4j® EE And Is Free and Open Source

The trial court found that Appellants used false statements to promote ONgDB. 1-SER-32 (30:7-10). The trial court first found Appellants' statements that ONgDB is a "free and open source" alternative to the commercially licensed Neo4j® EE were false because the provisions of the Neo4j Sweden Software License did not authorize Appellants to remove its commercial restrictions. 1-SER-26–27 (24:7-25:19).

Second, it found that Appellants' statements that ONgDB v3.5.x was a "drop-in replacement" for Neo4j® EE were false or misleading because those statements could not be verified, given that Neo4j® EE v3.5.4 and later versions

were all closed source.[4]  1-SER-28 (26:12-24).  For earlier versions of ONgDB, the

trial court found that the context of Appellants' statements "clearly implies"

(falsely) that ONgDB had all the same enterprise features and were "essentially the

same software as Neo4j® EE." 1-SER-28–30 (26:25-28:16).

For these same reasons, the trial court found that Appellants' statements also

had a tendency to deceive *and* that customers where actually deceived. 1-SER-30

(28:18-24); 3-SER-516–518; 5-ER-1161–1168; 3-SER-539–541; *see also* fn 13.

Finally, the trial court found that Appellants' false and misleading statements were

material and caused commercial injury:  Neo4j® EE 3.5.x required a paid

subscription while ONgDB 3.5.x was "misrepresented as a free version of Neo4j®

EE licensed under the AGPL." 1-SER-31 (29:5-7); 1-SER-31–32 (29:26-30:6).

The court therefore determined that Appellants engaged in false advertising. *Id*.

### 6.  Appellants Appeal the Interim Order Based Upon The Ordered Injunctive Relief

On June 16, 2021, Appellants appealed the trial court's order granting

---

[4] GFI confirmed that after releasing ONgDB v3.5.4, Appellants could no longer
"reliably guarantee that it was a drop-in replacement" for Neo4j® EE and they
were unwilling to do the necessary testing to make such integration and
compatibility guarantees because it became "too hard to demonstrate." *Id*., Ex. 31
at 186:24-188:17, 188:23-189:23. Appellants did not offer any evidence to the
contrary, and thus it was undisputed that versions released after ONgDB v3.5.4
were no longer drop-in replacements for equivalent versions of Neo4j® EE.

Appellees' motion for partial summary judgment and issuing a Preliminary

Injunction. 1-SER-36–38 (34:19-36:2). Appellants do not appear to challenge the

breadth or scope of the Preliminary Injunction or the denial of their cross-motion.

1-SER-36 (34:24-25).

## V.

## SUMMARY OF THE ARGUMENT

Appellants assign error to relatively few points in the trial court's carefully

crafted 36-page opinion. Their challenge to standing pursuant to 15 U.S.C.

§ 1114(1) ("§ 1114(1)") misses the statutorily created reality that Neo4j USA's

status as registrant of the Mark establishes standing. Even if it did not, Appellants

fail to challenge the trial court's alternate finding of standing under 15 U.S.C.

§ 1125(a) ("§ 1125(a)"). Appellants do not assign error to the trial court's

substantive finding of validity (the first element of infringement under § 1114(1))

electing only to challenge its analysis of nominative fair use under the second

element. Even then, they fail to assign error to the dispositive threshold finding:

Appellants impermissibly used the NEO4J Mark in email addresses, download

links, and other paraphernalia to promote Appellants' products rather than merely

referring to Appellee's products. Ignoring that fatal defect, they commit another

by not addressing all three prongs of the *New Kids* fair use test. As to the prong

they do challenge (which error would thus be harmless), they fail to show any error

in law or a factual dispute that would support a contrary jury verdict.

Appellants' challenge of the adverse rulings on false advertising and unfair competition fare no better. They largely ignore the record evidence—including their own admissions—and offer strained interpretations of the licensing agreements that cannot withstand scrutiny. There is no interpretation that could allow Appellants to simply take source code, re-write the copyright holder's license, and falsely represent to the public that their bundle of that code is "free and open source" based on Appellants' unauthorized changes to the license.

Also, the record evidence supports the court's finding that Appellants' representations that certain products are compatible with Appellees' products when Appellants failed to verify that fact are false and misleading. The same is true for Appellants' statements representing that the products are essentially the same, or offer the same features, when they admit those facts are untrue. For the same reasons, Appellants fail to demonstrate any error in the finding that Appellants' statements also amounted to false designation of origin.

Throughout, Appellants impermissibly raise issues for the first time on appeal, ignoring necessary legal elements of their claims and ignore adverse findings and undisputed evidence. Finally, throughout, as to each claim of error, Appellants never demonstrate that any reasonable jury, looking at *all* the record evidence, would reach a contrary verdict.

# VI.

## STANDARD OF REVIEW

The instant order is rendered appealable because it involves a preliminary injunction, the review of which "is limited and deferential." *Southwest Voter Registration Educ. Pro. v. Shelley*, 344 F.3d 914, 918 (9th Cir. 2003) (en banc). Review of a preliminary injunction is afforded the highly deferential abuse of discretion standard. *Developmental Servs. Network v. Douglas*, 666 F.3d 540, 544 (9th Cir. 2011).

An appellate court "review[s] *de novo* the district court's grant of summary judgment." *F.T.C. v. Stefanchik*, 559 F.3d 924, 927 (9th Cir. 2009) (affirming grant of summary judgment for plaintiff). It "determine[s] whether there are any genuine issues of material fact, and decide[s] whether the district court correctly applied the relevant substantive law." *Animal Legal Def. Fund v. U.S. Food & Drug Admin.*, 836 F.3d 987, 988-9 (9th Cir. 2016) (en banc). In determining the presence or absence of a genuine issue of material fact, an appellate court will look at "the record as a whole." *Rockhill Ins. Companies v. CSAA Ins. Exch.*, 829 F.App'x 808, 809 (9th Cir. 2020) (affirming summary judgment for plaintiff). A dispute as to a material fact is genuine only if there is sufficient evidence for "a reasonable jury to return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Summary judgment may be affirmed "on

any ground supported by the record," and may be appropriate even when "a mixed question of fact and law involves undisputed underlying facts." *Campidoglio LLC v. Wells Fargo & Co.*, 870 F.3d 963, 973 (9th Cir. 2017) (quotation marks and citation omitted).

Finally, it is always the appellant's duty to illustrate claimed error; issues not "clearly articulate[d] in [an] opening brief" are waived. *W. Watersheds Project v. Abbey*, 719 F.3d 1035, 1042, fn. 2 (9th Cir. 2013). It must also, with few exceptions, show prejudice flowing from the demonstrated error. Fed. R. Civ. Proc. 61; *Owens v. White*, 380 F.2d 310, 316 (9th Cir. 1967) (fn. 4, declining to address selected errors on summary judgment based on harmless error analysis).

## VII.

## ARGUMENT

### A. Appellants Demonstrate No Error in the Trial Court's Finding That Neo4j USA had Standing to Assert its Lanham Act Claims

The parties agree that the trial court employed the correct test for standing to assert a trademark infringement claim under the Lanham Act. AOB, p.18; 1-SER-13–14 (11:18-12:1). Neo4j USA must be "(1) the owner of a federal mark registration, (2) the owner of an unregistered mark, or (3) a nonowner with a cognizable interest in the allegedly infringed trademark." *Halicki Films, LLC v. Sanderson Sales & Mktg.*, 547 F.3d 1213, 1225 (9th Cir. 2008). Although Appellants recite the test correctly, they quickly shift to arguing *validity* of

registration thereby demonstrating a fundamental misunderstanding of the distinct legal principles of standing and validity. AOB, p.18. While they are substantively wrong as to validity (*see* Sect. VII.A.3) those arguments are irrelevant in determining standing. *See Halicki*, 547 F.3d at 1127 (defendant confused the analysis of the merits of plaintiff's infringement claim with whether standing existed in the first instance).

Properly analyzed, the trial court's finding of standing is correct based on Appellants' concession that Neo4j USA holds the registration for the NEO4J Mark. AOB, p.7 (citing 2-ER-189). Moreover, Appellants' failure to challenge the trial court's alternate, independent, basis for standing – the Third *Halicki* prong – ensures that even if their attack on prong one were valid (it is not), no reversible error would result. 1-SER-14–15 (12:2-13:1).

> **1. Standing Exists Under §1114(1) of the Lanham Act Based Upon the Unchallenged Finding That Neo4j USA is the Owner of the Registration for the NEO4J Mark**

The trial court held that Neo4j USA had standing to assert a claim pursuant to § 1114(1) based on the undisputed fact that Neo4j USA holds the ***federal registration*** for the NEO4J Mark. 1-SER-14 (12:2-8 ["Defendants argue that despite being the registrant of the mark, Neo4j USA does not actually own the mark"]); 2-ER-188–191 (NEO4J Mark registration). Appellants concede "Neo4j USA is the registrant of the mark in the United States." AOB p.18. This

concession ends the analysis, foreclosing error, because the Lanham Act expressly provides that ***the registrant*** of the NEO4J Mark has standing to sue.[5] 15 U.S.C. § 1114(1); *Halicki*, 547 F.3d at 1226-28 (recognizing that proof of a registered mark is sufficient to establish standing under the Lanham Act); *6 McCarthy on Trademarks and Unfair Competition* § 32:3 (5th ed.) ("only the 'registrant' has standing" to sue under § 1114(1)). The balance of Appellants' arguments at AOB pp.18-24 do not affect standing. *See* Sect. VII.A.3 et seq.

### 2. Standing Exists Under §1125(a) of the Lanham Act Based Upon the Unchallenged Finding That Neo4J is a "Nonowner With a Cognizable Interest" in the Mark

Appellants fail to challenge the trial court's alternate determination that even if Neo4j USA were not the registrant, it would still have standing pursuant to § 1125(a), "[a]s the registrant of the NEO4J Mark and parent company of Neo4j Sweden … Neo4j USA undoubtedly has a cognizable interest in the mark." 1-

---

[5] Appellants' reliance on *Quabaug Rubber Co. v. Fabiano Shoe Co.*, 567 F.2d 154 (1st Cir. 1977) and *Upper Deck Co. v. Panini Am., Inc.*, No. 20CV185-GPC(KSC), 2021 WL 1388630 (S.D. Cal. Apr. 13, 2021) offers them no solace. The courts in these cases found that the plaintiff-licensees did not have standing to sue under §1114(1) because they were not the registrant of the asserted marks. Precisely the opposite of the scenario here. *Nat'l Licensing Ass'n, LLC. v. Inland Joseph Fruit Co.*, 361 F.Supp.2d 1244, 1254 (E.D. Wash. 2004) is distinguishable on its facts. In that case, the court rejected plaintiff's argument that because the registrant assigned it the right to sue, plaintiff had standing as a "legal representative." *Id.* at 1255-56. Appellees did not make such argument because Neo4j USA as the registrant has the right to assert a claim.

-19-

SER-14 (12:9-17). It is settled that a "valid ownership interest in a mark ... is sufficient, although not necessary, to provide standing to sue for infringement of that mark." *Halicki*, 547 F.3d at 1225. Thus, the fact that Neo4j USA was *also* a non-exclusive licensee simply establishes a sufficient commercial interest for it to *also* have standing under § 1125(a). *See, e.g., Adidas America, Inc. v. Athletic Propulsion Labs, LLC*, 120 U.S.P.Q.2d 1303, 2016 WL 3896826, \*3-4 (D. Or. 2016) (Adidas America, a nonexclusive licensee of Adidas AG, had standing to sue under § 1125(a)); *Novartis Animal Health US, Inc. v. LM Connelly & Sons, Pty Ltd.*, No. 04 Civ. 10213(BSJ), 2005 WL 1902085, at \*3 (S.D.N.Y. June 14, 2005) (plaintiff had standing because it was both a licensee and subsidiary of the trademark owner).

Because Appellants failed to address the trial court's alternate finding that Neo4j USA has standing under § 1125(a), this Court must affirm. *See NEI Contracting & Eng'g, Inc. v. Hanson Aggregates Pac. Sw., Inc.,* 926 F.3d 528, 533 (9th Cir. 2019) (failure to address district court's standing determination on appeal waived the issue)*; see also Smith v. Marsh*, 194 F.3d 1045, 1052 (9th Cir. 1999) ("arguments not raised by a party in its opening brief are deemed waived").

### 3. The Related Companies Doctrine is Irrelevant to Appellant's Standing Challenge

Appellants argue that the trial court erred by relying on the related companies doctrine (as defined in 15 U.S.C. §§ 1055 and 1127) "to show that

Neo4j USA had an ownership interest which gave it standing to sue." AOB, p.18.

Appellants' misperceive the law (Sect. VII.A.) and the court's order. Nowhere in

the court's analysis of Neo4j USA's *standing* does it rely upon the related entities

doctrine. 1-SER-13–15 (11:17-13:1). The order only does so – correctly – in

assessing validity as part of Neo4j USA's § 1114(1) infringement claim.[6] *See id.* at

13:2-18:1. Having failed to challenge the substantive findings on this element in

the proper context of infringement, Appellants forfeit the issue. *See Smith*, 194

F.3d at 1052. If this Court were to nevertheless reach the issue, it would find no

error in the trial court's finding that Neo4j USA owned a valid registration.

> **a.** **Had Appellants Properly Raised the Issue of Ownership, They Nevertheless Fail to Assign Error to the Legal Framework Used by the Trial Court**

Even if Appellants had challenged the trial court's finding that Neo4j USA

had satisfied the validity prong of § 1114(1), none of their arguments would

warrant a reversal of that finding. Appellants concede that "Neo4j USA is the

registrant of the mark in the United States," which creates a strong presumption of

ownership and validity. *Pom Wonderful LLC v. Hubbard*, 775 F.3d 1118, 1124

---

[6] To prevail on its infringement claim under § 1114(1), Neo4j USA must prove (1) an ownership interest in a protectable mark; and (2) that Defendants' use of the mark is likely to cause consumer confusion. *Network Automation, Inc. v. Advanced Sys. Concepts, Inc.*, 638 F.3d 1137, 1144 (9th Cir. 2011).

(9th Cir. 2014); 1-SER-15–16 (13:19-14:5); AOB, p.18 (citing same).

Appellants do not address the legal framework used by the trial court to determine Appellants' failure to rebut Neo4J USA's presumption of ownership, including its reliance on Federal Circuit authority. 1-SER-17–19 (15:20-17:4); *Secular Organizations for Sobriety, Inc. v. Ullrich*, 213 F.3d 1125, 1131 (9th Cir. 2000) (citing Federal Circuit authority in applying the related companies doctrine). There, the court held that it is not even *required* to determine ownership of a mark as between a parent and wholly owned subsidiary when deciding whether registration of the mark was valid. 1-SER-18–19 (16:25-17:4) (citing *W. Fla. Seafood, Inc. v. Jet Restaurants, Inc.*, 31 F.3d 1122 (Fed. Cir. 1994)). Appellants are also silent on the trial court's finding that the Federal Circuit rejected the very argument made by Appellants "that a trademark registered by a parent company could be invalidated simply based on the fact that the company's wholly owned subsidiary technically owned the marks." 1-SER-17–18 (15:20-16:24) (citing *In re Wella A.G.*, 787 F.2d 1549 (Fed. Cir. 1986) ("*Wella I*"), *In re Wella A.G.*, 858 F.2d 725 (Fed. Cir. 1988) ("*Wella II*")).

Lastly, Appellants do not address the court's reliance on the TMEP stating that the USPTO "will consider the filing of the application in the name of either the parent or the subsidiary ***to be the expression of the intention of the parties as to ownership in accord with the arrangements between them***." TMEP § 1201.03(b)

(emphasis added); 1-SER-19 (17:5-12).[7]  Further, "[w]here the mark is used by a related company, the owner is the party who controls the nature and quality of the goods sold or services rendered under the mark."  TMEP § 1201.01; 1-SER-19 (17:5-12).  It is in this context the trial court cited Sections 1055 and 1127.  *Cf.* AOB, pp.18-19 *and* 1-SER-16–17 (14:25-15:16).  Against this unchallenged legal framework, the trial court's holding that Appellants failed to overcome the strong presumption that Neo4j USA was the owner of the NEO4J Mark in the United States ***at the time of registration*** was correct.  *See Zobmondo Ent., LLC v. Falls Media, LLC*, 602 F.3d 1108, 1115 (9th Cir. 2010); 1-SER-15–16 (13:26-14:2).

> ## b.    Appellants' Sole Evidentiary Challenge – The Neo4J License – Fails to Overcome the Presumption of Validity

Appellants begin their misplaced analysis with an unsupported statement that "the evidence showed that Neo4j Sweden was the owner and user of the mark at the time of registration."  AOB, p.18.  This ignores both the trial court's ultimate findings, as well as the very presumption of ownership that Appellants conceded in

---

[7]    The trial court cited to § 1201.03(c) from the 5th Edition of the TMEP. Between the time Neo4j USA filed the application for the NEO4J Mark in April 2014 and issuance of the registration in August 2015, the TMEP was revised several times, where the cited provision remained the same but was renumbered as TMEP § 1201.03(b). https://tmep.uspto.gov/RDMS/TMEP/Oct2013#/Jan2015/changed1e1.html

their preceding section.  *Id.*  To overcome the presumption of ownership, Appellants point to a single piece of evidence: the intercompany license agreement between Neo4j USA and Neo4j Sweden.  *Id.*  Even then, Appellants ignore the trial court's analysis thereof.

Instead, Appellants extrapolate what they claim the trial court "believed" about Appellees' intercompany relationship.  AOB, p.21, fn. 8.  But no such speculation is needed.  The trial court evaluated the license agreement, finding that it was not dispositive of Appellees' intent because it was executed six years *before* the registration. 1-SER-16–17 (14:15-15:2).  Relying on the TMEP, the lower court correctly concluded that "while the License Agreement tends to show that Plaintiffs considered Neo4j Sweden to be the owner of the Neo4j Mark in 2010, the fact that Neo4j USA registered the mark tends to show that the parties considered Neo4j USA to be the owner of the mark in 2015."  1-SER-19 (17:5-18) (citing TMEP §§ 1201.01, 1201.03(b)).  Appellants are silent on these findings.

Appellants also ignore the trial court's finding that they confirmed Neo4j USA's ownership of the NEO4J Mark when Appellants executed a non-exclusive license thereto under the SPA in September 2014.  1-SER-19 (17:16-18); 2-ER-196–201(§4.1).  Appellant's offer no rebuttal to this admission.

Appellants' effort to address the "related companies" doctrine,

misapprehends the rule.[8]  AOB, p.19.  The trial court set forth the doctrine

correctly by citing to TMEP § 1201.01.  1-SER-19 (17:19-28).  It also made

unchallenged findings that "Neo4j USA wholly owns and controls Neo4j Sweden

… did so at the time of registration [record citations]" and that "Neo4j USA is []

the only party who exercises control over the mark in the United States." 1-SER-4

(2:15-16); 1-SER-19 (17:22-24); 6-ER-1367–1373 (¶¶1, 3-5, 19-22).  Appellants

are silent on this undisputed evidence; even openly conceding it. (AOB, p.1

"[Neo4j Sweden] creates software packages . . . which its parent, [Neo4j USA],

distributes and services in this country").

These findings and related undisputed facts are amplified by *Wella II,* which

recognized that because a parent owns substantially all of the stock of the

subsidiary, it controls the subsidiary's actions and thus is the "same source" such

that there is no likelihood of confusion, permitting concurrent registration.  858

F.2d at 728-29.  *Wella II* is consistent with TMEP § 1201.07(b)(i), which provides

"[i]f the applicant … represents that *either* the applicant or the registrant owns *all*

of the other entity, and there is no contradictory evidence, then the examining

attorney should conclude that there is unity of control, a single source, and no

_____

[8] Without citation they apply the test incorrectly; starting off with the conclusion
they seek (Neo4j Sweden's ownership) with no citation to evidence or law.

likelihood of confusion." (emphasis in original); *see also* TMEP § 1201.07(b)(ii).

Appellants present "no contradictory evidence" – here or below.

Failing to challenge the relevant findings, or to cite to any evidence creating a factual dispute, Appellants rely upon the various standing cases addressed above. AOB, pp.19-20. But none of these cases involve a registrant parent corporation holding a license from its wholly-owned subsidiary, they do not address ownership of a mark in the context of validity at the time of registration, and they do not address the *Wella* cases.[9]

Appellants endeavor to rely on *Noble House Home Furnishings, LLC v. Floorco Enterprises, LLC*, 118 U.S.P.Q.2d 1413 (TTAB 2016). First, *Noble* is an abandonment case. Second, there the registrant was the subsidiary (not the parent as here), but when analogized, *Noble* supports the trial court's interpretation. The Board began its related entity use analysis by observing: "In most situations, the inherent nature of the parent's overall control over the affairs of a subsidiary will be sufficient to presume that the parent is adequately exercising control over the nature and quality of goods and services sold by the subsidiary under a mark

---

[9] Appellants' reliance on *Allard Enterprises, Inc. v. Advanced Programming Res., Inc.*, 146 F.3d 350, 356 (6th Cir. 1998) to argue that "[o]wnership does not turn on registration (or registrability)" is similarly inapposite. AOB, p.21. This case merely addresses whether a competitor's prior use of a mark established priority over plaintiff's registration for that mark.

-26-

owned by the parent, without the need for a license or other agreement. *Noble House*, 118 U.S.P.Q.2d at 1421. This is because "the parent corporation--not the subsidiary whose every decision it controls--better fits the bill as the true owner of any [trademark] property that the subsidiary nominally possesses." *Id.* (citing *K Mart Corp. v. Cartier, Inc.*, 486 U.S. 281, 298-99 (1988) (concurring in part and dissenting in part)).

In *Noble House,* not only was the parent *not* the registrant (and presumptive owner), but the non-registrant parent also (1) used the mark (2) controlled the subsidiary-registrant (and not vice-versa) (3) had no license or similar agreement with the registrant concerning use of the mark and (4) controlled the nature and quality of the products. 118 U.S.P.Q.2d at 14***. Thus, *Noble House* presents nearly the *mirror image* of the scenario here where Neo4j USA is the undisputed (1) parent-registrant and user of the NEO4J Mark in the United States, (2) controller of non-registrant Neo4j Sweden, (3) licensee of the mark, and (4) controller of the nature and quality of the products. As a result, Neo4j USA is the owner of the NEO4J Mark and the registration thereof is valid.

### B. Appellants Demonstrate No Error In the Trial Court's Conclusion That Appellants Failed to Defeat Neo4j USA's Infringement Claim Through Nominative Fair Use

Appellants' challenge to the trial court's decision on infringement is limited to its analysis of their nominative fair use defense. AOB, p.22. Appellants

acknowledge that in order to assert nominative fair use, they must first establish that they used the NEO4J Mark to refer to the trademark goods rather than their own. AOB, pp.22-23 (citing *Toyota Motor Sales, U.S.A., Inc. v. Tabari*, 610 F.3d 1171, 1183 (9th Cir. 2010)).

Only if they meet this threshold requirement does the burden shift to Appellees to negate *one* of the three prongs of test enumerated in *New Kids on the Block v. News Am. Publ'g, Inc.*, 971 F.2d 302 (9th Cir. 1992) to defeat Appellants' nominative fair use defense. *See Playboy Enterprises, Inc. v. Netscape Commc'ns Corp.*, 354 F.3d 1020, 1030 (9th Cir. 2004) (because defendants use of plaintiff's mark ran afoul of the first prong, no need to consider the other two); 1-SER-20–21 (18:23-19:1). The three prongs are: (1) the plaintiff's product must be one not readily identifiable without use of the plaintiff's mark; (2) only so much of that mark may be used as is reasonably necessary to identify plaintiff's product; and (3) defendant must do nothing that would, in conjunction with the mark, suggest sponsorship or endorsement by plaintiff. *New Kids*, 971 F.2d at 308; *accord Toyota*, 610 F.3d at 1175-76 (citing same).

Here, Appellants only assign error to the trial court's finding on the third prong of the *New Kids* test. They ignore the trial court's adverse findings on the threshold issue and the second prong of the *New Kids* test. Thus, they cannot as a matter of law demonstrate reversible error. Nevertheless, even as to that one prong

that they do challenge, their analysis is wrong.

### 1. The Unchallenged Threshold Finding that Appellants Did Not Use the NEO4J Mark to Identify Appellees' Products is Dispositive

As recognized by Appellants, a defendant can rely on nominative fair use **only** where "defendant uses the trademarked term not to describe its product but to describe the plaintiff's [product]." AOB, p.22 (quoting *Align Tech., Inc. v. Strauss Diamond Instruments, Inc.*, No. 18-CV-06663-TSH, 2019 WL 1586776, at *4 (N.D. Cal. Apr. 12, 2019)). A defendant's impermissible use of a trademark for a purpose *other than* describing plaintiffs' product is dispositive of the issue of infringement. *Toyota*, 610 F.3d at 1183. This is because "[t]o qualify for a fair use defense, the use must not create an improper association between a mark and a new product but must, instead, merely identify the trademark holder's products." *Horphag Rsch. Ltd. v. Garcia*, 475 F.3d 1029, 1037–38 (9th Cir. 2007).

Appellants fail to address the trial court's finding that Appellants **did not** meet their initial burden because they repeatedly used the NEO4J Mark to refer to ***Appellants products***. 1-SER-21–23 (19:13-21:14). Instead, they cherry-pick selected facts to show that sometimes they also referred to Neo4j USA products (AOB, pp.32-33); but that is not the test.

Appellants also argue that they cannot be held liable for using the NEO4J Mark in the context of consulting. AOB, p.23. That argument too is

unilluminating since the trial court agreed, holding that Appellants *could* fairly use the NEO4J Mark to refer to "'support services' targeted at software that [Appellees] provide." 1-SER-23 (21:11-14). The trial court similarly held that Appellants could "describe their products as an unaffiliated or independent 'fork' of Neo4j source code" and could "comparatively advertise ONgDB in relation to Neo4j USA's products" so long as they did so fairly and followed Neo4j USA's trademark guidelines. 1-SER-23 (21:14-19). Outside of those contexts, however, the trial court correctly concluded that Appellants failed to prove they *did not* use the NEO4J Mark to describe their own software products, which precludes Appellants from relying on nominative fair use.

### a. Appellants' Promotion of iGov "Neo4j Enterprise" and iGov "Government Package for Neo4j" Described Appellants' Products

Below, there was no dispute that Appellants extensively used the NEO4J Mark to market iGov's "Neo4j Enterprise" and "Government Package for Neo4j" on their websites. It was similarly undisputed that Appellees did not produce, market or endorse a software package called "Neo4j Enterprise" or "Government Package for Neo4j." 1-SER-6–7 (4:24-5:12) (citing 2-ER-234–244, 2-SER-122–139, 2-SER-147–148, 3-SER-368–439); 1-SER-21 (19:13-21) (admission that "'Government Packages for Neo4j' and 'Neo4j Enterprise' were used to describe the government packages" for which iGov provided support).

As detailed above, iGov's "Neo4j Enterprise" was a patchwork variant of Neo4j® EE, and was *not* Appellees' product. *See* Sect. IV.B.2. (definitions of iGov's "Neo4j Enterprise" v3.3 and iGov's "Neo4j Enterprise" v3.4). iGov offered "Neo4j Enterprise" either as standalone software or bundled with iGov support services, which it marketed as "Government Package for Neo4j" and "Government Development Package with Neo4j Enterprise." *See* Sect. IV.B.2 (definitions of same).

Appellees submitted the uncontested declaration of Philip Rathle, Neo4j USA's Vice President of Products, who explained that iGov's "Neo4j Enterprise" was constructed from source code using older build scripts that introduced modifications resulting in software that was not the same as that compiled by Neo4j Sweden. 6-ER-1369–1375 (¶¶10-11, 19-27); 1-SER-7 (5:21-24). As recognized by the trial court, iGov's "Neo4j Enterprise" also "did not include several 'closed-source' features of Neo4j EE that were only available under the Neo4j USA's commercial license." 1-SER-7 (5:22-23); 6-ER-1369–1375 (¶¶10, 24-27).

Appellants' uses of the NEO4J Mark only worked to reinforce the misimpression as they assured potential customers both on iGov's website and in direct email communications that iGov's "'Neo4j Enterprise' was the 'same official Neo4j Github Repositories as Neo4j Inc uses for their paid commercial

licensed builds' except distributed under an open source license." 1-SER-21–22 (19:25-20:2) (citing 2-ER-242–244, 2-SER-139, 2-ER-266–274, 2-SER-147–148). Nor were Appellants "pointing" to Appellants' repositories.  iGov set up their own distribution, on *their* site, for *their* products: "iGov Inc builds the Neo4j binaries from the source code and makes it available via a distribution site we setup (https://igovsol.com/downloads.html)."  2-SER-143; 2-SER-127–140. The same was true for later versions. 1-SER-21 (19:22-25) (citing 3-ER-339–346 [158:18-163:5, 163:13-165:6], 10-ER-2295–2297 [124:2-126:23]).

Appellants' argument that iGov was *also* offering consulting services, and not "Neo4j Enterprise" software "alone" does nothing to change the analysis.  *See* AOB, pp. 11-12, 23 and 25.  They still used the NEO4J Mark to encourage customers to download iGov's "Neo4j Enterprise" ***instead of official Neo4j® EE***. *E.g.,* 2-SER-123–124, 2-SER-127–131, 2-SER-139; 2-SER-147–148 (yellow highlights); 2-ER-242–244; 2-ER-266–274.  This "appropriate[d] the cachet of" the NEO4J Mark to pass off iGov's "Neo4j Enterprise" product.  *See Garcia,* 475 F.3d at 1037–38; *see also Adobe Sys. Inc. v. A & S Elecs., Inc.*, 153 F.Supp.3d 1136, 1143 (N.D. Cal. 2015) (not fair use because defendant's use of Adobe's marks was not intended to describe Adobe's product, but rather to make it appear

that the software was sanctioned by Adobe).[10]  It was from these unrefuted uses of

the NEO4J Mark that the trial court correctly determined that Appellants used the

mark "to create the misleading perception that Defendants' products *were*

Plaintiffs' products," and thus could not assert a nominative fair use defense. 1-

SER-22 (20:3-14) (emphasis in original).

Appellants' arguments that they were *really* offering genuine Neo4J® EE

software is unavailing.[11]  AOB, pp. 23-25.  It is no more logical to say that Burger

King® could take parts of a McDonalds Big Mac® and parts of a Burger King

Whopper®, repackaging and selling it as a "McDonalds Bigger Mac."  Nor is the

result logically different if Burger King® also adds services, such as movie

---

[10] Appellants argue that *Adobe* is distinguishable because iGov's website informed consumers that "the Neo4j versions it used were 'Neo4j Enterprise open-source licenses.'" However, the facts in *Adobe* are analogous because the defendant was using its website to advertise and sell Adobe's trademarked products, which they had no right to distribute. 153 F.Supp.3d at 1142-43.  Here, the undisputed evidence established that Appellants were similarly offering unauthorized iGov "Neo4j Enterprise" which was not official Neo4j® EE.

[11] Appellants' argument that they were merely compiling "software from GitHub for Neo4j Enterprise" by pulling "that software from the 'official Neo4j' repositories without modification is unsupported by the evidence in the record. *See* AOB, p.24 (citing 2-ER-248; 5-ER-991).  The website printouts cited by Appellants contain the statements in question, and thus do not refute that they were offering a product that was not the same as official Neo4j® EE, and no contrary evidence was offered below that disputed Mr. Rathle's hands-on analysis of iGov's "Neo4j Enterprise" products.

screenings, and packages it as "McDonalds Bigger Mac Experience." In both the

hypothetical scenario and here, the resulting concoction is simply *not* the product

of the Mark holder. *See* 1-SER-7–8 (5:21-6:1); 1-SER-21–22 (19:13-20:2); 6-ER-

1373–1375 (¶¶ 24-28). Thus, it is not nominative fair use.

> **b.** **Appellants Other Uses of the NEO4J Mark on iGov's Website Similarly Did Not Describe Appellee's Products**

Appellants also fail to address the points other instances of Appellants' use

of the NEO4J Mark in a manner that does not refer to Appellees' products.[12]

Nothing about their use of the NEO4J Mark in an email address, a URL and a

download link for Appellants' software "can be reasonably interpreted to refer to

[Appellees'] products." 1-SER-7 (5:13-19); 1-SER-22–23 (20:15-21:10).

Appellants used the NEO4J Mark in the URL https://igovsol.com/neo4j.html

to promote iGov's "Neo4j Enterprise" and "Government Package for Neo4j," and

later to promote ONgDB until they deactivated that page sometime after July 27,

2020. 1-SER-7 (5:13-20); 1-SER-22 (20:15-20) (citing 7-ER-1586 [Fact 16] and

7-ER-1587 [Fact 18]); 2-SER-127–137; 3-SER-368–404; and 2-SER-108 (RFA

---

[12] Appellants obliquely argue that the trial court should have taken their use of the NEO4J Mark in the context of iGov's website as a whole and then determine whether it suggests sponsorship or endorsement by Neo4j USA. AOB, pp. 26-28. That argument applies to, and is therefore analyzed under the third prong of the *New Kids/Toyota* test in Sect. VII.B.2.a-b.

No. 5).  The uses were akin to posting a sign with the NEO4J Mark to draw customers to Appellants' products.  *See Brookfield Commc'ns, Inc. v. W. Coast Ent. Corp.,* 174 F.3d 1036, 1045, 1064-65 (9th Cir. 1999); *accord Experience Hendrix v. Hendrixlicensing.com*, 97 U.S.P.Q.2d 1364, No. C09-285Z, 2010 WL 2104239, at *6 (W.D. Wash. May 19, 2010) (use of plaintiff's mark in defendants' URL addresses and business names did not describe plaintiffs' products, but rather defendants' products).

Similarly, undisputed evidence showing Appellants used the NEO4J Mark in their email address, neo4j@igovsol.com, for consumers to obtain more information about iGov's "Neo4j Enterprise" and "Government Package for Neo4j" does not refer to Appellees' products.  1-SER-7 (5:13-20); 1-SER-22 (20:15-20).  The same is true for their continued use (until sometime in July 2020) of the neo4j@igovsol.com email address on iGov's "neo4j.html" page and "downloads.html" page as "'a means to inquire about ONgDB" and "[ONgDB] open source license support.'"  1-SER-22 (20:20-24) (citing 7-ER-1587 [Fact 19]); AOB, p.29 (admitting Suhy and iGov used the email for persons inquiring about iGov's consulting services and about ONgDB); 3-SER-380, 3-SER-391("Request Procurement Document Package [mailto:neo4jgovsol.com]), 3-SER-422–437 ("If you have a question for us, please email us at neo4j@igovsol.com" [purple highlights]); 2-SER-108–110 (RFA Nos. 7-11).  Nor did Appellants dispute their

use of a "Download Neo4j Enterprise" hyperlink that redirected consumers to download links for ONgDB.  3-SER-426, 3-SER-438 (red highlight); 2-SER-109–111 (RFA Nos. 10, 14); 7-ER-1587 (Fact 20); 1-SER-8 (6:15-17).  Consequently, the trial court correctly concluded that the foregoing uses of the NEO4J Mark precluded a nominative fair use defense as to those uses.  1-SER-23 (21:2-10); *Garcia,* 475 F.3d at 1037-38; *Adobe Sys*., 153 F.Supp.3d at 1143; *Experience Hendrix*, 97 U.S.P.Q.2d at *6 (the nominative fair use test does not apply where defendant uses plaintiff's trademark to promote defendants' product rather than merely describe plaintiff's product).

### 2. Appellants Fail to Establish Any Error in the Trial Court's Analysis under the Three-Prong *New Kids* Test

Even if Appellants had met their initial burden, they fail to demonstrate error in both *New Kids* prongs that the trial court found had been violated.  Having challenged only one of the two findings on this issue, Appellants are foreclosed from relief.  *See United States v. Kama*, 394 F.3d 1236, 1238 (9th Cir. 2005) (where appellant attacks only one of several bases of decision, appellant is deemed to have waived the right to challenge the alternative bases of that decision).  Nevertheless, the undisputed evidence supported each of the trial court's findings.

#### a. Appellants Fail to Challenge the Trial Court's Finding that Appellants Used the NEO4J Mark More Than Was Reasonably Necessary

With respect to the second *New Kids* prong, the trial court expressly found

that Appellants use of the NEO4J Mark went beyond what was reasonably necessary.  1-SER-23–24 (21:20-22:10).  The undisputed facts support the finding that Appellants used the NEO4J mark on their websites in labeling and promoting their products without proper trademark notices.  2-SER-69 (¶15) and 2-SER-107–115 (RFA Nos. 4-11, 14, 33-34); 2-SER-69–70 (¶¶16-20) and 2-ER-234–244; 2-SER-122–139; 2-SER-70 (¶23) and 2-SER-147–148 ; 2-SER-78–80 (¶¶64-72) and 3-SER-368–372, 3-SER-379–383, 3-SER-390–394, 3-SER-400–404, 3-SER-411-415, 3-SER-422–444; *see also* 1-SER-8 1-SER-7–8 (5:7-18, 6:11-17); 1-SER-23–24 (21:25-22:10); *and* Sects. IV.B.4. and VII.B.1.b.

Having failed to address, much less show error, as to any of the court's findings or evidence supporting the second prong of the *New Kids* test, Appellants can show no reversible error.  *See Horphag Rsch. Ltd. v. Pellegrini*, 337 F.3d 1036, 1041 (9th Cir. 2003) (defendant's use of plaintiffs' mark must meet all three prongs).  Consequently, the trial court was correct in finding that Appellants infringed the NEO4J Mark by using it more than reasonably necessary.

> **b.    The Trial Court's Finding that Appellants Used the NEO4J Mark to Suggest Endorsement of "Neo4j Enterprise" is Supported by Undisputed Record Evidence**

In analyzing the third prong of the *New Kids* test, courts review both the use of the mark, as well as the surrounding content of any promotion or presentation that includes the mark.  *New Kids*, 971 F.2d at 308-309.  The material is

scrutinized because nominative fair use requires "that the user do nothing that would, in conjunction with use of the mark or dress, suggest sponsorship or endorsement by the trademark or trade dress holder." *Mattel, Inc. v. Walking Mountain Prods.*, 353 F.3d 792, 811 (9th Cir. 2003). As shown in the next sections, the trial court correctly concluded Appellants failed this test.

Appellants' arguments regarding actual confusion are also wrong. First, actual confusion *is not* a separate requirement in addition to the *New Kids* test. AOB, p.29, fn 10. Second, contrary to Appellants' assertion, the trial court was free to rely upon actual confusion to negate the third prong of the *New Kids* test. *See Brother Recs., Inc. v. Jardine,* 318 F.3d 900, 908 (9th Cir. 2003) (overruled on other grounds in *Toyota*, 610 F.3d at 1182); *cf.*, AOB, p.29, fn 10. Undisputed record evidence[13] supports the express and implied findings of actual confusion,

---

[13] Evidence of Appellants' use of the NEO4J resulting in actual consumer confusion included users seeking assistance from Neo4j USA after experiencing compatibility issues, technical problems or glitches with ONgDB. *E.g.,* 3-SER-516–518 (reported compatibility issue posted on Neo4j USA's Online Community); 5-ER-1161–1162 ("Unable to connect to Neo4j/ONgDB Browser when port forwarding"); 5-ER-1163–1164 ("ONgDB neoj not starting up"); 5-ER-1165–1168 (problems with "ONgdb (neo4j) with different . . .server versions"); 3-SER-539–541 ("difficulty loading a Cypher file into Neo4J… note that I am using an recent ONGDB build, rather than straight Neo4J; I do not believe this will make any substantial difference."); and 10-ER-2397–2398 (set-up and load problems). Appellants' interchangeable use of "Neo4j Enterprise" and "ONgDB" also mislead

and thus provide an independent basis for affirmance.  1-SER-10–11 (8:13-9:1); 1-SER-34–35 (32:2-10, 33:3-8).

### (1)    Endorsement of iGov's "Neo4j Enterprise"

Undisputed record evidence supports the trial court's conclusion that Appellants' use of the NEO4J Mark implied endorsement by Appellees.  This includes the same overuse of the NEO4J Mark detailed in Sects. VII.B.1.a-b and VII.B.2.b.  1-SER-7 (5:7-20); 1-SER-23–24 (21:20-22:10).  Appellants do not argue that these were disputed facts.  *See id.*  Rather, they argue that the trial court failed to take into account the "look and feel" of specific snapshots of iGov's website and that there were "prominent" disclaimers.  AOB, pp.25-30.

As an initial matter, Appellants failed to identify the cited disclaimers to the trial court.[14]  Thus, forfeiting any related error.  *See In re E.R. Fegert, Inc.*, 887

_____

consumers into mistakenly believing that ONgDB and Neo4j® EE were one and the same.  *E.g.,* 4-ER-856–858; 2-SER-318–322; 10-ER-2369 (¶17); 3-SER–462; 3-SER-493–494; 10-ER-2401.

[14] Appellants only made unsupported conclusory arguments that a "reasonable consumer would not be confused that defendants' websites are a USA site or sponsored by USA or Sweden."  7-ER-1561–1562; *see also* 9-ER-2156 (7:3-7) ("There is no genuine dispute that defendants' websites, taken as a whole suggest sponsorship or endorsement by USA.").  In their in their responsive statement of undisputed facts, Appellants relied on ***different*** language limited to PureThink, while failing to address that the cited portions iGov's website did not contain any prominent disclaimers. *See* 7-ER-1590–1592, (Fact 31-Fact 33 [only referencing language that PureThink "has ceased their partnership with Neo4j Inc").

F.2d 955, 957 (9th Cir.1989) (appellate court will not consider arguments that were not sufficiently raised with the trial court to rule upon it); *accord A-1 Ambulance Serv., Inc. v. Cty. of Monterey*, 90 F.3d 333, 339 (9th Cir. 1996).

Even if Appellants had properly raised the issue below, on appeal they mischaracterize the webpages and fail to address the "look and feel" of the entirety of iGov's website over the course of several years (as considered by the trial court). *See* AOB, p.26 (citing 2-ER-235, 2-ER-261 and 2-ER-248), pp.32-33 (citing 5-ER-1007). The actual home page for iGov's website was https://igovsol.com/index.html. *E.g.*, 2-SER-70–80 (¶¶20, 23, 73-76); 2-SER-138–139; 2-SER-147–148; 3-SER-448–453. Notably, this home page *did not* feature any disclaimer of affiliation with Neo4j USA through at least July 2020. *Compare* 2-SER-138–139, 2-SER-147–148, 3-SER-445–453 *and* 3-SER-454–456. This contrasts with the webpage cited in the AOB at pages 11, 26, 28-30 and 32 – *that* is the home page for **PureThink's** legacy website *circa* November 2017. 2-SER-69 (¶16) and 2-ER-234–241.

The second webpage, https://igovsol.com/neo4j.html, is a subpage of the iGov site, not the "landing page" as claimed by Appellants. 2-SER-69–70 (¶19) and 2-SER-127–137; *cf.* AOB, p. 26 (citing 2-ER-261). Moreover, the "disclaimer" is neither at the top of that webpage nor prominent. *Id.* Rather, it is buried near **the bottom** of that secondary webpage. 2-ER-253–262; 2-SER-69

(¶16).  On page 26, Appellants cite to language that iGov "is not a Neo4j Solution

Partner," but fail to disclose that this "disclaimer" is proceeded by repeated ***bolded***

references to iGov's "Neo4j Enterprise" and "Government Package for Neo4j,"

which the trial court correctly held would misleading customers to believe they

would be receiving genuine Neo4j® EE (or the equivalent thereof).  2-ER-261; *see*

*also* 1-SER-7 (5:7-24); 1-SER-21–22 (19:15-20:14).

The third webpage, https://igovsol.com/download.html, is also not iGov's

landing or home page as claimed by Appellants.  2-SER-69 (¶18) and 2-SER-122–

124; *cf.* AOB, p. 26 (citing 2-ER-248).  It is an early version of a January 2018

subpage, and the cited language, "iGov Inc has no relationship with Neo4j Inc.,"

***was subsequently removed from this webpage.***  *Compare* 2-SER-69 (¶18), 2-SER-

122–124 *and* 2-SER-79 (¶¶70-71), 3-SER-428–439.  Prior to its removal, this

language was not conspicuous, and did not inform consumers that iGov's "Neo4j

Enterprise" and "Government Packages for Neo4j" were not approved or endorsed

by Neo4j USA.  1-SER-21–24 (19:13-20:14, 21:20-22:10).

Appellants' reliance on a fourth disclaimer that "iGov Inc is not a partner or

reseller of Neo4j" is also misleading.  5-ER-1007.  This October 10, 2020 iteration

of iGov's download subpage shows when it ***removed the infringing content*** and

***added*** the cited "disclaimer." *Compare* 2-SER-79 (¶71), 3-SER-435–439 *and* 2-

SER-80 (¶72), 3-SER-440–443.  iGov's belated addition of this disclaimer does

not negate the trial court's finding of infringement based on prior iterations of this webpage.  1-SER-8 (6:15-17) ("[Appellants] further used a "Download Neo4j Enterprise" hyperlink on its "downloads" page, which redirected consumers to download links for ONgDB until July 27, 2020") (citing 3-SER-411–412, 3-SER-422–424, 3-SER-428–430); 3-SER-426, 3-SER-438 (red highlight).[15]

Appellants' reliance on *Toyota* for the proposition that websites that *do not* suggest endorsement, and do not harm the market only undercuts their position.  *cf.* AOB pp.25-26.  Defendants in *Toyota* were auto brokers.  610 F.3d at 1175. Customers purchasing a Lexus through defendants would thus receive "a genuine Lexus car sold by an authorized Lexus dealer, and a portion of the proceeds ends up in Toyota's bank account."  *Id.*  Nonetheless, Toyota objected to domain names used by defendants containing the Lexus mark, as well as the use of Lexus logo on their website.  This Court vacated an injunction based in part on the First Amendment, in part on over breadth of the injunction, and in part on the second and third prongs of the *New Kids* test, remanding the case for consideration of a narrower injunction.  *Toyota,* 610 F.3d at 1180–83.

---

[15] While the trial court attributed this misuse to GFI's website, the cited undisputed evidence is iGov's download page.

Defendants in *Toyota* were undeniably referring to genuine Lexus cars made by plaintiffs – not parts of Lexus cars cobbled together by a third party as occurred here.[16] *Compare Toyota,* 610 F.3d at 1175, 1181-82 *and* 1-SER-21–23 (19:13-21:10). Moreover, unlike *Toyota*, Appellants' disclaimers – once they appeared – were not at the top of iGov's home page. *Compare* 2-SER-138–139, 2-SER-147–148, 3-SER-445–453 *and* 3-SER-454–456; *cf. Toyota,* 610 F.3d at 1181-82. Consequently, *Toyota* is inapposite.

### (2) Endorsement of ONgDB

Appellants also challenge the conclusion that their use of the NEO4J mark in connection with ONgDB "suggested ONgDB was sponsored by or affiliated with Neo4j USA." AOB, pp.30-33. First, the same website and email usage described above in Sect. VII.B.1.b. also creates a false implication of endorsement of ONgDB. Meanwhile, the same critique of the "disclaimers" issue applies with equal force. Second, Appellants ignore strong evidence in the words of company founder, Suhy that created a false public suggestion of affiliation and endorsement by Appellees. 1-SER-9 (7:19-24), 1-SER-21–22 (19:25-20:2), 1-SER-29 (27:6-27)

---

[16] As detailed above, Appellants' insistence that any customer would understanding they offering consulting services and a "Neo4j Enterprise package iGov had compiled from unmodified source code from Neo4j Sweden's official GitHub repository" is contrary to the undisputed evidence. *See, e.g.,* AOB, p.27 (citing 5-ER-989), p.29 (citing 2-ER-244–245), p.32 (citing 2-ER-235).

(citing 2-ER-266–274, 2-SER-147–148, 2-SER-323–334, 3-SER-461–465); *see also* 2-SER-153–155 ("I can explain why [GFI] was created and how we package Neo4j Enterprise (We call ONgDB) distributions"); 2-SER-335–337 ("ONgDB Enterprise - which is the same code base, with just a different name and removal of the commons clause").

Next, Appellants argue a "reasonable consumer" would understand that ONgDB was merely a fork of Neo4j Sweden's open source software, and not the same as commercially license Neo4j® EE.  AOB, pp.32-33.  This is not supported by the record and ignores the contrary findings that ONgDB *was not* a divergent fork of open source Neo4j® EE.[17]  1-SER-8–9 (6:2-7:5, 7:7-10) (citing 3-ER-339–346 [158:18-163:5, 163:13-165:6], 10-ER-2295–2297 [124:2-126:23]); 1-SER-23–24 (21:20-22:10) (use more than necessary and create confusion).  Rather, it was code cobbled together from various Neo4J products (*see* Sect. I.B.2.), by Suhy who impermissibly removed legal notices and commercial restrictions from the operative license and then purported to offer ONgDB for free, charging users support fees based on the savings they would incur by not paying Appellees for a

---

[17] Even assuming arguendo Appellants were merely offering a fork, the trial court specifically held that the undisputed facts established that their use of the NEO4J Mark "goes beyond what is necessary to identify ONgDB as a fork of Neo4j."  1-SER-23–24 (21:11-22:5); *supra* Sect.VII.B.2.a.

commercial license for Neo4j EE.  3-SER-358–361; 10-ER-2313–2319 (183:12-183:1, 187:12-188:5, 189:1-191:3); 6-ER-1370–1375 (¶¶11-13, 27-30).

Appellants also ignore that iGov misrepresented that ONgDB was the same as Neo4j EE "branded distributions" and interchangeability referred to "ONgDB Enterprise" and "Neo4j Enterprise" on its website. 1-SER-9 (7:18-24) (citing 3-SER-368–455 [yellow highlights]); 1-SER-8–9 (6:15-17, 7:12-17)[18] (citing 3-SER-422–438 [yellow highlights]).  iGov also misled customers on its "downloads" subpage by using a "Download Neo4j Enterprise" hyperlink that redirected consumers to download links for ONgDB. *E.g.,* 3-SER-426, 3-SER-438 (red highlight); 2-SER-109–111 (RFA Nos. 10, 14).

iGov also instructed potential users of Neo4j EE on its "neo4j" subpage to "simply download ONgDB Enterprise as a drop in replacement for an existing commercial licensed distribution of the same version number."  3-SER-368–415 (green highlight); 1-SER-9 (7:12-17). Appellants also coopted the Neo4j USA's documentation in promoting ONgDB.  They used hyperlinks on iGov's website to redirect consumers to Neo4j USA's official release notes and "What's New" webpage.  3-SER-422–436 (blue highlight); 1-SER-24 (22:1-4) and 1-SER-30

_____

[18] It appears that trial court mistakenly stated this was GFI's website, but a review of this evidence cited by the trial court shows printouts of iGov's download pages.

(28:1-11) (citing 3-SER-368–372, 3-SER-422–427). All of this content impermissibly suggested affiliation with and endorsement by Appellees.

Appellants' assertion that the district court erred by "fail[ing] to recognize that iGov does not control or offer a product called ONgDB" is also wrong. AOB, p.32. In fact, iGov actively promoted ONgDB on its website. 1-SER-8 (6:2-11). Suhy was a major contributor to the development of ONgDB. 10-ER-2330–2331 (211:7-212:21). Suhy was also responsible for the removal of commercial restrictions governing the underlying source code, inducing users to believe iGov was allowed to offer ONgDB for "free" with paid support services. 1-SER-8 (6:21-26) (citing 3-ER-477–4-ER-858, 2-SER-199 [159:3-10], 6-ER-1375 [¶30], 3-SER-575 [19:9-25]); 1-SER-9 (7:8-10) (citing 10-ER-2311 [171:23-172:23], 2-SER-198–205 [158:1-162:5, 163:13-165:6]). Thereafter, iGov offered downloads of ONgDB via its website. 1-SER-29–31 (27:12-28:1); 3-SER-422–439; 2-SER-110–111 (RFA No. 14).

In sum, Appellants demonstrate no error in the trial court's analysis both legally (because they fail to challenge dispositive findings) and because as to those findings they do challenge (largely by ignoring undisputed record evidence and misconstruing other evidence) Appellants do not show that any reasonable jury would conclude that theirs was nominative fair use.

**C.    The Trial Court's Finding of False Advertising in Appellants' Promotion of ONgDB Was Supported by Undisputed Record Evidence**

A false advertising claim under § 1125(a) requires proof that (1) defendant made a false statement of fact in a commercial advertisement about its own or another's product; (2) the statement actually deceives or has the tendency to deceive a substantial segment of its audience; (3) the deception is material; (4) defendant caused the false statement to enter interstate commerce, and (5) plaintiff has been or is likely to be injured as a result of the false statement. *Southland Sod Farms v. Stover Seed Co.*, 108 F.3d 1134, 1139 (9th Cir. 1997). Proof establishing this claim will also establish a violation of the UCL.  *Cleary v. News Corp.*, 30 F.3d 1255, 1263 (9th Cir. 1994) (UCL claims are "substantially congruent to claims made under the Lanham Act").

The trial court found Appellants engaged in false advertising in the promotion of ONgDB by making: "(1) statements that ONgDB and Neo4j Enterprise are 'free and open source' versions of or alternatives to commercially licensed Neo4j EE; and (2) statements that ONgDB is a 'drop-in replacement for an existing commercial licensed distribution of the same version number' of Neo4j EE." 1-SER-26–32 (24:1-30:13).  Appellants only assign error to its finding that such statements were false.  AOB, pp.34-43.

Appellants first argue that trial court ignored ONgDB was GFI's product,

and Appellants were merely offering a support package for it. AOB, p.34. As detailed in Sect. VII.B.2. *et seq*., Appellants offered ONgDB via their website with that package. More importantly, § 1125(a) expressly states that liability attaches where a false statement is made "about its own ***or another's product***." *Southland Sod Farms*, 108 F.3d at 1139 (emphasis). Thus, it is irrelevant that ONgDB originated from GFI before Appellants marketed and offered it.

Next, Appellants argue the trial court's findings were primarily based on misstatements made on GFI's website. AOB, p.35. Separately from the implied concession that some misstatements *were* present on Appellant's site, the statement contradicts the record, which shows iGov's website was replete with express misstatements of ONgDB being a "drop in" replacement for Neo4j EE. 3-SER-368–455 (green highlights); 1-SER-26 (24:1-6); 1-SER-29–30 (27:6-28:11) (falsely stating ONgDB had same features as Neo4j® EE) (citing 2-ER-266–274, 2-SER-147–148, 2-SER-323–329, 2-SER-331–334, 3-SER-368–372, 3-SER-422–427). Suhy also published numerous Tweets making similar statements. 3-SER-486–495, 3-SER-497–501 (yellow highlights); 5-ER-1099–1100. These misstatements are analyzed below.

### 1. Appellants' Assertions that ONgDB was "Free and Open-Source" Neo4j EE Were False

The trial court found that Appellants' representations regarding ONgDB as "'free and open source' versions of Neo4j EE" were false because the plain

language of the Neo4j Sweden Software License did not permit them to remove the Commons Clause. 1-SER-26–27 (24:7-25:19). Appellants conceded that the falsity of their "'free and open source' versions" statements hinged on the interpretation of Section 7 of that license agreement. *Id.* at 24:11-15. They repeat that concession here. AOB, p.37-38.

Seeking to establish error, Appellants first argue that specific clauses in Sections 7 and 10 allowed them as licensees to remove "further restrictions" added by Neo4j Sweden. AOB, pp.37-38. This runs contrary to the express terms of the license, which must be interpreted as a whole to "so as to give effect to every part ... each clause helping to interpret the other." Cal. Civ. Code § 164; *Wapato Heritage, L.L.C. v. United States*, 637 F.3d 1033, 1039 (9th Cir. 2011).

Appellants isolate a clause within Section 10 that "***You*** may not impose any further restrictions on the exercise of the rights granted or affirmed under this License" and argue that this means that the licensor cannot add restrictions. AOB, pp.37-38. This ignores that the Neo4j Sweden Software License (and the AGPL) expressly defines "you" as ***the licensee***. 6-ER-1408 at §0 ("'The Program' refers to any copyrighted work under this License. Each licensee is addressed as 'you'"). Thus, Section 10 prohibits ***a licensee*** from imposing further restrictions, but does not prohibit Neo4j Sweden ***as the licensor*** of the Program from doing so. 6-ER-1413 at §10.

Appellants' assertion that Section 7 explicitly grants a licensee permission to remove further restrictions added by Neo4j Sweden as the licensor and copyright holder fares no better.[19] AOB, pp.37-38.  In making that claim, they cite to the clause "If the Program as you received it, or any part of it, contains a notice stating that it is governed by this License along with a term that is a further restriction, you may remove that term." *Id*.  This clause also cannot be read in isolation. Rather, it must be put in context within the surrounding clauses Section 7:

> Notwithstanding any other provision of this License, for material *you* add to a covered work, *you* may (if authorized by the copyright holders of that material) supplement the terms of this License with [the following six additional] terms ….
>
> * * *
>
> All other non-permissive additional terms are considered "*further restrictions*" within the meaning of section 10. If the Program as *you* received it, or any part of it, contains a notice stating that it is governed by this License along with a term that is a *further restriction*, *you* may remove that term.

6-ER-1411–1412 at §7 (emphasis added).

_____

[19] Appellants also assert that Neo4j USA is improperly seeking to enforce Neo4j Sweden's copyright.  AOB, pp.39-40.  Not so.  The interpretation of the terms of the Neo4j Sweden Software License are merely necessary to determine the falsity of the advertisements based thereon – another point Appellant conceded below.  1-SER-26 (24:10-15 [parties agree issue turns on the interpretation of Section 7 of the license]).

When read in full, Section 7 clearly governs the actions of licensees alone, ergo the repeated use of the defined term "you," and thus pertains to what additional restrictions licensees may place on a covered work when adding source code and redistributing it as required by the license. Indeed, the sentence relied upon by Appellants is immediately proceeded by a sentence stating that a licensee who adds material to the original work may add any of the six enumerated "additional restrictions" and that any other "nonpermissive additional terms" are "further restrictions" *as defined by Section 10*. As noted above, Section 10 makes clear that only licensees are precluded from adding further restrictions. Thus, reading these provisions together, Section 7 only permits a *downstream licensee* to remove "further restrictions" placed by an *upstream licensee* that has added to the original work, which do not fall within the six enumerated additional terms.

Appellants' contrary read also contradicts Neo4j Sweden's expressed intent of precluding others from commercially benefiting from its software. 6-ER-1370 (¶11); 6-ER-1415 ("the grant of rights under the License will not include, and the License does not grant to you, the right to Sell the Software"); *see also* 6-ER-1370–1371 (¶12 ["Plaintiffs made the decision to modify the license terms used to distribute Neo4j® EE to prevent third parties from monetizing its software while not contributing back to the software or companies who are producers of the software"]). A licensor's intent to limit the commercialization of its software

-51-

should be given effect as intended by the ***licensor***, not the licensee. *Altera Corp. v. Clear Logic, Inc.*, 424 F.3d 1079, 1090-91 (9th Cir. 2005) (interpreting terms to effectuate licensor's intent to prevent competitors from benefitting from its software); *see also Micro Star v. Formgen Inc.*, 154 F.3d 1107 (9th Cir. 1998); *Storm Impact, Inc. v. Software of the Month Club*, 44 U.S.P.Q.2d 1441, 1997 WL 566378 (N.D. Ill. 1997) (distribution for commercial purposes infringes where license terms limit use to non-commercial purposes).

Appellants' strained reading is also illogical. It would nullify Neo4j Sweden's exclusive right, as copyright holder, to license Neo4j® EE under the terms of its choosing. *See Jacobsen v. Katzer*, 535 F.3d 1373, 1381 (Fed. Cir. 2008) ("[c]opyright holders who engage in open source licensing have the right to control the modification and distribution of copyrighted material"); 1-SER-26–27 (24:16-25:19) (citing same); *Apple Inc. v. Psystar Corp.*, 658 F.3d 1150, 1159 (9th Cir. 2011) (copyright owners may condition use). Thus, just as the trial court previously held (*Neo4j, Inc. v. Graph Found., Inc.,* No. 5:19-CV-06226-EJD, 2020 WL 6700480, at *4 (N.D. Cal. Nov. 13, 2020)), it again correctly held that nothing in the license prohibited Neo4j Sweden from adding the Commons Clause, nor authorized Appellants to remove it. 1-SER-26–27 (24:7-25:12).

Appellants further suggest that the trial court's reasoning was "flawed" because Neo4j Sweden violated the terms of the Free Software Foundation's

("FSF") copyright in the form AGPL license. AOB, pp.38-39. In doing so, Appellants argue "you" means Neo4j Sweden. This is not supported by the plain text, which clearly delineates that the license governs the rights of copyright holder of "the Program," and not copyright holder of the underlying form. 6-ER-1408 at §0 (Definitions), §2 (Basic Permissions). Even ignoring the inconsistencies Appellants create with the defined term "you," they lack standing to enforce FSF's copyright – and copyright enforcement in the form is not relevant to interpretation and enforcement of Neo4j Sweden's license. *See Minden Pictures, Inc. v. John Wiley & Sons, Inc*., 795 F.3d 997 (9th Cir. 2015) (only the copyright owner, assignee or an exclusive licensee of a right enumerated by §106 has standing to bring an infringement action); *see also* 2-SER-282 (FSF confirmed "[o]nly the copyright holder has the power to enforce the terms of the license"); 10-ER-2317–2319 (189:1-191:3) (Suhy admits that Neo4j Sweden is the copyright owner of Neo4j® EE).

Finally, Appellants argue its representations to the public were not misleading because iGov's website stated that ONgDB is a free fork of Neo4j® EE. AOB, p.36. Not only is this argument impermissibly raised for the first time here (7-ER-1539–1580, 7-ER-2149–2158), but it also contradicts the record.

Appellants did not develop ONgDB as an independent fork[20] from properly

licensed open source Neo4j® EE in compliance with the terms analyzed above.

Rather, Appellants simply **stripped the restrictions** they did not wish to follow and

used the code to create ONgDB in violation thereof.  1-SER-8–9 (6:2-7:6); 10-ER-

2265–2323 (28:25-29:11, 171:23-172:23, 187:12-188:5, 199:22-200:20); 2-SER-

185–188 (87:24-90:9); 2-SER-199 (159:3-10); 2-SER-153–155; 4-ER-856–858; 3-

SER-575 (19:9-25); 6-ER-1374–1375 (¶¶27-30).

In sum, Appellants misguided interpretation of the Neo4j Sweden Software

License does not withstand scrutiny.  The trial court was correct in concluding that

Appellants' representations that ONgDB was a '"free and open source' versions of

Neo4j EE" were false.

### 2. Appellants' Assertions that ONgDB was a "Drop-In" Replacement for Neo4j EE Were False or Misleading

To demonstrate falsity under the Lanham Act, "a plaintiff may show that the

statement was literally false, either on its face or by necessary implication, or that

the statement was literally true but likely to mislead or confuse consumers."

*Southland Sod Farms*, 108 F.3d at 1139.  The trial court found the undisputed

---

[20] "In software development, a fork is a new application developed from an existing one. When an application is "forked," it creates a new, separate program, rather than a new development branch."  https://techterms.com/definition/fork

record evidence met this standard in two respects. 1-SER-27–30 (25:20-28:16). Appellants point to no evidence allowing a reasonable jury to conclude otherwise with respect to ***both***. *Cf.* AOB p.41.

First, the trial court found that Appellants' representations that post-ONgDB v3.5.4 releases were "drop-in replacements" for equivalent versions of Neo4j® EE were both false and misleading based on Appellants' ***own interpretation*** of what they meant by "drop-in replacements," i.e. mere compatibility. 1-SER-27–28 (25:20-26:11). Unsurprisingly, Appellants cite no evidence showing that a jury could find consumers did not understand their statements as at least assuring compatibility with Neo4j® EE. 1-SER-30 (28:12-16). Premised on Appellant's meaning of "compatibility," the record evidence supported the trial court's finding that these claims were false or misleading with respect to ONgDB versions 3.5.5 and later because they Appellants could not verify ONgDB's compatibility with Neo4j® EE. 1-SER-28 (26:12-24); *cf.* AOB pp.41-42.

It was undisputed that Appellees officially released Neo4j® EE v.3.5 solely under a commercial license and did not publish any of the underlying source code. 6-ER-1371–1377 (¶¶13-14, 33-34). GFI confirmed that after ONgDB v3.5.4, it could not "reliably guarantee that it was a drop-in replacement" for Neo4j® EE and was unwilling to do the necessary testing to make such integration and compatibility guarantees because it became "too hard to demonstrate." 2-SER-

219–222 (186:24-188:17, 188:23-189:23). Despite there being no way to guarantee compatibility without access to the closed Neo4j® EE source code of the same version, Appellants continued to make drop-in replacement claims for later versions. 2-SER-331–334 (ONgDB v3.5.8); 3-SER-422–427 (ONgDB v3.5.5); 3-SER-435–439 (ONgDB v3.5.5); 3-SER-445–446 (ONgDB Enterprise v3.5.5); 3-SER-448–449 (ONgDB v3.5.5); 3-SER-451–452 (ONgDB Enterprise v3.5.5); 3-SER-454–456 (ONgDB v3.5.11); 3-SER-493–494 (ONgDB 3.5.14).

Thus, the trial court was correct to conclude that Appellants' representations that the equivalent post-ONgDB v3.5.4 versions were "drop-in replacements" for the same versions of Neo4j® EE were demonstratively false or misleading because Appellants could not verify compatibility.[21] 1-SER-28 (26:12-24); *see also EFCO Corp. v. Symons Corp.*, 219 F.3d 734 (8th Cir. 2000) (defendant was proven to have falsely claimed that its product was compatible and interchangeable with plaintiff's product). Appellants fail to address this undisputed evidence, and thus fail to show error. AOB, pp.40-43.

Second, the trial court found that Appellants' "drop-in replacement"

---

[21] Appellants suggest that trial court erred because Neo4j USA failed to offer evidence that users of Neo4j® EE could not "drop-in" their data to ONgDB. AOB, p.42. Aside from GFI's fatal admission that it could not verify compatibility, Appellees offered evidence of compatibility issues. *See* 1-SER-10 (8:17-23).

statements about ONgDB were also likely to mislead or confuse consumers by falsely implying that ONgDB "has all the enterprise features" and is essentially the same software as Neo4j® EE. 1-SER-28–30 (26:25-28:12). The trial court reached this conclusion based on the numerous examples of statements made by Appellants to consumers that ONgDB was a drop-in replacement for equivalent versions of Neo4j® EE, stating it had "all the enterprise features with no limitations on cores, cluster instances, etc." 1-SER-29–30 (27:8-28:11); (citing 2-ER-266–274, 2-SER-147–148, 2-SER-223–329, 2-SER-331–334, 3-SER-368–372, 3-SER-422–427); 3-SER-368–439, 3-SER-445–456 (green highlights).

The record evidence supported the trial court's finding that iGov's "drop-in replacement" statements were false or misleading (1-SER-28–29 [26:25-27:7]) because Appellants' products *were not* identical, essentially the same, or had all of the Neo4j EE features (1-SER-29–30 [27:6-28:16]). It is undisputed that ONgDB was not 100% identical to and did not include every closed enterprise feature in equivalent Neo4j® EE. 2-SER-291–294 (2:12-17, 4:15-22, 5:4-6:21); 10-ER-2295–2299 (124:2-126:23, 127:19-128:17), 3-ER-339–346 (158:18-163:5, 163:13-165:6); 1-SER-28 (26:2-4). Here too, Appellants ignore their undisputed statements falsely implying that ONgDB was essentially the same software as equivalent versions of Neo4j® EE. 2-ER-266–274; 2-SER-147–148; 2-SER-223–329; 2-SER-331–334; 3-SER-368–372; 3-SER-422–427; 3-SER-435–439; 3-SER-

445–456; 3-SER-493–494; 1-SER-29–30 (27:8-28:11). They only raise objections to the Rathle declaration – ironically evidence *not* cited by the trial court for this point. (AOB p.41) But their arguments evince no contrary facts – especially in light of the admissions cited by the trial court, and the aforementioned evidence which reinforces Mr. Rathle's testimony. 1-SER-27–28 (25:25-26:1) (no argument that ONgDB was of same quality or offered all features); 1-SER-28 (26:2-4) (same, citing Appellants' interrogatory response); *compare* 6-ER-1375–1377 (¶¶29-34).

Third, the record evidence establishes a separate basis for affirmance raised by Appellees below (2-ER-157 [31:1-16]), but not ruled upon by the trial court 1-SER-27 (25:20-23). Appellants' "drop in" replacement statements also constituted false advertising because ONgDB contained source code files that purported to be offered with a license (the AGPL) to which the copyright holder had not assented. As discussed above in Sect. VII.C.1, this amounts to false advertising since Appellants violated the terms of the Neo4j Sweden Software License in doing so. *See Sun Microsystems, Inc. v. Microsoft Corp.*, 999 F. Supp. 1301, 1301 (N.D. Cal. Mar. 24, 1998) (preliminarily enjoining Microsoft from advertising its product as "JAVA Compatible" where Microsoft, in violation of its license agreement with Sun, advertised its product as compatible, even though it failed to meet agreed-upon compatibility standards). This Court may affirm on any of the three bases set

forth herein. *Campidoglio*, 870 F.3d at 973.

**D.** **Appellants Demonstrate No Error in the Trial Court's Finding of Consumer Confusion in Granting Summary Judgment on False Designation of Origin**

A claim for false designation of origin under § 1125(a) requires proof that: (1) defendant used a false designation of origin; (2) the use occurred in interstate commerce; (3) that such false designation is likely to cause confusion, mistake or deception as to the origin, sponsorship, or approval of defendants' goods or services by another person; and (4) that plaintiff has been or is likely to be damaged. *Hokto Kinoko Co. v. Concord Farms, Inc.*, 810 F.Supp.2d 1013, 1039 (C.D. Cal. 2011), *aff'd*, 738 F.3d 1085 (9th Cir. 2013).

Appellants challenge only the two of the *Sleekcraft* factors commonly used to evaluate the confusion element. In so doing, they effectively foreclose their ability to show error since "[t]he presence or absence of a particular factor does not necessarily drive the determination of a likelihood of confusion." *E. & J. Gallo Winery v. Gallo Cattle Co.*, 967 F.2d 1280, 1290–91 (9th Cir. 1992). Indeed, the factors are fluid, and a particularly strong showing of some factors will suffice to show confusion. *Pom Wonderful* at 1125. Moreover, Appellants *did not* address either of these two issues below and therefore should be foreclosed from doing so

here.[22]

Here, the trial court reviewed *each Sleekcraft* factor and concluded that holding out ONgDB as "'free and open source' Neo4j EE" constituted a false designation of origin under the first element.[23] 1-SER-32 (30:22-31:14). This was largely based on the same evidence that supported its false advertising findings. *See* Sect. VII.C.1-2.

Without any reference to authority, Appellants criticize the trial court's reliance on the established *Sleekcraft* factors, but point to no alternate analysis. AOB, p.44. Their commentary illustrates no cognizable error. As to the two *Sleekcraft* factors Appellants challenge (for the first time), "evidence of actual confusion" and "type of goods and the degree of care likely to be exercised by the purchaser," they do so without authority or a full review of the evidence.[24] AOB,

---

[22] Appellants only addressed the first element, and did not address the second, third and fourth elements below. 1-SER-32–33 (30:22-31:6). Appellants are now addressing the third element and related *Sleekcraft* factors for the first time on appeal. AOB, p.43. This Court may thus consider the issues forfeited.

[23] Appellants' argument that there was a question of material of fact regarding the falsity of their "drop-in replacement" statements (AOB, p.46) are addressed in Section VII.C.2., but are irrelevant to this issue because the trial court's ruling was solely based on Appellants "holding out of ONgDB as free and open source Neo4j EE." 1-SER-32–33 (30:22-31:4).

[24] Appellants ignore the trial court's findings that the other six factors weighed in favor of Appellees. *Compare* AOB, pp.44-45 and 1-SER-33–34 (31:21-32:9).

pp.44-45.

The actual evidence supporting the finding of actual confusion is found in footnote 13 above in Sect. VII.B.2.b.   Notably, Appellants do not dispute that consumers attributed issues they had with ONgDB to Neo4j USA (1-SER-10 [8:17-23] [citing  3-SER-516-518; 5-ER-1161–1168; 3-SER-539–541; 10-ER-2397–2398]), or that "consumers… expressed uncertainty about the propriety of Defendants' modification to the Neo4j Sweden Software License" (1-SER-10–11 [8:24-9:1] [citing 3-SER-343–346, 3-SER-520–533], 1-SER-34 [32:5-6]).  That is customer confusion.  *AMF Inc. v. Sleekcraft Boats*, 599 F.2d 341, 351-52 (9th Cir. 1979) (some evidence sufficient to establish actual confusion, while the complete absence of such evidence not dispositive).

Appellants further argue (without any citation to the record) that type of goods and the care likely to be exercised by purchasers militate against confusion because Neo4j® EE is expensive.  AOB, p.45.  Their conclusion is belied by unchallenged evidence of Appellants targeting the same customers as Neo4j USA, and Appellants' admission that price *was* material to their purchasing decisions. 1-SER-30 (29:4-11); 1-SER-34 (32:6-10); 4-ER-856–858; 10-ER-2369 (¶17), 10-

_____

Thus, they concede that the trial court was correct in its findings.  *See E.R. Fegert*, 887 F.2d at 957.

ER-2386–2396, 10-ER-2397–2398, 10-ER-2399–2402.   It pushed customers *toward* ONgDB – just as Appellants wanted.  1-SER-31–32 (29:19-30:10) (citing =2-SER-235–337, 3-SER-339–346, 3-SER-351–353 [yellow highlights]; 3-SER-348; 3-SER-544–547; 10-ER-2276–2277 [53:4-54:25]; 10-ER-2334 [224:13-23]; 6-ER-1452–1453 [¶¶20-24]).

Appellants' remaining arguments fare no better.  First, the disclaimer Appellants raise is addressed at Sect. VII.B.2.b.(1)-(2) and does little to dispel the repeated uses of the Mark in the deceptive manner described in Sect. VII.B. et seq. and Sect. VII.C.1-2.  The issue of "truthful comparative advertising" is addressed in Sect. VII.B.1, which demonstrates that Appellants were commonly not referring to Appellees products.  Indeed it is difficult to imagine legitimate comparative advertising against a backdrop of providing a "100% free" alternative to Neo4j® EE by taking parts of various iterations of Appellees' source code, stripping their license terms and offering them as a new "free" product with lesser features and no guarantee of compatibility while confusingly using the NEO4J Mark.  *See* 1-SER-30–31 (28:17-29:11); 1-SER-32–33 (30:22-31:4); 1-SER-34 (32:2-10).  Having failed to show legal error in the trial court's reliance on *Sleekcraft,* any material fact dispute (much less one that would convince a reasonable jury), this Court should affirm the court's ruling on Neo4j USA's False Designation claim.

# VIII.

# CONCLUSION

The trial court correctly concluded that Appellants' unauthorized use of Appellee's Mark to promote their own products was a trademark violation. Their false and misleading representations, made to promote Appellants' products, created likely confusion, actual confusion, and suggested a false origin for Appellants' products. These conclusions were amply supported by undisputed evidence and no reasonable jury would have ruled otherwise. This Court should, therefore, affirm.

Respectfully submitted,

Dated: October 28, 2021

*/s/ Allonn E. Levy*

Allonn E. Levy (CA Bar No. 187251)
HOPKINS & CARLEY
70 S. First Street
San Jose, CA 95113
Telephone: (408) 286-9800
Facsimile: (408) 998-4790
appeals@hopkinscarley.com

*Attorneys for Appellees*
Neo4j, Inc. and Neo4j Sweden AB

# CERTIFICATE OF COMPLIANCE FOR BRIEFS

I hereby certify that this motion complies with the type-volume limitations of FED. R. APP. P. 27(d)(2)(A) because this motion contains 13,948 words, excluding the parts of the motion exempted by FED. R. APP. P. 32(f).

This motion complies with the typeface requirements of FED. R. APP. P. 32(a)(5) and the type style requirements of FED. R. APP. P. 32(a)(6) because this motion has been prepared in a proportionately spaced typeface using Microsoft Word in 14-point Times New Roman font.

Date: October 28, 2021

HOPKINS & CARLEY
A Law Corporation

*/s/ Allonn E. Levy*

Allonn E. Levy, Esq.

*Attorneys for Appellee*
Neo4j, Inc. and Neo4j Sweden AB

**CERTIFICATE OF SERVICE**

I hereby certify that I electronically filed the foregoing with the Clerk of

Court for the United States Court of Appeals for the Ninth Circuit by using the

appellate CM/ECF system on October 28, 2021. I certify that all participants in the

case are registered CM/ECF users and that service will be accomplished by the

appellate CM/ECF system.

Date: October 28, 2021

HOPKINS & CARLEY
A Law Corporation

*/s/ Allonn E. Levy*
_____
Allonn E. Levy, Esq.

*Attorneys for Appellee*
Neo4j, Inc. and Neo4j Sweden AB

**ADDENDUM**

## TABLE OF CONTENTS

**Page**

15 USC § 1114 .................................................................................................1

15 USC § 1125 .................................................................................................9

**ADDENDUM**

## 15 U.S. Code § 1114

**(1)** Any person who shall, without the consent of the registrant--

**(a)** use in commerce any reproduction, counterfeit, copy, or colorable imitation of a registered mark in connection with the sale, offering for sale, distribution, or advertising of any goods or services on or in connection with which such use is likely to cause confusion, or to cause mistake, or to deceive; or

**(b)** reproduce, counterfeit, copy, or colorably imitate a registered mark and apply such reproduction, counterfeit, copy, or colorable imitation to labels, signs, prints, packages, wrappers, receptacles or advertisements intended to be used in commerce upon or in connection with the sale, offering for sale, distribution, or advertising of goods or services on or in connection with which such use is likely to cause confusion, or to cause mistake, or to deceive,

shall be liable in a civil action by the registrant for the remedies hereinafter provided. Under subsection (b) hereof, the registrant shall not be entitled to recover profits or damages unless the acts have been committed with knowledge that such imitation is intended to be used to cause confusion, or to cause mistake, or to deceive.

As used in this paragraph, the term "any person" includes the United States, all agencies and instrumentalities thereof, and all individuals, firms, corporations, or other persons acting for the United States and with the authorization and consent of the United States, and any State, any instrumentality of a State, and any officer or employee of a State or instrumentality of a State acting in his or her official capacity. The United States, all agencies and instrumentalities thereof, and all individuals, firms, corporations, other persons acting for the United States and with the authorization and consent of the United States, and any State, and any such instrumentality, officer, or employee, shall be subject to the provisions of this chapter in the same manner and to the same extent as any nongovernmental entity.

**(2)** Notwithstanding any other provision of this chapter, the remedies given to the owner of a right infringed under this chapter or to a person bringing an action under section 1125(a) or (d) of this title shall be limited as follows:

**(A)** Where an infringer or violator is engaged solely in the business of printing the mark or violating matter for others and establishes that he or she was an innocent infringer or innocent violator, the owner of the right infringed or person bringing the action under section 1125(a) of this title shall be entitled as against such infringer or violator only to an injunction against future printing.

**(B)** Where the infringement or violation complained of is contained in or is part of paid advertising matter in a newspaper, magazine, or other similar periodical or in an electronic communication as defined in section 2510(12) of Title 18, the remedies of the owner of the right infringed or person bringing the action under section 1125(a) of this title as against the publisher or distributor of such newspaper, magazine, or other similar periodical or electronic communication shall be limited to an injunction against the presentation of such advertising matter in future issues of such newspapers, magazines, or other similar periodicals or in future transmissions of such electronic communications. The limitations of this subparagraph shall apply only to innocent infringers and innocent violators.

**(C)** Injunctive relief shall not be available to the owner of the right infringed or person bringing the action under section 1125(a) of this title with respect to an issue of a newspaper, magazine, or other similar periodical or an electronic communication containing infringing matter or violating matter where restraining the dissemination of such infringing matter or violating matter in any particular issue of such periodical or in an electronic communication would delay the delivery of such issue or transmission of such electronic communication after the regular time for such delivery or transmission, and such delay would be due to the method by which publication and distribution of such periodical or

transmission of such electronic communication is customarily conducted in accordance with sound business practice, and not due to any method or device adopted to evade this section or to prevent or delay the issuance of an injunction or restraining order with respect to such infringing matter or violating matter.

**(D)(i)(I)** A domain name registrar, a domain name registry, or other domain name registration authority that takes any action described under clause (ii) affecting a domain name shall not be liable for monetary relief or, except as provided in subclause (II), for injunctive relief, to any person for such action, regardless of whether the domain name is finally determined to infringe or dilute the mark.

**(II)** A domain name registrar, domain name registry, or other domain name registration authority described in subclause (I) may be subject to injunctive relief only if such registrar, registry, or other registration authority has--

    **(aa)** not expeditiously deposited with a court, in which an action has been filed regarding the disposition of the domain name, documents sufficient for the court to establish the court's control and authority regarding the disposition of the registration and use of the domain name;

    **(bb)** transferred, suspended, or otherwise modified the domain name during the pendency of the action, except upon order of the court; or

**(cc)** willfully failed to comply with any such court order.

**(ii)** An action referred to under clause (i)(I) is any action of refusing to register, removing from registration, transferring, temporarily disabling, or permanently canceling a domain name--

    **(I)** in compliance with a court order under section 1125(d) of this title; or

    **(II)** in the implementation of a reasonable policy by such registrar, registry, or authority prohibiting the registration of a domain name that is identical to, confusingly similar to, or dilutive of another's mark.

**(iii)** A domain name registrar, a domain name registry, or other domain name registration authority shall not be liable for damages under this section for the registration or maintenance of a domain name for another absent a showing of bad faith intent to profit from such registration or maintenance of the domain name.

**(iv)** If a registrar, registry, or other registration authority takes an action described under clause (ii) based on a knowing and material misrepresentation by any other person that a domain name is identical to, confusingly similar to, or dilutive of a mark, the person making the knowing and material misrepresentation shall be liable for any damages, including costs and attorney's

fees, incurred by the domain name registrant as a result of such action. The court may also grant injunctive relief to the domain name registrant, including the reactivation of the domain name or the transfer of the domain name to the domain name registrant.

**(v)** A domain name registrant whose domain name has been suspended, disabled, or transferred under a policy described under clause (ii)(II) may, upon notice to the mark owner, file a civil action to establish that the registration or use of the domain name by such registrant is not unlawful under this chapter. The court may grant injunctive relief to the domain name registrant, including the reactivation of the domain name or transfer of the domain name to the domain name registrant.

**(E)** As used in this paragraph--

**(i)** the term "violator" means a person who violates section 1125(a) of this title; and

**(ii)** the term "violating matter" means matter that is the subject of a violation under section 1125(a) of this title.

**(3)(A)** Any person who engages in the conduct described in paragraph (11) of section 110 of Title 17 and who complies with the requirements set forth in that

paragraph is not liable on account of such conduct for a violation of any right under this chapter. This subparagraph does not preclude liability, nor shall it be construed to restrict the defenses or limitations on rights granted under this chapter, of a person for conduct not described in paragraph (11) of section 110 of Title 17, even if that person also engages in conduct described in paragraph (11) of section 110 of such title.

**(B)** A manufacturer, licensee, or licensor of technology that enables the making of limited portions of audio or video content of a motion picture imperceptible as described in subparagraph (A) is not liable on account of such manufacture or license for a violation of any right under this chapter, if such manufacturer, licensee, or licensor ensures that the technology provides a clear and conspicuous notice at the beginning of each performance that the performance of the motion picture is altered from the performance intended by the director or copyright holder of the motion picture. The limitations on liability in subparagraph (A) and this subparagraph shall not apply to a manufacturer, licensee, or licensor of technology that fails to comply with this paragraph.

**(C)** The requirement under subparagraph (B) to provide notice shall apply only with respect to technology manufactured after the end of the 180-day period beginning on April 27, 2005.

**(D)** Any failure by a manufacturer, licensee, or licensor of technology to qualify for the exemption under subparagraphs (A) and (B) shall not be construed to create an inference that any such party that engages in conduct described in paragraph (11) of section 110 of Title 17 is liable for trademark infringement by reason of such conduct.

# 15 U.S. Code § 1125

## (a) Civil action

**(1)** Any person who, on or in connection with any goods or services, or any container for goods, uses in commerce any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which--

  **(A)** is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person, or

  **(B)** in commercial advertising or promotion, misrepresents the nature, characteristics, qualities, or geographic origin of his or her or another person's goods, services, or commercial activities,

shall be liable in a civil action by any person who believes that he or she is or likely to be damaged by such act.

**(2)** As used in this subsection, the term "any person" includes any State, instrumentality of a State or employee of a State or instrumentality of a State

acting in his or her official capacity. Any State, and any such instrumentality, officer, or employee, shall be subject to the provisions of this chapter in the same manner and to the same extent as any nongovernmental entity.

**(3)** In a civil action for trade dress infringement under this chapter for trade dress not registered on the principal register, the person who asserts trade dress protection has the burden of proving that the matter sought to be protected is not functional.

**(b) Importation**

Any goods marked or labeled in contravention of the provisions of this section shall not be imported into the United States or admitted to entry at any customhouse of the United States. The owner, importer, or consignee of goods refused entry at any customhouse under this section may have any recourse by protest or appeal that is given under the customs revenue laws or may have the remedy given by this chapter in cases involving goods refused entry or seized.

**(c) Dilution by blurring; dilution by tarnishment**

**(1) Injunctive relief**

Subject to the principles of equity, the owner of a famous mark that is distinctive, inherently or through acquired distinctiveness, shall be entitled to an injunction

against another person who, at any time after the owner's mark has become famous, commences use of a mark or trade name in commerce that is likely to cause dilution by blurring or dilution by tarnishment of the famous mark, regardless of the presence or absence of actual or likely confusion, of competition, or of actual economic injury.

**(2) Definitions**

**(A)** For purposes of paragraph (1), a mark is famous if it is widely recognized by the general consuming public of the United States as a designation of source of the goods or services of the mark's owner. In determining whether a mark possesses the requisite degree of recognition, the court may consider all relevant factors, including the following:

  **(i)** The duration, extent, and geographic reach of advertising and publicity of the mark, whether advertised or publicized by the owner or third parties.

  **(ii)** The amount, volume, and geographic extent of sales of goods or services offered under the mark.

  **(iii)** The extent of actual recognition of the mark.

  **(iv)** Whether the mark was registered under the Act of March 3, 1881, or the Act of February 20, 1905, or on the principal register.

**(B)** For purposes of paragraph (1), "dilution by blurring" is association arising from the similarity between a mark or trade name and a famous mark that impairs the distinctiveness of the famous mark. In determining whether a mark or trade name is likely to cause dilution by blurring, the court may consider all relevant factors, including the following:

  **(i)** The degree of similarity between the mark or trade name and the famous mark.

  **(ii)** The degree of inherent or acquired distinctiveness of the famous mark.

  **(iii)** The extent to which the owner of the famous mark is engaging in substantially exclusive use of the mark.

  **(iv)** The degree of recognition of the famous mark.

  **(v)** Whether the user of the mark or trade name intended to create an association with the famous mark.

  **(vi)** Any actual association between the mark or trade name and the famous mark.

**(C)** For purposes of paragraph (1), "dilution by tarnishment" is association arising from the similarity between a mark or trade name and a famous mark that harms the reputation of the famous mark.

**(3) Exclusions**

The following shall not be actionable as dilution by blurring or dilution by tarnishment under this subsection:

**(A)** Any fair use, including a nominative or descriptive fair use, or facilitation of such fair use, of a famous mark by another person other than as a designation of source for the person's own goods or services, including use in connection with--

**(i)** advertising or promotion that permits consumers to compare goods or services; or

**(ii)** identifying and parodying, criticizing, or commenting upon the famous mark owner or the goods or services of the famous mark owner.

**(B)** All forms of news reporting and news commentary.

**(C)** Any noncommercial use of a mark.

**(4) Burden of proof**

In a civil action for trade dress dilution under this chapter for trade dress not registered on the principal register, the person who asserts trade dress protection has the burden of proving that--

**(A)** the claimed trade dress, taken as a whole, is not functional and is famous; and

**(B)** if the claimed trade dress includes any mark or marks registered on the principal register, the unregistered matter, taken as a whole, is famous separate and apart from any fame of such registered marks.

**(5) Additional remedies**

In an action brought under this subsection, the owner of the famous mark shall be entitled to injunctive relief as set forth in section 1116 of this title. The owner of the famous mark shall also be entitled to the remedies set forth in sections 1117(a) and 1118 of this title, subject to the discretion of the court and the principles of equity if--

**(A)** the mark or trade name that is likely to cause dilution by blurring or dilution by tarnishment was first used in commerce by the person against whom the injunction is sought after October 6, 2006; and

**(B)** in a claim arising under this subsection--

**(i)** by reason of dilution by blurring, the person against whom the injunction is sought willfully intended to trade on the recognition of the famous mark; or

**(ii)** by reason of dilution by tarnishment, the person against whom the injunction is sought willfully intended to harm the reputation of the famous mark.

**(6) Ownership of valid registration a complete bar to action**

The ownership by a person of a valid registration under the Act of March 3, 1881, or the Act of February 20, 1905, or on the principal register under this chapter shall be a complete bar to an action against that person, with respect to that mark, that--

**(A)** is brought by another person under the common law or a statute of a State; and

**(B)(i)** seeks to prevent dilution by blurring or dilution by tarnishment; or

**(ii)** asserts any claim of actual or likely damage or harm to the distinctiveness or reputation of a mark, label, or form of advertisement.

**(7) Savings clause**

Nothing in this subsection shall be construed to impair, modify, or supersede the applicability of the patent laws of the United States.

**(d) Cyberpiracy prevention**

**(1)(A)** A person shall be liable in a civil action by the owner of a mark, including a personal name which is protected as a mark under this section, if, without regard to the goods or services of the parties, that person--

  **(i)** has a bad faith intent to profit from that mark, including a personal name which is protected as a mark under this section; and

  **(ii)** registers, traffics in, or uses a domain name that--

    **(I)** in the case of a mark that is distinctive at the time of registration of the domain name, is identical or confusingly similar to that mark;

    **(II)** in the case of a famous mark that is famous at the time of registration of the domain name, is identical or confusingly similar to or dilutive of that mark; or

    **(III)** is a trademark, word, or name protected by reason of section 706 of Title 18 or section 220506 of Title 36.

**(B)(i)** In determining whether a person has a bad faith intent described under subparagraph (A), a court may consider factors such as, but not limited to--

  **(I)** the trademark or other intellectual property rights of the person, if any, in the domain name;

**(II)** the extent to which the domain name consists of the legal name of the person or a name that is otherwise commonly used to identify that person;

**(III)** the person's prior use, if any, of the domain name in connection with the bona fide offering of any goods or services;

**(IV)** the person's bona fide noncommercial or fair use of the mark in a site accessible under the domain name;

**(V)** the person's intent to divert consumers from the mark owner's online location to a site accessible under the domain name that could harm the goodwill represented by the mark, either for commercial gain or with the intent to tarnish or disparage the mark, by creating a likelihood of confusion as to the source, sponsorship, affiliation, or endorsement of the site;

**(VI)** the person's offer to transfer, sell, or otherwise assign the domain name to the mark owner or any third party for financial gain without having used, or having an intent to use, the domain name in the bona fide offering of any goods or services, or the person's prior conduct indicating a pattern of such conduct;

**(VII)** the person's provision of material and misleading false contact information when applying for the registration of the domain name, the person's intentional

failure to maintain accurate contact information, or the person's prior conduct indicating a pattern of such conduct;

**(VIII)** the person's registration or acquisition of multiple domain names which the person knows are identical or confusingly similar to marks of others that are distinctive at the time of registration of such domain names, or dilutive of famous marks of others that are famous at the time of registration of such domain names, without regard to the goods or services of the parties; and

**(IX)** the extent to which the mark incorporated in the person's domain name registration is or is not distinctive and famous within the meaning of subsection (c).

**(ii)** Bad faith intent described under subparagraph (A) shall not be found in any case in which the court determines that the person believed and had reasonable grounds to believe that the use of the domain name was a fair use or otherwise lawful.

**(C)** In any civil action involving the registration, trafficking, or use of a domain name under this paragraph, a court may order the forfeiture or cancellation of the domain name or the transfer of the domain name to the owner of the mark.

**(D)** A person shall be liable for using a domain name under subparagraph (A) only if that person is the domain name registrant or that registrant's authorized licensee.

**(E)** As used in this paragraph, the term "traffics in" refers to transactions that include, but are not limited to, sales, purchases, loans, pledges, licenses, exchanges of currency, and any other transfer for consideration or receipt in exchange for consideration.

**(2)(A)** The owner of a mark may file an in rem civil action against a domain name in the judicial district in which the domain name registrar, domain name registry, or other domain name authority that registered or assigned the domain name is located if--

  **(i)** the domain name violates any right of the owner of a mark registered in the Patent and Trademark Office, or protected under subsection (a) or (c); and

  **(ii)** the court finds that the owner--

    **(I)** is not able to obtain in personam jurisdiction over a person who would have been a defendant in a civil action under paragraph (1); or

    **(II)** through due diligence was not able to find a person who would have been a defendant in a civil action under paragraph (1) by--

**(aa)** sending a notice of the alleged violation and intent to proceed under this paragraph to the registrant of the domain name at the postal and e-mail address provided by the registrant to the registrar; and

**(bb)** publishing notice of the action as the court may direct promptly after filing the action.

**(B)** The actions under subparagraph (A)(ii) shall constitute service of process.

**(C)** In an in rem action under this paragraph, a domain name shall be deemed to have its situs in the judicial district in which--

**(i)** the domain name registrar, registry, or other domain name authority that registered or assigned the domain name is located; or

**(ii)** documents sufficient to establish control and authority regarding the disposition of the registration and use of the domain name are deposited with the court.

**(D)(i)** The remedies in an in rem action under this paragraph shall be limited to a court order for the forfeiture or cancellation of the domain name or the transfer of the domain name to the owner of the mark. Upon receipt of written notification of a filed, stamped copy of a complaint filed by the owner of a mark in a United

States district court under this paragraph, the domain name registrar, domain name registry, or other domain name authority shall--

   **(I)** expeditiously deposit with the court documents sufficient to establish the court's control and authority regarding the disposition of the registration and use of the domain name to the court; and

   **(II)** not transfer, suspend, or otherwise modify the domain name during the pendency of the action, except upon order of the court.

**(ii)** The domain name registrar or registry or other domain name authority shall not be liable for injunctive or monetary relief under this paragraph except in the case of bad faith or reckless disregard, which includes a willful failure to comply with any such court order.

**(3)** The civil action established under paragraph (1) and the in rem action established under paragraph (2), and any remedy available under either such action, shall be in addition to any other civil action or remedy otherwise applicable.

**(4)** The in rem jurisdiction established under paragraph (2) shall be in addition to any other jurisdiction that otherwise exists, whether in rem or in personam.