No. 21-16029

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

---

**NEO4J, INC., et al.,**

*Plaintiff and Appellee,*

v.

**PURETHINK, LLC, et al.,**

*Defendant and Appellant.*

---

Appeal From a Judgment of the United States District Court
For the Northern District of California
Hon. Edward J. Davila
United States District Judge
N. D. Cal. No. 5:18-cv-07182 EJD

---

**APPELLANTS' REPLY BRIEF**

---

ADRON W. BEENE, CA Bar # 129040
ADRON G. BEENE, CA Bar # 298088
1754 Technology Drive, Ste. 228
San Jose, CA 95110
Tel.: (408) 392-9233
Fax: (866) 329-0453
adron@adronlaw.com

Joseph A. Hearst, CA Bar # 130286
1569 Solano Ave. #525
Berkeley, CA 94707
Telephone: (510) 528-6863
Facsimile: (510) 280-2556
jahearst@pacbell.net

Attorneys for defendants, cross-complainants and appellants John Mark Suhy, PureThink, LLC and iGov, Inc.

# TABLE OF CONTENTS

I.        INTRODUCTION .......................................................................................1

II.       ARGUMENT ............................................................................................2

     A.     NEO4J USA IS NOT THE OWNER OF THE NEO4J MARK AND
THUS IS NOT ENTITLED TO SUE UNDER 15 U.S.C. § 1114.............2

     B.     USES OF THE NEO4J NAME BY IGOV WERE NOMINATIVE FAIR
USE......................................................................................................6

     C.     THE TRIAL COURT'S FINDING THAT DEFENDANTS HAD
ENGAGED IN FALSE ADVERTISING OVERLOOKED FACTUAL
DISPUTES. ........................................................................................14

     D.     THE COURT ERRED IN FINDING A LIKELIHOOD OF CONSUMER
CONFUSION. .....................................................................................19

III.      CONCLUSION ......................................................................................21

# TABLE OF AUTHORITIES

## CASES

*Align Technology, Inc. v. Strauss Diamond Instruments, Inc.*,

    2019 U.S. Dist. LEXIS 63616 (N.D. Cal. April 12, 2019) ...................................7

*AMF, Inc. v. Sleekcraft Boats*, 599 F.2d 341 (9th Cir. 1979 ........................................19

*Desly Int'l Corp. v. Otkrytoe Aktsionernoe Obshchestvo "Spartak"*,

    No. 13-CV-2303 (ENV) (LB), 2016 U.S. Dist. LEXIS 115782

    (E.D.N.Y. Aug. 15, 2016)......................................................................................3

*Hokto Kinoko Co. v. Concord Farms, Inc.*, 810 F.Supp.2d 1013 (C.D. Cal. 2011).......3

*Network Automation, Inc. v. Advanced Systems Concepts, Inc.*,

    638 F.3d 1137 (9th Cir. 2011) .............................................................................20

*Noble House Home Furnishings, LLC v. Floorco Enterprises, LLC*,

    118 U.S.P.Q.2d 1413 (TTAB 2016).......................................................................5

*Presidio Enters., Inc. v. Warner Bros. Distrib. Corp.*, 784 F.2d 674 (5th Cir.1986)...17

*Quabaug Rubber Co. v. Fashion Shoe Co.*, 567 F2d 154 (1st Cir. 1977).....................4

*Smith v. Tobacco By Products & Chemical Corp.*, 243 F.2d 188 (Fed. Cir. 1957).......3

*Toyota Motor Sales, U.S.A., Inc. v. Tabari*, 610 F.3d 1171 (9th Cir. 2010) ..........10, 11

# STATUTES

15 U.S.C.

    Section 1125(a) .................................................................................3

15 U.S.C.

    Section 1114 ........................................................................ ii, 2, 3

California Civil Code

    Section 164 .......................................................................................15

# RULES

TMEP

    Section 1201.09 .................................................................................4

## I.  INTRODUCTION

The brief by appellees Neo4j Inc. ("Neo4j USA") and Neo4j Sweden repeatedly confuses the distinction between the two Neo4j entities and between the various iterations of the Neo4j graph database.  In fact, the very listing of Neo4j Sweden as an appellee on the cover page of appellees' brief is misleading, as Neo4j Sweden was not the plaintiff on any of the trademark causes of action at issue in this appeal and is thus not properly an appellee.  *See* 2-ER-71-76.  And, while Neo4j USA may or may not properly assert rights on behalf of itself, it has no standing to pursue claims on behalf of Neo4j Sweden.

Neo4j Sweden licenses an open-source version of the Neo4j graph database that businesses can use for free.  Neo4j USA licenses the same Neo4j graph database with added functions which business can use when they pay substantial license fees.  Neo4j USA is using Neo4j Sweden's trademark to stop defendants from telling people they do not need to pay for Neo4j USA's graph database because they can get it for free.  Businesses should be able to decide if they want to pay hundreds of thousands of dollars for added functionality they may not need or ever use when they can get a fully functioning graph data base, with the same database engine, for free.

Plaintiffs also confuse the actions of defendant John Mark Suhy, who is the principal of both Purethink, LLC and iGov, Inc. but is not affiliated with Graph

Foundation, Inc. ("GFI"). GFI provides the ONgDB program which is based on the Neo4j Sweden open-source version of the graph data base; Mr. Suhy is no more than a voluntary contributor to that "fork" of Neo4j. Claims made by GFI or against it are not relevant to the issues in this appeal. GFI settled out and all claims against it have been resolved.

Cutting through plaintiffs' claims about the strength of the evidence, the bottom line is that the trial court usurped the role of the jury in its determinations, in particular whether defendants' use of the word "Neo4j" is nominative fair use and whether defendants have engaged in false advertising. A jury could conclude that a reasonable consumer of the software programs offered by both plaintiffs and defendants would understand that what defendants were offering was a fork of Neo4j based upon the open-source versions of that program that are available on GitHub, and that defendants' descriptions of that fork and how it was put together are accurate and not misleading.

## II. ARGUMENT

### A. Neo4j USA Is Not The Owner Of The Neo4j Mark And Thus Is Not Entitled To Sue Under 15 U.S.C. § 1114

Neo4j USA begins its discussion of the question whether its trademark registration is valid by asserting that defendants have "waived" the argument because they noted that Neo4j USA lacked standing. But defendants' argument

was that, because Neo4j USA does not own the Neo4j trademark, Neo4j USA had no right bring a trademark infringement claim under 15 U.S.C. § 1114.[1] It is elementary that a nonowner has no right to bring a trademark claim, and any registration is invalid. *Smith v. Tobacco By Products & Chemical Corp.*, 243 F.2d 188, 191 (Fed. Cir. 1957); *Desly Int'l Corp. v. Otkrytoe Aktsionernoe Obshchestvo "Spartak"*, No. 13-CV-2303 (ENV) (LB), 2016 U.S. Dist. LEXIS 115782, at *14 (E.D.N.Y. Aug. 15, 2016) ("a trademark application that is not filed by the owner is void"). Thus, the legal question is whether Neo4j USA's registration of the Neo4j mark is valid—exactly the argument addressed in the opening brief. AOB 19-22.

As noted in the opening brief, registration creates a rebuttable presumption that the registrant is the owner, but that presumption "evaporates as soon as evidence of invalidity is presented." *Hokto Kinoko Co. v. Concord Farms, Inc.*, 810 F.Supp.2d 1013, 1022 (C.D. Cal. 2011). Here, the evidence shows that Neo4j Sweden was the owner of the mark at the time that Neo4j USA registered it (11-ER-2414), therefore the presumption collapses.

---

[1] Plaintiffs assert that defendants "fail to challenge" the court's finding that Neo4j USA had standing pursuant to 15 U.S.C. § 1125(a). Appellee's Br., 19. We deal with defendants' asserted liability for that claim under the discussion whether defendants had engaged in false advertising.

As noted in the opening brief, there is no dispute that the subsidiary, Neo4j Sweden, is the owner of the Neo4j mark, which it licenses on a non-exclusive basis to its parent, Neo4j USA. 11-ER-2414. The Trademark Manual of Examining Procedures ("TMEP") states that "[w]here the mark is used by a related company, the owner is the party who controls the nature and quality of the goods sold or services rendered under the mark." TMEP § 1201.01. But the "party who controls the nature and quality of the goods sold" in this situation is Neo4j Sweden, not the party who was able to obtain the registration, Neo4j USA. As noted in the opening brief, "[w]here the license is non-exclusive, the licensee does not have standing to bring an infringement action." *Quabaug Rubber Co. v. Fashion Shoe Co.*, 567 F2d 154, 159-60 (1st Cir. 1977).

Neo4j USA points to the trial court's assertion that, even though plaintiffs considered Neo4j Sweden to be the owner of the mark in 2010, they considered Neo4j USA to be the owner in 2015 when Neo4j USA registered the mark. Appellees' Br., 24; *see* 1-SER-19. But Neo4j USA points to no assignment of rights in the mark from Neo4j Sweden to Neo4j USA in the intervening five years. The fact that Neo4j USA registered the mark does not necessarily mean it was an owner of the mark. There is no evidence that Neo4j Sweden ever transferred ownership of the mark to Neo4j USA, nor that the parties abrogated the agreement

by which Neo4j Sweden gave Neo4j USA a *non-exclusive* license. *See* 11-ER-2414.

Appellees cite *Noble House Home Furnishings, LLC v. Floorco Enterprises, LLC*, 118 U.S.P.Q.2d 1413 (TTAB 2016) as somehow supporting their argument. Appellees' Br., 26. But in *Noble House*, a parent corporation controlled the nature and quality of the goods sold under the mark by the subsidiary. The court concluded that the parent's use inured to the benefit of the subsidiary. But here, it was *the subsidiary* that controlled the nature and quality of the goods, and it is *the parent* which is attempting to show that it owned the mark and controls the nature and quality of the goods sold under the mark. While the use of a mark by a parent corporation may inure to the benefit of the subsidiary as registrant because the subsidiary is controlled by the parent, the obverse situation does not suffice, because the parent is attempting to register a mark which it does not control.[2]

Moreover, Neo4j USA's claim that, under the Trademark Manual of Examining Procedures ("TMEP"), the filing of an application will be considered an expression of the parties' intent as to ownership of the mark (Appellees' Br.,

---

[2]    Plaintiffs claim that defendants "ignored" the court's finding that defendants "confirmed" Neo4j USA's ownership of the mark when they signed a non-exclusive license. Appellee's Br., 24. There is no evidence that iGov or Suhy signed any agreement and there is no such finding at the cited portion of the court's order. *See* 1-SER-19. In any event, the relationship between defendants and Neo4j USA has no relevance to whether Neo4j USA was the owner of the mark at the time of registration.

22) overlooks that ownership of Neo4j mark is controlled by the licensing agreement between Neo4j Sweden and Neo4j USA.  11-ER-2414.  When there is a written license agreement showing Neo4j Sweden owns the mark, no intent by implication is required.  Had the Neo4j parties wished to change ownership, they should have changed the contractual assignment of such ownership.  The court had no power to change the license agreement in the name of assigning the "real" ownership of the mark.  At the very least, the issue is one of disputed fact that should not have been resolved on summary judgment.  Moreover, there is no undisputed evidence that Neo4j USA controlled the nature and quality of the goods sold under the mark, which is the way it would demonstrate a change of ownership.

## B.     Uses Of The Neo4j Name By iGov Were Nominative Fair Use.

Neo4j USA commences its discussion of whether iGov's use of "Neo4j" was a nominative fair use by claiming that defendants challenge only the third of the three prongs for nominative fair use.[3]  But in fact defendants pointed out that their

---

[3]     The three prongs are whether: "(1) the product was 'readily identifiable' without use of the mark; (2) defendant used more of the mark than necessary; or (3) defendant falsely suggested he was sponsored or endorsed by the trademark holder." *Toyota Motor Sales, U.S.A., Inc. v. Tabari*, 610 F.3d 1171, 1175-76 (9th Cir. 2010).  It does not require extensive argument to prove that it would be difficult to identify the programs offered by the plaintiffs without using the word

*Footnote continues on next page*

use satisfied the first two prongs, while concentrating on the last prong because that is what the trial court did. *See* AOB 23.

The most important factor in the nominative fair use defense is whether the defendant's use of the mark implies sponsorship by or affiliation with the owner of the mark. *Align Technology, Inc. v. Strauss Diamond Instruments, Inc.*, 2019 U.S. Dist. LEXIS 63616 (N.D. Cal. April 12, 2019). As noted in the opening brief, the court decided that defendants' use of "Neo4j" was not nominative fair use principally because it concluded that defendants were using Neo4j "to create the misleading perception that Defendants' products *were* Plaintiffs' products." 1-ER-22, emphasis in original.

The essence of the court's analysis is its contention that "[w]hile Defendants claim that these products [Government Package for Neo4j and Neo4j Enterprise] consisted of genuine open-source Neo4j EE software, neither product was in fact a Neo4j USA product." 1-ER-21. Both halves of that sentence may be true, but the conclusion that defendants were attempting to cause or causing confusion is not. It is accurate to state that the Government Package for Neo4j and Neo4j Enterprise for which defendants offered service used "genuine open-source Neo4j EE software." That does not, however, imply that either product was a Neo4j USA

_____

Neo4j, and it would be impossible to use less of the mark than the entire word and still be understood.

product, because the versions of Neo4j defendants used were open-source versions licensed from Neo4j Sweden.

As noted in the opening brief, the court stated that "iGov's website assured potential customers that Neo4j Enterprise used 'the same official Neo4j Git[H]ub repositories as Neo4j Inc. uses for their paid commercial licensed builds' except distributed under an open-source license." 1-ER-21-22. But the website's statements are accurate and not misleading. iGov *did* use the "official Neo4j repositories" to compile the code for Neo4j Enterprise.[4] *See, e.g.* 2-ER-248, 250, 279, 281. But precisely because defendants distinguished between the "paid commercial licensed builds" and Neo4j EE (*e.g.*, 2-ER-281), potential customers were unlikely to be misled into believing that what iGov offered was a Neo4j "commercial licensed build." This is particularly true in light of the fact that potential customers would likely be sophisticated users who would know the difference between open-source and commercial software. A graph database is used by large businesses and governments to manage huge amounts of connected

---

[4]     Neo4j USA contends that this statement is inaccurate because "iGov set up their own distribution on *their* site for *their* products." Appellee's Br., 32, emphasis in original. Neo4j USA has confused the difference between the use of a repository and distribution. The source code repository for all Neo4j instances is GitHub. iGov's distribution was of the application compiled from that repository, and was made for the convenience of its clients so they did not have to compile the chosen open-source application on their own. iGov has a license to do that from Neo4j Sweden under the open-source license agreement.

data.  The consumer's level of sophistication required to implement such a complex graph database solution—configuring the database, setting up the data structures, ingesting data, writing complex search queries—would lead a jury to understand that there is no confusion in what defendants were explaining on the website.

The plain fact remains that what defendants offered was services for software packages compiled from Neo4j's open-source versions, including Neo4j EE versions prior to version 3.5.  In order to describe the software accurately and to inform consumers what it included, it was necessary to state that it was compiled from "the official Neo4j repositories."  Neo4j USA claims that defendants used the Neo4j mark "to encourage customers to download 'Neo4j Enterprise' *instead of official Neo4j® EE*."  Appellees' Br., p. 32, emphasis in original.  While it is true that defendants competed with Neo4j USA's commercially licensed builds, it is not true that defendants "'appropriated the cachet' of the Neo4j mark to pass off iGov's 'Neo4j Enterprise' product."  Appellees' Br., 32.  Rather, defendants informed consumers that its products used open-source versions of the Neo4j software.

What plaintiffs are complaining about is that defendants competed with them using free open-source versions of their software and went to great lengths to describe for potential customers what they could expect to get from the offerings of

*both* plaintiffs and defendants. *See, e.g.* 2-ER-268-74. It is difficult to credit the court's conclusion that iGov's website attempted to cause confusion with the commercially licensed versions of Neo4j when that website was set up to compare the versions offered by defendants and those offered by plaintiffs feature-by-feature. *E.g.*, 2-ER-271. Consumers sophisticated enough to use a graph database, would understand that the defendants' versions are based on Neo4j Sweden's open-source version while Neo4j USA's version is based on the same database engine (licensed from Neo4j Sweden).

The fundamental problem for Neo4j USA is that there are numerous open-source versions of Neo4j Sweden's free software available. By asserting that defendants cannot use the Neo4j mark as part of the description for their products and services, Neo4j USA is attempting to have the courts squelch uses of those open-source versions instead of removing them from the marketplace.

As noted in the opening brief, the "usual" case for use of the nominative fair use doctrine is not well suited to the analysis of the use of a mark on open-source software. The most relevant case is likely *Toyota Motor Sales, U.S.A., Inc. v. Tabari*, 610 F.3d 1171 (9th Cir. 2010). In that case, Judge Kozinski considered whether domain names that incorporated the "Lexus" mark constituted nominative fair use. He concluded that, notwithstanding the use of the mark in the domain name, consumers would be unlikely to be confused once they arrived at the

website under that domain name because "the site as a whole does not suggest sponsorship or endorsement by the trademark holder." *Id.* at 1179. Here, similarly, the iGov website as a whole dispels any momentary confusion that might have occurred, because it clearly informs users that what iGov offers is "Neo4j Enterprise open-source licenses." 2-ER-235, 2-ER-261; 2-SER-235. Users familiar with open-source software would know immediately upon reaching the iGov website that it did not offer Neo4j commercial builds because the website repeatedly states that it uses open-source software which iGov compiles. 2-ER-235, 2-ER-261; 2-SER-235. At the very least, the question whether the website was likely to mislead is a question for a jury.

Neo4j USA asserts that *Toyota* is inapposite because the disclaimers that appeared on the iGov and PureThink websites were not conspicuous enough. Appellees' Br., 43. Since there is no requirement for a disclaimer, there is no requirement that the disclaimer be a certain size and location. *Toyota*, 610 F.3d at 1177 ("[s]peakers are under no obligation to provide a disclaimer as a condition for engaging in truthful, non-misleading speech"). Yet iGov and Purethink *had* disclaimers and it is unlikely anyone would be confused on sponsorship. Whether the entire look and feel of the websites would suggest endorsement by Neo4j USA is at the very least a factual question that should have been left to a jury.

Plaintiffs also argue that the prior use of "Neo4j" in an email address, a URL and a download link (discontinued in 2018 and 2020), was not protected by the nominative fair use doctrine. Appellees' Br., 35. First, discontinued uses will not support a preliminary injunction, which is necessarily forward-looking. Second, and more important, the issue is still whether the website as a whole implies sponsorship by the Neo4j entities and, as discussed above, it does not. Any user who was "clicking around" in the iGov website (which stated, *inter alia*, that "iGov Inc. is not a partner or reseller of Neo4j Inc. and is not under any open-source prohibitions that resellers and partners may be under"—2-ER-235) would surely know that the site was neither sponsored by nor a purveyor of Neo4j commercially-licensed versions, but was rather a service option for customers interested in using Neo4j Sweden's open-source versions. In that context, a URL or email address is unlikely to be taken as a reference to the commercially licensed versions of the program. Likewise, the use of a "Download Neo4j Enterprise" hyperlink that redirected customers to download links for ONgDB (*see* Appellees' Br., 35-36) would not have confused customers into believing that they were being led to download a commercially licensed version of Neo4j from Neo4j USA.

Neo4j USA also claims that defendants did not challenge the court's finding that the use of the Neo4j mark was greater than necessary. Appellees' Br., pp. 35-36. Not so. *See* AOB 22, *see also* AOB 22-26. It is a fundamental premise of the

argument made in the opening brief that defendants' use of the term "Neo4j" was necessary to describe what defendants were offering. The court's conclusion that defendants used the term more than necessary is based upon its erroneous conclusion that the uses of the mark on the website were not nominative fair use and has been addressed in the argument on that issue.

Similarly, the claim that the "use of the Neo4j mark in connection with ONgDB 'suggested ONgDB was sponsored by or affiliated with Neo4j USA'" (Appellees' Br., 43) ignores that the entire website would have alerted users that ONgDB is simply a "fork" of Neo4j based upon open-source versions that John Mark Suhy recommended to some users who did not want the commercially-licensed versions of the software.

The claim that Mr. Suhy "cobbled together" code from various Neo4j products to create ONgDB (Appellees' Br., 44) is not, in any event, accurate. ONgDB is a product of Graph Foundation, Inc. and Mr. Suhy is not its author. He has simply acted as a contributor to this fork and has explained how the fork came to be. Indeed, some of the string-cites Neo4j USA has listed for the "use of the NEO4J mark in connection with ONgDB" point out that the Graph Foundation issued ONgDB. *E.g.*, 2-SER-333.

Neo4j USA also contends that "iGov misrepresented that ONgDB was the same as Neo4jEE 'branded distributions' and interchangeability [*sic*] referred to

'ONgDB Enterprise' and 'Neo4j Enterprise' on its website." Appellees' Br., 45.

The pages on the website which Neo4j USA cites for this claim include statements that ONgDB and Neo4j Enterprise were "free and open-source" versions of the Neo4j graph databases. *See* 3-SER 269. The website is replete with statements that ONgDB and Neo4j Enterprise are free and open-source, in contrast with the Neo4j commercially licensed versions. In fact, the pages to which Neo4j refers are intended to let customers "know your options" and discusses the "3 main Neo4j offerings available including the free open-source option." *See e.g.*, 3 SER 270-72, 274.

The claim that the content on web pages intended to show why customers should choose ONgDB or Neo4j Enterprise *instead of* the commercial builds of Neo4j "impermissibly suggested affiliation with and endorsement by Appellees" (Appellees' Br., 46) is thus far-fetched. The issue of whether the website suggested endorsement is one that a jury should make.

### C. The Trial Court's Finding That Defendants Had Engaged In False Advertising Overlooked Factual Disputes.

In the opening brief, defendants argued that the court wrongly determined that defendants had engaged in false advertising when they asserted that ONgDB was a "free and open-source" version of Neo4j. Defendants also attacked the court's contention that defendants' description of OngDB as a "drop in"

replacement for Neo4j commercial versions was false advertising. Plaintiffs' responses to these arguments do not withstand analysis.

1. **Defendants Were Permitted—Indeed, Obligated—To Remove The "Commons Clause."**

Neo4j USA argues that ONgDB is not a "free and open-source" version of Neo4j EE because GFI was not permitted to remove the "Commons Clause" Neo4j Sweden added to the Affero General Public License ("AGPL") that governed versions of Neo4j EE prior to version 3.5. Appellees' Br., 48-52. Neo4j USA asserts that the AGPL license "must be interpreted as a whole … 'so as to give effect to every part … each clause helping to interpret the other.'" Appellees' Br., 49, *quoting* Cal. Civ. Code § 164. Then Neo4j USA simply parrots the trial court's statement that Neo4j Sweden was permitted to impose the Commons Clause because it was a "licensor," while the prohibition against removal or addition of any terms refers only to a "licensee."

Neo4j USA itself fails to discuss the entire contract, including in particular the clause at the beginning stating that the Free Software Foundation is the holder of the copyright, and that "[e]veryone is permitted to copy and distribute verbatim copies of this license document, but changing it is not allowed." 6-ER-1408. Neo4j USA is thus a licensee, because it is not a copyright holder. Indeed, Neo4j USA implicitly concedes this when it claims that "Section 7 [of the AGPL] only permits a ***downstream licensee*** to remove 'further restrictions' placed by an

**upstream licensee.**" Appellees' Br., 51. Neo4j USA is an upstream licensee, not an original licensor.

Moreover, Neo4j USA largely ignores that only Neo4j Sweden is the upstream licensee and has standing to complain about the removal of the Commons Clause, referring to the argument only in a footnote. Appellees' Br., 50, fn. 19. The issue is not simply that the interpretation of the terms of the Neo4j Sweden Software License [*i.e.*, the AGPL] is necessary to determine if defendants' advertisements were faulty, as Neo4j USA contends, but rather whether Neo4j USA is entitled to enforce rights that belong to Neo4j Sweden. In the same vein, the claim that defendants "lack standing to enforce FSF's copyright" (Appellees' Br., 53) is unavailing. Defendants are not attempting to enforce FSF's copyright—they are instead contending that the AGPL gave them permission to remove restrictive license terms not included in the AGPL.

Plaintiffs contend that reading the license in the manner defendants have suggested would "nullify Neo4j Sweden's exclusive right, as copyright holder, to license Neo4j® under the terms of its choosing." Appellees' Br., p. 52. But nothing prevented Neo4j Sweden from licensing using any terms it wished. What it could *not* do, however, was license its software pursuant to the AGPL under terms not permitted by the AGPL. If Neo4j Sweden did not like the AGPL's terms, it was under no obligation to use that license. Mixed in the morass of

licensing is a more fundamental issue. Free and open-source software may come with many different open-source license agreement types. There is GPL, AGPL, Apache, MIT, BSD, *etc*. *See* https://opensource.org/licenses/alphabetical. Some licenses are more restrictive and some more permissive. But the type of license does not change the fact the license is "free" and includes "open-source software."

2. **It Was, At Worst, A Jury Question Whether Describing ONgDB As A "Drop In Replacement" Was Accurate.**

Plaintiffs argue that descriptions of ONgDB as a "drop in replacement" were false or misleading because ONgDB is not a feature-for-feature copy of Neo4j EE 3.5 and later. Plaintiffs argue that there is "no evidence showing that a jury could find consumers did not understand their statements as at least assuring compatibility with Neo4j EE." Appellees' Br., 55. But of course it was plaintiffs' burden to show that no reasonable juror could believe that the statement had the meaning defendants ascribe to it. And plaintiffs do not even acknowledge that the claim that ONgDB does not replicate the features of Neo4j EE 3.5 and later is based solely on the say-so of Neo4j USA's Mr. Rathle, who did no empirical testing to confirm his opinion. *See* 6-ER-1375-76. Yet Neo4j was required to prove falsity with empirical evidence. *Presidio Enters., Inc. v. Warner Bros. Distrib. Corp.*, 784 F.2d 674, 679 (5th Cir.1986). There is no evidence in the record to show that data and queries on both versions do not work. Even though

Neo4j USA had access to both their commercial versions and ONgDB, they did not test whether ONgDB is a drop in replacement.

Moreover, there *was* evidence from which a jury could conclude that descriptions of ONgDB as a drop in replacement meant that users could drop in files from the same version number of the commercially licensed Neo4j and operate the same data and run queries. Mr. Suhy—a long time member of the graph database open-source community—was certainly as well qualified as Mr. Rathle to describe what "drop in replacement" means, as could Brad Nussbaum, principal of GFI.[5] *See, e.g.*, 2-RT 339-42; 3-ER-457-68, 470.

And a jury should have been permitted to consider whether the statement that ONgDB is a drop in replacement for *both* Community and Enterprise editions of Neo4j implied that the program was a feature-for-feature replacement for those programs, given that Community lacked many of the features of Enterprise editions. 5-ER-1012. In light of this fact, the statement could *not* have had the meaning the trial court ascribed to it—*i.e.*, that ONgDB was a feature-for-feature replacement for Neo4j Enterprise Edition.

---

[5] Ironically, plaintiffs argue that the statement that ONgDB was a drop in replacement for later versions of Neo4j EE is misleading because, they say, GFI was not willing to do the testing to determine compatibility. Appellees' Br., 55-56. Yet, plaintiffs rely upon the statements of Mr. Rathle about compatibility which were also *not* based on testing.

Plaintiffs also argue that the "drop in replacement" statements were false advertising "because ONgDB contained source code files that purported to be offered" with the AGPL license from which the Commons Clause had been stripped. Appellees' Br., p. 58. This argument is a restatement of the claim that defendants could not strip out terms that were incompatible with the AGPL license and has been dealt with in the section above dealing with that issue. The license terms do not impact how a graph database operates.

### D. The Court Erred In Finding A Likelihood Of Consumer Confusion.

Plaintiffs defend the court's conclusion that defendants had engaged in false designation of origin by claiming that, because defendants' opening brief challenged only two of the *Sleekcraft* (*AMF, Inc. v. Sleekcraft Boats*, 599 F.2d 341 (9th Cir. 1979)) factors, they "foreclose[d]" their claim that the court erred. Appellees' Br., 59. But the opening brief explained why those factors were most relevant in this situation (AOB 44)—if the court was wrong about their application, then at a minimum a remand is necessary.

Plaintiffs allege that defendants ignored the "actual evidence supporting the finding of actual confusion." Appellees' Br., p. 61. But the opening brief considered that evidence and argued that, because the evidence did not demonstrate that consumers were actually confused about the source of the various

versions of Neo4j (as opposed to asking questions about open-source versions of Neo4j), the court's reliance on this factor was misplaced.  *See* AOB 44-45.

Plaintiffs also argue that the fact that Neo4j commercial editions are extremely expensive (*see*, *e.g.*, 2-ER-270), meaning that consumers are likely to use care in choosing it, is irrelevant because defendants are supposedly "targeting the same customers as Neo4j USA" and because "price *was* material to [consumers'] purchasing decisions."  Appellees' Br., p. 61, emphasis in original.  But this argument makes defendants' point.  Defendants informed consumers at great length about what they could and could not do with both the commercial and the open-source versions of Neo4j.  *E.g.*, 2-ER-268-273.  Defendants were encouraging consumers to engage in comparison shopping, which is not a trademark violation.  As noted in the opening brief, the Ninth Circuit has "recognized that liability for infringement may not be imposed for using a registered trademark in connection with truthful comparative advertising."  *Network Automation, Inc. v. Advanced Systems Concepts, Inc.*, 638 F.3d 1137, 1152 (9th Cir. 2011).

Plaintiffs apparently believe that there cannot be "legitimate comparative advertising against a backdrop of providing a '100% free' alternative to Neo4j® EE."  Appellees' Br., 62.  But that is precisely what comparative advertising is intended to do.  Plaintiffs' assertion that defendants "stripped out" license terms

and offered a product with "lesser features" (Appellees' Br., 62) has been dealt with above, but the court should note that defendants carefully explained to prospective users what features they would and would not get if they opted to purchase services from iGov. *E.g.*, 2-ER-268-273.

## III.    CONCLUSION

For the foregoing reasons and for the reasons stated in the opening brief this Court should reverse the preliminary injunction and vacate the summary judgment on which it is based, with a remand to the district court to set the issues for trial.


Respectfully submitted,

Dated:  December 3, 2021                    _____/s/_____
                                                            Joseph A. Hearst

                                                            Counsel for Appellants John
                                                            Mark Mr. Suhy, PureThink,
                                                            LLC and iGov, Inc.

# UNITED STATES COURT OF APPEALS
## FOR THE NINTH CIRCUIT
### Form 8. Certificate of Compliance for Briefs

*Instructions for this form: http://www.ca9.uscourts.gov/forms/form08instructions.pdf*

**9th Cir. Case Number(s)** | 21-16029

I am the attorney or self-represented party.

**This brief contains** | 4920 | **words**, excluding the items exempted

by Fed. R. App. P. 32(f). The brief's type size and typeface comply with Fed. R.

App. P. 32(a)(5) and (6).

I certify that this brief *(select only one)*:

(●) complies with the word limit of Cir. R. 32-1.

( ) is a **cross-appeal** brief and complies with the word limit of Cir. R. 28.1-1.

( ) is an **amicus** brief and complies with the word limit of Fed. R. App. P.
29(a)(5), Cir. R. 29-2(c)(2), or Cir. R. 29-2(c)(3).

( ) is for a **death penalty** case and complies with the word limit of Cir. R. 32-4.

( ) complies with the longer length limit permitted by Cir. R. 32-2(b) because
*(select only one):*

    ( ) it is a joint brief submitted by separately represented parties;

    ( ) a party or parties are filing a single brief in response to multiple briefs; or

    ( ) a party or parties are filing a single brief in response to a longer joint brief.

( ) complies with the length limit designated by court order dated |              |.

( ) is accompanied by a motion to file a longer brief pursuant to Cir. R. 32-2(a).

**Signature** | /s/ Joseph A. Hearst | **Date** | Dec. 3, 2021

*(use "s/[typed name]" to sign electronically-filed documents)*

*Feedback or questions about this form? Email us at forms@ca9.uscourts.gov*

**Form 8** | *Rev. 12/01/2018*

# UNITED STATES COURT OF APPEALS
## FOR THE NINTH CIRCUIT
### Form 15. Certificate of Service for Electronic Filing

*Instructions for this form: http://www.ca9.uscourts.gov/forms/form15instructions.pdf*

**9th Cir. Case Number(s)** | 21-16029

I hereby certify that I electronically filed the foregoing/attached document(s) on this date with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit using the Appellate Electronic Filing system.

**Service on Case Participants Who Are Registered for Electronic Filing:**

☐ I certify that I served the foregoing/attached document(s) via email to all registered case participants on this date because it is a sealed filing or is submitted as an original petition or other original proceeding and therefore cannot be served via the Appellate Electronic Filing system.

**Service on Case Participants Who Are <u>NOT</u> Registered for Electronic Filing:**

☐ I certify that I served the foregoing/attached document(s) on this date by hand delivery, mail, third party commercial carrier for delivery within 3 calendar days, or, having obtained prior consent, by email to the following unregistered case participants *(list each name and mailing/email address)*:

**Description of Document(s)** *(required for all documents)*:

**Signature** | /s/ Joseph A. Hearst        **Date** | Dec. 3, 2021

*(use "s/[typed name]" to sign electronically-filed documents)*

*Feedback or questions about this form? Email us at forms@ca9.uscourts.gov*

**Form 15**                                          *Rev. 12/01/2018*